SEYFARTH SHAW LLP
G. Daniel Newland (SBN 87965)
Email: dnewland@seyfarth.com
Laura J. Maechtlen (SBN 224923)
E-mail: lmaechtlen@seyfarth.com
Chantelle C. Egan (SBN 257938)
E-mail: cegan@seyfarth.com
Megha Charalambides (SBN 310892)
E-mail: mcharalambides@seyfarth.com
560 Mission Street, Suite 3100
San Francisco, CA 94105-2930
Telephone:     (415) 397-2823
Facsimile:     (415) 397-8549
Attorneys for Defendants
XPO CNW, INC. and XPO LOGISTICS, INC.

KATHERINE F. WENGER/ CA SB# 223045
BROWN, GEE & WENGER LLP
200 Pringle Avenue, Suite 400
Walnut Creek CA 94596
Telephone: (925) 943-5000
Facsimile: (925) 933-2100
kwenger@bgwcounsel.com
ATTORNEYS FOR PLAINTIFF CHRISTOPHER R.
O'BRIEN, AS TRUSTEE OF THE RAYMOND F.
O'BRIEN REVOCABLE TRUST

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER R. O'BRIEN, AS TRUSTEE OF THE RAYMOND F. O'BRIEN REVOCABLE TRUST,<br><br>Plaintiff,<br><br>v.<br><br>XPO CNW, INC., a Delaware corporation, XPO LOGISTICS, INC., a Delaware Corporation,<br><br>Defendants. | Case No. 4:16-cv-03869-JSW<br><br>**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS; PLAINTIFF'S RESPONSES**<br><br>Date:          August 6, 2018<br>Time:          2:00 p.m.<br>Judge:        Hon. Jeffrey S. White<br>Trial Date:   February 3, 2020<br><br>Amended Complaint Filed: June 5, 2017 |

1

2          Pursuant to the Court's Standing Order for Civil Jury Trials, Defendants XPO CNW, Inc. and

3   XPO Logistics, Inc. (collectively, "Defendants") submit their objections to certain deposition testimony

4   designated by Plaintiff Christopher O'Brien ("Plaintiff") in Plaintiff's Amended Supplemental

5   Designation of Deposition testimony for Affirmative Use at Trial, dated December 29, 2019.  In

6   turn,  Plaintiff submits his responses to Defendants' objections.

7

8              **PLAINTIFF'S DEPOSITION DESIGNATIONS FOR RAYMOND O'BRIEN**
                         **NOVEMBER 30, 2016 (VOLUME I)**

9   **EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN ENTIRE TRANSCRIPT AND ALL**
    **VIDEO PLUS ALL EXHIBITS**

10         Unable to excerpt because Plaintiff referenced the entire transcript and video.

11  **OBJECTIONS TO RAYMOND O'BRIEN ENTIRE TRANSCRIPT AND ALL VIDEO PLUS**
    **ALL EXHIBITS**

12         Irrelevant/immaterial (FRE 401-402). Prejudicial/confusing/waste of time/cumulative (FRE

13  403). Lack of personal knowledge/foundation/speculation (FRE 602). Hearsay (FRE 801). In accordance

14  with the Court's standing order, the parties are to specifically designate those portions of depositions to

15  be used at trial. (Standing Order ¶ 29.) Further, while the parties agree that Mr. O'Brien's transcript can

16  be admitted for the limited purpose of showing materials reviewed by the experts, each party retains its

17  rights to raise objections if, at any point, another party seeks to admit the entirety of the transcript for a

18  different purpose.

19         As to the designation of the entire video of Raymond O'Brien video deposition, Defendants

20  further object that allowing such designation would permit hours of irrelevant, immaterial, prejudicial,

21  cumulative, speculative, and otherwise improper video evidence at trial (FRE 401-403.)  Permitting the

22  entirety of Raymond O'Brien's video testimony at trial would waste this court's time and conflict with

23  Plaintiff's witness designation, which allots only 2.5 hours to Raymond O'Brien's direct testimony

24  (while the video deposition is approximately 6 hours long) (FRE 403). Finally, allowing in the entirety

25  of Raymond O'Brien's testimony would run afoul of the Court's Standing Order ¶ 29 (b), which sets

26  forth procedure to "omit any dead time, long pauses, and objections/colloquy not necessary to

27  understand the answers."

28

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS / CASE NO. 4:16-CV-03869-JSW

If the Court is inclined to permit Plaintiff to show video, Defendants request that the Court order Plaintiff to lodge specific video deposition designations, at which time Defendants can make any necessary objections and also prepare Defendants' video deposition designations. Defendants further request that they also be allowed to show portions of Raymond O'Brien's video testimony they designate because allowing Plaintiff to show video while Defendants read testimony into the record would be unduly prejudicial (FRE 403).

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN ENTIRE TRANSCRIPT AND ALL VIDEO PLUS ALL EXHIBITS

As indicated by the Parties Proposed Final Pretrial Order, which identifies 2.5 hours of testimony from Mr. O'Brien, Plaintiff does not intend to present the entirety of Mr. O'Brien's deposition at trial. That being said, given that Mr. O'Brien, a key witness, is not available to appear in person to testify at trial it would be unduly prejudicial to limit Plaintiff to any testimony identified before trial when Plaintiff has not heard Defendants' opening argument.  In addition, Mr. O'Brien will not be Plaintiff's witness and therefore, Plaintiff cannot make the full determination of testimony necessary (and avoiding cumulative testimony) until other witnesses testify.   Notwithstanding the foregoing, Plaintiff has made a good faith effort to identify specific designations to be used. *See* Exhibit A (specific designations).

With regards to Defendants use of any video, such prohibition would be unduly prejudicial to Plaintiff for numerous reasons, including but not limited to the fact that (1) Raymond O'Brien is a key witness in the case, (2) part of the damages that Plaintiff seeks recovery for (on Mr. O'Brien's behalf) is Mr. O'Brien's emotional distress, and (3) Defendants will have their own witness able to testify in person on the stand (and also may present video of its own witnesses deposition testimony)..

 Such -objection is particularly unfounded where (1) it is Defendants' removal of this matter to federal court that prevented trial on this matter from occurring while Mr. O'Brien was still alive, and (2) the Court specifically ordered the video deposition be taken of the Plaintiff.  *See* ECF No. 19 Case Management and Pretrial Order.[1]

---

[1] As the Court is aware, this matter was initially filed in state court, with Mr. O'Brien immediately filing a motion for preference pursuant to California Code of Civil Procedure 36.  If that motion had been granted, which it almost certainly would have given Mr. O'Brien's age and health, trial would have occurred while he was still alive.  Unfortunately, Defendants prevented such expeditious trial by removing this matter to Federal Court.  *See* ECF No. 1.

        In addition, it is noteworthy that while Defendants have criticized Plaintiff's designated expert Dr. Paul Berg witness (designated on the issue of emotional distress), for only reviewing a portion of Mr. O'Brien's video deposition, *see, e.g.,* Defendants' MIL No. 1, at the same time now they would like the jury not to view any of that same video.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 1-4**

        Caption Page of Deposition transcript. However, we are not objecting to page 4.

**OBJECTIONS TO RAYMOND O'BRIEN 1-4**

        Objection as to pages 1 through 3.  No objection as to page 4.  Irrelevant/immaterial (401-402); Prejudicial/confusing/waste of time/cumulative (403).  This is confusing to the jury, as it pertains to preliminary matters only.  Moreover, this is not deponent's testimony and is thus inadmissible (401, 402).  Furthermore, the exhibits on page 3 have not been properly authenticated and also do not reflect witness testimony (901).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 1-4**

        Caption page merely identified for context.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 19:6-21**

        6 Q. Mr. O'Brien, did you graduate from high
        7 school?
        8 A. I did.
        9 Q. Did you attend college?
        10 A. I did.
        11 Q. Where?
        12 A. University of Missouri.
        13 Q. Did you graduate?
        14 A. Yes.
        15 Q. When?
        16 A. 1948.
        17 Q. What was your major?
        18 A. Business.
        19 Q. Did you attend any other schools after
        20 University of Missouri?
        21 A. Went to Harvard for 13 weeks.
        (R. O'Brien Dep., 11/30/2016, 19:6-21)

**OBJECTIONS TO RAYMOND O'BRIEN 19:6-21**

        Objection. Irrelevant/immaterial (401-402); Prejudicial/confusing/waste of time/cumulative (403).  The personal matters discussed are irrelevant, as they do not show whether Raymond O'Brien had a contract and/or whether he suffered emotional distress.  Moreover, they are prejudicial in swaying

4

the jury to be biased in favor of O'Brien based on O'Brien's pedigree and/or respect for O'Brien.  The

jury should not be deciding the case based on personal sympathy towards O'Brien.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 19:6-21**

      Relevant. Establishes professional history of Plaintiff.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 25:20-22**

      20 A. Retired as chairman of the board, 37 years of
      21 service. In April 1995, elected chairman of the board
      22 emeritus. Now, what else, mentioned --
      (R. O'Brien Dep., 11/30/2016, 25:20-22)

**OBJECTIONS TO RAYMOND O'BRIEN 25:20-22**

      Objection. Irrelevant/immaterial (401-402); Prejudicial/confusing/waste of time/cumulative

(403).  Whether Raymond O'Brien was elected chairman emeritus is not relevant to the issues in the

case, as they do not show whether O'Brien had a contract and/or whether he suffered emotional distress.

Moreover, they are prejudicial in swaying the jury to be biased in favor of O'Brien based on O'Brien's

pedigree and/or respect for O'Brien.  The jury should not be deciding the case based on personal

sympathy towards O'Brien.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 25:20-22**

      Directly relevant and highly probative. Provides background on O'Brien, shows O'Brien's past

service and commitment to the Company, the basis for entering into the Contract, as well as the

emotional distress he suffered when the Company breached their obligation to him.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 29:21-23**

      21 Q. Mr. O'Brien, you said you went back to
      22 Consolidated Freightways in 1990 as part of a
      23 management team. What did you do from the time you
      24 retired until you went back as part of that management
      25 team?
      (R. O'Brien Dep., 11/30/2016, 29:21-23) (Underlined testimony designated by plaintiff)
      (R. O'Brien Dep., 11/30/2016, 29:24-25) (Not designated by platintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 29:21-23**

      Incomplete: designation does not include the counsel's complete question.  If the testimony is

admitted, for completeness, the designation should include the question at 29:24-25 (106).  Defendants

would not object to the designation of testimony that includes the counsel's question at 29:24-25.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 29:21-23**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 30:8-10**

 8 Q. Okay. Did you have a particular title when
 9 you returned to Consolidated Freightways in 1990?
 10 A. Everybody knew who I was. No. I don't --
 11 no. I don't know.
 (R. O'Brien Dep., 11/30/2016, 30:8-10) (Underlined testimony designated by plaintiff)
 (R. O'Brien Dep., 11/30/2016, 30:11) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 30:8-10**

Objection. Irrelevant/immaterial (401-402); Prejudicial/confusing/waste of time/cumulative

(403). O'Brien's title at Consolidated Freightways in 1990 is not relevant to the issues in the case, as it

does not show whether O'Brien had a contract and/or whether he suffered emotional distress.

Moreover, Defendants object because deponent's statement that "[e]verybody knew who" he was is

irrelevant and highly prejudicial (403).  Incomplete: designation does not include the deponent's

complete answer  If the testimony is admitted, for completeness, the designation should include the

answer at 30:11 (106).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 30:8-10**

Directly relevant and highly probative. Shows O'Brien's service to the Company after entering

into the Contract, and benefits obtained by the Company.  With regards to objection as to

"completeness", See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony

for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).


**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 31:14**

 13 Q. And who were the other members of the team?
 14 A. I was, Frank Leach, Don Moffitt.
 (R. O'Brien Dep., 11/30/2016, 31:14) (Underlined testimony designated by plaintiff)
 (R. O'Brien Dep., 11/30/2016, 31:13) (Not designated by plaintiff)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OBJECTIONS TO RAYMOND O'BRIEN 31:14**

Incomplete: designation does not include the counsel's question.  If the testimony is admitted, for completeness, the designation should include counsel's question at 31:13 (106).  Defendants would not object to the designation of testimony that includes counsel's question at 31:13.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 31:14**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 31:19**

15 Q. And that -- that assignment was only to be
16 for a one-year term?
(R. O'Brien Dep., 11/30/2016, 31:15-16) (Not designated by plaintiff)
<u>19 A. We got it turned around and we left.</u>
(R. O'Brien Dep., 11/30/2016, 31:19) (Underlined testimony designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 31:19**

Incomplete: designation does not include the counsel's question.  If the testimony is admitted, for completeness, the designation should include counsel's question at 31:15-16 (106).  Defendants would not object to the designation of testimony that includes counsel's question at 31:15-16.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 31:19**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 32:22-24**

22 Q. Mr. O'Brien, did you prepare the document
23 that you've been referring to?
24 A. I did.
(R. O'Brien Dep., 11/30/2016, 32:22-24)

**OBJECTIONS TO RAYMOND O'BRIEN 32:22-24**

Objection based on grounds that deponent should not be able to testify as to the document he created because he didn't produce it pursuant to Fed. R. Civ. Proc. 26.  (See Fed. R. Civ. Proc. 26).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 32:22-24**

Directly relevant and highly probative.  Document was produced to Plaintiff immediately after his deposition, on December 6, 2016, well before his second day of his deposition (with the document

1  bearing the bates number RO0000281).  Defendants had more than sufficient time to question Mr.

2  O'Brien about this document during his second day of deposition in January of 2017.  If Defendants

3  would like the documents designated in association with the transcript for completeness, Plaintiff has no

4  objection to the inclusion of the document.

5  **EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 40:15-41:13**

6
7  > 15 Q. Prior to working for Consolidated
> 16 Freightways, were you employed by another company?
> 17 A. I was.
> 18 Q. Who?
> 19 A. RISS.
> 20 Q. And what did they do?
> 21 A. They were trucking.
> 22 Q. What was your position with them?
> 23 A. I think I was a janitor. What was the
> 24 position with RISS?
> 25 Q. Yes.
> 1 A. I started out as an auditor, became
> 2 controller, then later vice president and treasurer,
> 3 and then I left.
> 4 Q. And you left to join Consolidated
> 5 Freightways? How long were you employed by RISS?
> 6 A. Six years.
> 7 Q. Did you have prior employment prior to
> 8 working for RISS?
> 9 A. Three years of Peat, Marwick, Mitchell.
> 10 Q. And what about prior to that?
> 11 A. Beg your pardon?
> 12 Q. Prior to that company.
> 13 A. U.S. Air Force, three years.
> (R. O'Brien Dep., 11/30/2016, 40:15-41:13)

19  **OBJECTIONS TO RAYMOND O'BRIEN 40:15-41:13**

20  Objection. Irrelevant/immaterial (401-402); Prejudicial/confusing/waste of time/cumulative

21  (403).  The personal matters discussed are irrelevant, as they do not show whether O'Brien had a

22  contract and/or whether he suffered emotional distress.  Moreover, they are prejudicial in swaying the

23  jury to be biased in favor of O'Brien based on O'Brien's pedigree, O'Brien's work history, and/or

24  respect for O'Brien.  The jury should not be deciding the case based on personal sympathy towards

25  O'Brien.

26  **RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 40:15-41:13**

27  Directly relevant.  Like any witness, Plaintiff should be allowed to establish the background of

28  the witness testifying.

1

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 42:23-43:1**

2
3

23 Q. I'm going to mark the complaint filed by
24 Mr. O'Brien in the Alameda County Superior Court on May
25 27th, 2016, as Exhibit 2, please.
1 (Exhibit 2 marked)

4

(R. O'Brien Dep., 11/30/2016, 42:23-43:1)

5

**OBJECTIONS TO RAYMOND O'BRIEN 42:23-43:1**

6
7
8
9

Objection as to 42:23-25.  This is merely counsel's statement and not testimony, and is therefore

irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)  Objection as to 43:1.  This designation

refers to the court reporter's notes and not testimony, and is therefore irrelevant and improper.  (See Fed.

R. Civ. Proc. 32; 401, 402.)

10

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 42:23-43:1**

11
12
13

Relevant to designation of Exhibits and to identify documents that Mr. O'Brien is questioned

about, particularly that, per the Court's standing order, trial exhibits numbers have (to the extent

possible) been conformed with Deposition Exhibit Numbers.

14

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 47:10-11**

15
16
17
18

10 A. I had an agreement with the board of
11 directors. That's all I needed to know. I don't
12 recall it being in writing or a big -- making a big
13 deal of it. It wasn't a big deal. $7,000 -- $6,000 a
14 month is a big deal.
(R. O'Brien Dep., 11/30/2016, 47:10-11) (Underlined testimony designated by plaintiff)
(R. O'Brien Dep., 11/30/2016, 47:12-14) (Not designated by plaintiff)

19

**OBJECTIONS TO RAYMOND O'BRIEN 47:10-11**

20
21
22
23

Incomplete: designation does not include deponent's complete answer.  If the testimony is

admitted, for completeness, the designation should include deponent's answer at 47:12-14 (106).

Defendants would not object to the designation of testimony that includes deponent's answer at 47:12-

14.

24

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 47:10-11**

25
26

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

27

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 49:18**

28

18 Q. In recognition of your previous service?

19 MS. WENGER: Objection. Vague and ambiguous.
20 BY MS. KNUDSON:
21 Q. Did you have any continuing obligations that
22 you owed to Consolidated Freightways under the
23 agreement?
24 A. I don't know that I had any obligation, but I
25 would have done anything that they wanted me to do.
(R. O'Brien Dep., 11/30/2016, 49:18) (Underlined testimony designated by plaintiff)
(R. O'Brien Dep., 11/30/2016, 49:19-25) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 49:18**

Objection. This is merely counsel's question, with no corresponding answer in the deposition,

and not testimony, and is therefore irrelevant and improper. (See Fed. R. Civ. Proc. 32; 401, 402.)

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 49:18**

See Plaintiff's Second Amended Designation of Deposition Testimony revising designation to

include 49:19-25.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 49:21-50:7**

21 Q. Did you have any continuing obligations that
22 you owed to Consolidated Freightways under the
23 agreement?
24 A. I don't know that I had any obligation, but I
25 would have done anything that they wanted me to do.
1 Q. And what do you mean by that?
2 A. I mean just what I said. If they wanted some
3 consulting done or wanted to ask a question or how
4 would you do it, I would -- do you understand, I loved
5 that company. It wasn't just a damned baseball game.
6 Q. Under what circumstances did you understand
7 that the agreement could be terminated?
(R. O'Brien Dep., 11/30/2016, 49:21-50:7)

**OBJECTIONS TO RAYMOND O'BRIEN 49:21-50:7**

Objection as to 49:24-50:5, starting with "but I" at 49:24. No objection as to 49:21-24, up to

"but I" at 49:24. Irrelevant/immaterial (401-402); addresses issues that are not relevant in this case

(401-402). Prejudicial/confusing/waste of time/cumulative (403). The fact that Raymond O'Brien

would have "done anything" for Consolidated Freightways and that he "loved that company" is not

relevant to the issues in the case. Lack of personal knowledge/foundation/speculation (602).

Deponent's answer is speculative; he does not know what he would, hypothetically, have done in the

future.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 49:21-50:7**

Directly relevant and highly probative. Shows O'Brien's past service and commitment to the Company and services and value provided under the contract.  Furthermore, removing the middle of an answer would be unduly prejudicial to Plaintiff as it would provide an incomplete response.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 50:11**

11 THE WITNESS: None. That's a pretty ring.
(R. O'Brien Dep., 11/30/2016, 50:11)

**OBJECTIONS TO RAYMOND O'BRIEN 50:11**

Objection as to "That's a pretty big ring" statement as being irrelevant (401-402).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 50:11**

Plaintiff have no objection to "That's a pretty ring not being included as long as it does not disrupt the flow and presentation of the answer being presented (thus prejudicing Plaintiff)

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 50:14-51:2**

14 Q. You stated that you had an agreement with the
15 board of directors that you would be provided with
16 these services, the car service, the secretary and the
17 office. Did the board vote on your agreement with
18 them?
19 A. Did the board what?
20 Q. Did the board vote on your agreement with
21 them related to these services?
22 A. I don't know what the board did. The board
23 and I had a running conversation all the time. I -- I
24 don't know what they did.
25 Q. Were those conversations during board
1 meetings?
2 A. All kinds of meetings. They're all friends
3 of mine.
(R. O'Brien Dep., 11/30/2016, 50:14-51:2) (Underlined testimony designated by plaintiff)
(R. O'Brien Dep., 11/30/2016, 51:3) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 50:14-51:2**

Incomplete: designation does not include the witness's complete answer.  If the testimony is admitted, for completeness, the designation should include the testimony at 51:2-3 (106).  Defendants would not object to the designation of testimony that includes the deponent's testimony at 51:2-3.

11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 50:14-51:2**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 52:10-18**

    10 Q. Were you -- were you reelected to the board
    11 throughout your term?
    12 A. Every year.
    13 Q. Every year. You state in paragraph 7 that in
    14 exchange for services, including your service on the
    15 board of directors until 1995, you would be provided
    16 with a secretary, car service and office. How did you
    17 know in 1997 -- 1987 that you would remain on the board
    18 of directors until 1995?
    (R. O'Brien Dep., 11/30/2016, 52:10-18) (Underlined testimony designated by plaintiff)
    20 THE WITNESS: Can I take a guess? I think
    (R. O'Brien Dep., 11/30/2016, 52:20) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 52:10-18**

Objection.  Lack of personal knowledge/foundation/speculation (602).  Deponent himself says he

is only "tak[ing] a guess" (52:20).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 52:10-18**

O'Brien's testimony provides basis for facts upon which he was basing his answer.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 52:20-23**

    20 THE WITNESS: Can I take a guess? I think
    21 you had to get off the board by that time when you got
    22 to be 73 years old, and I think that's what we
    23 determined when I was leaving.
    (R. O'Brien Dep., 11/30/2016, 52:20-23)

**OBJECTIONS TO RAYMOND O'BRIEN 52:20-23**

Objection.  Lack of personal knowledge/foundation/speculation (602).  Deponent himself says he

is only "tak[ing] a guess" (52:20).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 52:20-23**

O'Brien's testimony provides basis for facts upon which he was basing his answer.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 57:17-58:4**

    17 Q. Was this agreement with Mr. Kelly, the
    18 agreement identified in the complaint as the agreement
    19 as modified, was that agreement memorialized in
    20 writing?

12

21 A. No.
22 Q. Why not?
23 A. What for? My God, you're making a mountain
24 out of a molehill. This is a -- this is a pity ass
25 little deal and you're going to be memorized,
1 memorialized? You know, all you're doing is stalling
2 for time at the behalf of your company.
3 Q. If you can tell me --
4 A. Cheap outfit. Put that in the record.
(R. O'Brien Dep., 11/30/2016, 57:17-58:4)

## OBJECTIONS TO RAYMOND O'BRIEN 57:17-58:4

No objection as to 57:17-58:2.  Objection as to 58:3-4.   Irrelevant/immaterial (401-402);

addresses issues that are not relevant in this case (401-402).  Prejudicial/confusing/waste of

time/cumulative (403).  Raymond O'Brien calling defendants a "cheap outfit" is non-responsive to

counsel's questions (611)(a)(1)).

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 57:17-58:4

Directly relevant and highly probative.  Reflects Mr. O'Brien's emotional distress.

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 62:3-4

3 Q. Why do you believe XPO is required to pay you
4 $6,000 per month?
(R. O'Brien Dep., 11/30/2016, 62:3-4) (Underlined testimony designated by plaintiff)
25 I presumed it was a liability of the corporation. The
(R. O'Brien Dep., 11/30/2016, 62:25) (Not designated by plaintiff)

## OBJECTIONS TO RAYMOND O'BRIEN 62:3-4

Objection.  Lack of personal knowledge/foundation/speculation (602).  Deponent himself says he

"presumed" only (62:25).

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 62:3-4

Testimony based on Mr.  O'Brien's corporate experience and knowledge.

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 62:9

9 Q. By XPO, I'm referring to XPO CNW, Inc.
(R. O'Brien Dep., 11/30/2016, 62:9) (Underlined testimony designated by plaintiff)
25 I presumed it was a liability of the corporation. The
(R. O'Brien Dep., 11/30/2016, 62:25) (Not designated by plaintiff)

## OBJECTIONS TO RAYMOND O'BRIEN 62:9

Objection.  Lack of personal knowledge/foundation/speculation (602).  Deponent himself says he

"presumed" only (62:25).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 62:9**

Testimony based on Mr. O'Brien's corporate experience and knowledge.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 62:24-63:8**

> 24 A. I had been paid the $6,000 since inception.
> 25 I presumed it was a liability of the corporation. The
> 1 liability should have been assumed by XPO. If they
> 2 weren't, I don't know why they wouldn't be.
> 3 Q. And who had been paying you the $6,000 per
> 4 month?
> 5 A. I don't know. I didn't do the bookkeeping.
> 6 Q. Con-Way?
> 7 A. I really don't know. Yeah. I presume.
> 8 Yeah, Con-Way, until it got sold out.
> (R. O'Brien Dep., 11/30/2016, 62:24-63:8)

**OBJECTIONS TO RAYMOND O'BRIEN 62:24-63:8**

No objection as to 63:3-8. Objection as to 62:24-63:2. Lack of personal

knowledge/foundation/speculation (602). Deponent himself says he "presumed" only (62:25).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 62:24-63:8**

Testimony is highly relevant in that it references performance of the contract. Testimony

regarding XPO assumption of obligation based on Mr. O'Brien's corporate experience and knowledge.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 70:7-11**

> 7 Q. The second paragraph refers to an established
> 8 tradition at Consolidated regarding retired CEOs. What
> 9 did you understand that Mr. Scott was referring to?
> 10 A. Just all the things we've been talking about,
> 11 the secretary, the office, the car, the driver. And I
> 12 didn't charge those country club expenses to the
> 13 company ever, that he refers to later.
> (R. O'Brien Dep., 11/30/2016, 70:7-11) (Underlined testimony designated by plaintiff)
> (R. O'Brien Dep., 11/30/2016, 70:12-13) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 70:7-11**

Incomplete: designation does not include the witness's complete answer. If the testimony is

admitted, for completeness, the designation should include testimony at 70:12-13 (106). Defendants

would not object to the designation of testimony that includes the deponent's testimony at 70:12-13.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 70:7-11**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 71:3-10**

3 Q. Who was Bill White?
4 A. He was chairman of the board and CEO.
5 Q. Did you succeed him as president and CEO?
6 A. I did.
7 Q. What benefits did Mr. White receive during
8 retirement?
9 A. I think the same ones.
10 Q. A car service and driver?
11 A. As far as I know. Well, I don't know. But I
12 know he had an office downtown Palo Alto, I presume.
(R. O'Brien Dep., 11/30/2016, 71:3-10) (Underlined testimony designated by plaintiff)
(R. O'Brien Dep., 11/30/2016, 71:11-12) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 71:3-10**

Objection.  Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of

time/cumulative (403).  This testimony is about another former CNW employee, not about Raymond

O'Brien.  Incomplete: designation does not include the witness's answer.  If the testimony is admitted,

for completeness, the designation should include testimony at 71:11-12 (106).  Lack of personal

knowledge/foundation/speculation (602); deponent himself says he doesn't know the answer to

counsel's question (71:11).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 71:3-10**

Directly relevant and highly probative.  Shows the Company's tendency to enter into similar

Contracts with past employee's. with regards to objection as to completeness, see Plaintiff's Second

Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised

designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 74:21-24**

24 Q. My question is a little bit different. This
25 letter says that you'll be furnished with an office for
(R. O'Brien Dep., 11/30/2016, 73:24-25) (Not designated by plaintiff)
21 Q. What did you were to
22 provide to Consolidated Freightways in return for the
23 services of a secretary?
24 A. 37 years of service.
 (R. O'Brien Dep., 11/30/2016, 74:21-24) (Underlined testimony designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 74:21-24**

Incomplete: designation does not include counsel's complete question.  If the testimony is

admitted, for completeness, the designation should include counsel's complete question at 73:24-25

(106). Defendants would not object to the designation of testimony that includes counsel's complete question at 73:24-25.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 74:21-24**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 78:1-3**

> 1 Q. I think you testified you stayed on the board
> 2 until 1995 as chairman.
> 3 A. I guess I did. Must have taken him up on
> 4 that. In fact, I don't think he had anything to say
> 5 about it.
> (R. O'Brien Dep., 11/30/2016, 78:1-3) (Underlined testimony designated by plaintiff)
> (R. O'Brien Dep., 11/30/2016, 78:4-5) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 78:1-3**

Incomplete: designation does not include the witness's complete answer. If the testimony is admitted, for completeness, the designation should include testimony at 78:4-5 (106).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 78:1-3**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 82:3-4**

> 23 A. No, I don't. I told you I never saw that,
> 24 never paid any attention to that.
> (R. O'Brien Dep., 11/30/2016, 81:23-24) (Not designated by plaintiff)
> 3 A. Well, I think probably whomever signed it
> 4 signed it much later because they agreed with it.
> (R. O'Brien Dep., 11/30/2016, 82:3-4) (Underlined testimony designated by plaintiff)
> 8 THE WITNESS: This -- look. Well, I don't
> 9 want to say who it is if I don't know --
> (R. O'Brien Dep., 11/30/2016, 82:8-9)(Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 82:3-4**

Lack of personal knowledge/foundation/speculation (602); deponent himself says he never saw the additional signature (81:23-24) and that he "do[es]n't want to say who it is if" he doesn't know (82:8-9). Deponent further speculates when he says that "whomever signed it signed it much later because they agreed with it" (82:3-4). Incomplete: designation does not include the witness's complete answer, and is thus taken out of context. If the testimony is admitted, for completeness, the designation

16

should include testimony at 81:23-24 and 82:8-9 (106).  Irrelevant and immaterial (401-402).  Unduly

prejudicial/confusing/waste of time/cumulative (403).  Any arrangement Don Moffitt might have had

with Raymond O'Brien is outside the scope of this litigation and will confuse the jury.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 82:3-4**

       Directly relevant and highly probative as to signature on contract documents representing later

ratification by corporate officer/director in 1991 (by signing the documents).  In later testimony

(included in designations) Mr. O'Brien testifies regarding being familiar with the signature and

identifies whose signature it is (Donald Moffit).  With regards to completeness objection see Plaintiff's

Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with

revised designation (revised to address Defendants' objection).   Donald Moffitt's 1991 ratification of

the Contract at issue in this matter is directly relevant and probative and directly within the scope of this

litigation.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 82:20-21**

       23 A. No, I don't. I told you I never saw that,
       24 never paid any attention to that.
       (R. O'Brien Dep., 11/30/2016, 81:23-24) (Not designated by plaintiff)
       3 A. Well, I think probably whomever signed it
       4 signed it much later because they agreed with it.
       (R. O'Brien Dep., 11/30/2016, 82:3-4) (Not designated by plaintiff)
       8 THE WITNESS: This -- look. Well, I don't
       9 want to say who it is if I don't know --
       (R. O'Brien Dep., 11/30/2016, 82:8-9)(Not designated by plaintiff)
       <u>20 THE WITNESS: I can tell what you it looks</u>
       <u>21 like, if you want to hear it.</u>
       (R. O'Brien Dep., 11/30/2016, 82:20-21) (Underlined testimony designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 82:20-21**

       Lack of personal knowledge/foundation/speculation (602); deponent himself says he never saw

the additional signature (81:23-24) and that he "do[es]n't want to say who it is if" he doesn't know

(82:8-9).  Deponent further speculates when he says that "whomever signed it signed it much later

because they agreed with it" (82:3-4).  Incomplete: designation does not include the witness's complete

answer, and is thus taken out of context.  If the testimony is admitted, for completeness, the designation

should include testimony at 81:23-24 and 82:8-9 (106).  Irrelevant and immaterial (401-402).  Unduly

prejudicial/confusing/waste of time/cumulative (403).  Any arrangement Don Moffitt might have had

with Raymond O'Brien is outside the scope of this litigation and will confuse the jury.

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 82:20-21

Directly relevant and highly probative as to signature on contract documents representing later

ratification by corporate officer/director in 1991 (by signing the documents).  In later testimony

(included in designations) Mr. O'Brien testifies regarding being familiar with the signature and

identifies whose signature it is (Donald Moffitt).  With regards to completeness objection see Plaintiff's

Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with

revised designation (revised to address Defendants' objection).    Donald Moffitt's 1991 ratification of

the Contract at issue in this matter is directly relevant and probative and directly within the scope of this

litigation.

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 83:1-2

1 THE WITNESS: It looks similar to a signature
2 I know, but I'm not sure it's his.
(R. O'Brien Dep., 11/30/2016, 83:1-2) (Underlined testimony designated by plaintiff)
4 THE WITNESS: Well, I could speculate that
 (R. O'Brien Dep., 11/30/2016, 83:4) (Not designated by plaintiff)
8 THE WITNESS: That would be my speculation.
(R. O'Brien Dep., 11/30/2016, 83:8) (Not designated by plaintiff)
14 THE WITNESS: So that's pure speculation, but
15 that's the way it appears to me.
(R. O'Brien Dep., 11/30/2016, 83:14-15) (Not designated by plaintiff)

## OBJECTIONS TO RAYMOND O'BRIEN 83:1-2

Lack of personal knowledge/foundation/speculation (602); deponent himself says this is just his

"speculation" (83:8) and that he is "not sure" whose signature it is (83:1-2).  Deponent  says that he

"could speculate" only as to whose signature it is (83:4), and that his guess was "pure speculation"

(83:14).  Incomplete: designation does not include the witness's complete answer, and is thus taken out

of context.  If the testimony is admitted, for completeness, the designation should include testimony at

83:8 and 83:14-15 (106).  Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of

time/cumulative (403).  Any arrangement Don Moffitt might have had with Raymond O'Brien is outside

the scope of this litigation and will confuse the jury.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 83:1-2**

Directly relevant and highly probative as to signature on contract documents representing later ratification by corporate officer/director in 1991 (by signing the documents). The fact that the signature looks similar to a signature he has seen is more than sufficient foundation, particularly where the individual's signature he recognizes is someone associated with the Company and that was an officer and director of the Company in 1991 when the document was (re) signed. With regards to completeness objection see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).    Donald Moffitt's 1991 ratification of the Contract at issue in this matter is directly relevant and probative and directly within the scope of this litigation.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 83:4-6**

> 1 THE WITNESS: It looks similar to a signature
> 2 I know, but I'm not sure it's his.
> (R. O'Brien Dep., 11/30/2016, 83:1-2) (Not designated by plaintiff)
> <u>4 THE WITNESS: Well, I could speculate that</u>
> <u>5 Moffitt succeeded Scott and he got this letter out and</u>
> <u>6 read it and put an okay on it in '91.</u>
> (R. O'Brien Dep., 11/30/2016, 83:4-6) (Underlined testimony designated by plaintiff)
> 8 THE WITNESS: That would be my speculation.
> (R. O'Brien Dep., 11/30/2016, 83:8) (Not designated by plaintiff)
> 14 THE WITNESS: So that's pure speculation, but
> 15 that's the way it appears to me.
> (R. O'Brien Dep., 11/30/2016, 83:14-15) (Not designated by plaintiff

**OBJECTIONS TO RAYMOND O'BRIEN 83:4-6**

Lack of personal knowledge/foundation/speculation (602); deponent himself says this is just his "speculation" (83:8) and that he is "not sure" whose signature it is (83:1-2). Deponent  says that he "could speculate" only as to whose signature it is (83:4), and that his guess was "pure speculation" (83:14). Incomplete: designation does not include the witness's complete answer, and is thus taken out of context. If the testimony is admitted, for completeness, the designation should include testimony at 83:8 and 83:14-15 (106). Irrelevant and immaterial (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Any arrangement Don Moffitt might have had with Raymond O'Brien is outside the scope of this litigation and will confuse the jury.

1

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 83:4-6**

2
        Directly relevant and highly probative as to signature on contract documents representing later

3
ratification by corporate officer/director in 1991 (by signing the documents).  The fact that the signature

4
looks similar to a signature he has seen is more than sufficient foundation, particularly where the

5
individual's signature he recognizes is someone associated with the Company and that was an officer

6
and director of the Company in 1991 when the document was (re) signed.  With regards to completeness

7
objection see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

8
Affirmative Use at Trial with revised designation (revised to address Defendants' objection).     Donald

9
Moffitt's 1991 ratification of the Contract at issue in this matter is directly relevant and probative and

10
directly within the scope of this litigation.

11

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 83:10-12**

12
        1 THE WITNESS: It looks similar to a signature
        2 I know, but I'm not sure it's his.
13
        (R. O'Brien Dep., 11/30/2016, 83:1-2) (Not designated by plaintiff)
        4 THE WITNESS: Well, I could speculate that
14
        (R. O'Brien Dep., 11/30/2016, 83:4) (Not designated by plaintiff)
        8 THE WITNESS: That would be my speculation.
15
        (R. O'Brien Dep., 11/30/2016, 83:8) (Not designated by plaintiff)
        <u>10 THE WITNESS: This looks like DE, and</u>
16
        <u>11 Moffitt's name was D.E. Moffitt, and that's the</u>
        <u>12 scribble.</u>
17
        (R. O'Brien Dep., 11/30/2016, 83:10-12) (Underlined testimony designated by plaintiff)
        14 THE WITNESS: So that's pure speculation, but
18
        15 that's the way it appears to me.
        (R. O'Brien Dep., 11/30/2016, 83:14-15) (Not designated by plaintiff
19

**OBJECTIONS TO RAYMOND O'BRIEN 83:10-12**

20
        Lack of personal knowledge/foundation/speculation (602); deponent himself says this is just his

21
"speculation" (83:8) and that he is "not sure" whose signature it is (83:1-2).  Deponent  says that he

22
"could speculate" only as to whose signature it is (83:4), and that his guess was "pure speculation"

23
(83:14).  Incomplete: designation does not include the witness's complete answer, and is thus taken out

24
of context.  If the testimony is admitted, for completeness, the designation should include testimony at

25
83:8 and 83:14-15 (106).  Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of

26
time/cumulative (403).  Any arrangement Don Moffitt might have had with Raymond O'Brien is outside

27
the scope of this litigation and will confuse the jury.

28

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 83:10-12**

Directly relevant and highly probative as to signature on contract documents representing later ratification by corporate officer/director in 1991 (by signing the documents). The fact that the signature looks similar to a signature he has seen is more than sufficient foundation, particularly where the individual's signature he recognizes is someone associated with the Company and that was an officer and director of the Company in 1991 when the document was (re) signed. With regards to completeness objection see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection). Donald Moffitt's 1991 ratification of the Contract at issue in this matter is directly relevant and probative and directly within the scope of this litigation.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 84:3-6**

3 MS. KNUDSON: Introducing Exhibit 4, which is
4 a letter dated November 24th, 1987, from Larry Scott to
5 Ray O'Brien.
6 (Exhibit 4 marked)
(R. O'Brien Dep., 11/30/2016, 84:3-6)

**OBJECTIONS TO RAYMOND O'BRIEN 84:3-6**

Objection as to 84:3-5. This is merely counsel's statement and is not testimony, and is therefore irrelevant and improper. (See Fed. R. Civ. Proc. 32; 401, 402.) Objection as to 84:6. This designation refers to the court reporter's notes and not testimony, and is therefore irrelevant and improper. (See Fed. R. Civ. Proc. 32; 401, 402.)

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 84:3-6**

Directly relevant to designation of Exhibits and later questioning/testimony by Mr. O'Brien on those exhibits. This is particularly true where, per the Court's standing order, the parties have conformed trial exhibit numbering to deposition exhibit numbering (to the extent possible).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 84:14**

1 THE WITNESS: It looks similar to a signature
2 I know, but I'm not sure it's his.
(R. O'Brien Dep., 11/30/2016, 83:1-2) (Not designated by plaintiff)
4 THE WITNESS: Well, I could speculate that
(R. O'Brien Dep., 11/30/2016, 83:4) (Not designated by plaintiff)
8 THE WITNESS: That would be my speculation.
(R. O'Brien Dep., 11/30/2016, 83:8) (Not designated by plaintiff)

14 THE WITNESS: So that's pure speculation, but
(R. O'Brien Dep., 11/30/2016, 83:14) (Not designated by plaintiff
<u>14 THE WITNESS: That is Moffitt.</u>
(R. O'Brien Dep., 11/30/2016, 84:14) (Underlined testimony designated by plaintiff)
13 MS. WENGER: You can compare them.
(R. O'Brien Dep., 11/30/2016, 84:13) (Not designated by plaintiff)
19 MR. C. O'BRIEN: Say yes.
20 MS. KNUDSON: Yes?
(R. O'Brien Dep., 11/30/2016, 84:19-20) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 84:14**

Lack of personal knowledge/foundation/speculation (602); deponent himself says this is just his "speculation" (83:8) and that he is "not sure" whose signature it is (83:1-2).  Deponent  says that he "could speculate" only as to whose signature it is (83:4), but that his guess was "pure speculation" (83:14).  Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  Any arrangement Don Moffitt might have had with Raymond O'Brien is outside the scope of this litigation and will confuse the jury. Additionally, counsel and Christopher O'Brien are coaching the witness (84:13; 84:19-20).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 84:14**

Directly relevant and highly probative as to Mr. Moffitt's ratification of the contract in 1991.  Mr. O'Brien's testimony provides more than sufficient foundation of establishing that he recognizes Mr. Moffitt's signature.  *See* prior responses to Defendants' objections.  With regards to any "completeness" objection, *see* Plaintiff's Second Supplemental Designations with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 84:16-18**

1 THE WITNESS: It looks similar to a signature
2 I know, but I'm not sure it's his.
(R. O'Brien Dep., 11/30/2016, 83:1-2) (Not designated by plaintiff)
4 THE WITNESS: Well, I could speculate that
(R. O'Brien Dep., 11/30/2016, 83:4) (Not designated by plaintiff)
8 THE WITNESS: That would be my speculation.
(R. O'Brien Dep., 11/30/2016, 83:8) (Not designated by plaintiff)
14 THE WITNESS: So that's pure speculation, but
(R. O'Brien Dep., 11/30/2016, 83:14) (Not designated by plaintiff
<u>16 Q. And you're -- you're indicating the signature</u>
<u>17 on the bottom of the letter, you believe that's Don</u>
<u>18 Moffitt's? Okay.</u>
(R. O'Brien Dep., 11/30/2016, 84:16-18) (Underlined testimony designated by plaintiff)
13 MS. WENGER: You can compare them.
(R. O'Brien Dep., 11/30/2016, 84:13) (Not designated by plaintiff)

22

19 MR. C. O'BRIEN: Say yes.
20 MS. KNUDSON: Yes?
(R. O'Brien Dep., 11/30/2016, 84:19-20) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 84:16-18**

Lack of personal knowledge/foundation/speculation (602); deponent himself says this is just his "speculation" (83:8) and that he is "not sure" whose signature it is (83:1-2). Deponent says that he "could speculate" only as to whose signature it is (83:4), and that his guess was "pure speculation" (83:14). Irrelevant and immaterial (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Any arrangement Don Moffitt might have had with Raymond O'Brien is outside the scope of this litigation and will confuse the jury. Additionally, counsel and Christopher O'Brien are improperly coaching the witness (84:13; 84:19-20) (701(a)).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 84:16-18**

Mr. O'Brien's testimony provides more than sufficient foundation of establishing that he recognizes Mr. Moffitt's signature. *See* prior responses to Defendants' objections. With regards to any "completeness" objection, *see* Plaintiff's Second Supplemental Designations with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 84:22**

1 THE WITNESS: It looks similar to a signature
2 I know, but I'm not sure it's his.
(R. O'Brien Dep., 11/30/2016, 83:1-2) (Not designated by plaintiff)
4 THE WITNESS: Well, I could speculate that
(R. O'Brien Dep., 11/30/2016, 83:4) (Not designated by plaintiff)
8 THE WITNESS: That would be my speculation.
(R. O'Brien Dep., 11/30/2016, 83:8) (Not designated by plaintiff)
14 THE WITNESS: So that's pure speculation, but
(R. O'Brien Dep., 11/30/2016, 83:14) (Not designated by plaintiff
22 THE WITNESS: Yes.
(R. O'Brien Dep., 11/30/2016, 84:22) (Underlined testimony designated by plaintiff)
13 MS. WENGER: You can compare them.
(R. O'Brien Dep., 11/30/2016, 84:13) (Not designated by plaintiff)
19 MR. C. O'BRIEN: Say yes.
20 MS. KNUDSON: Yes?
(R. O'Brien Dep., 11/30/2016, 84:19-20) (Not designated by plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 84:22**

Lack of personal knowledge/foundation/speculation (602); deponent himself says this is just his "speculation" (83:8) and that he is "not sure" whose signature it is (83:1-2). Deponent says that he

"could speculate" only as to whose signature it is (83:4), and that his guess was "pure speculation" (83:14). Irrelevant and immaterial (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Any arrangement Don Moffitt might have had with Raymond O'Brien is outside the scope of this litigation and will confuse the jury. Additionally, counsel and Christopher O'Brien are improperly coaching the witness (84:13; 84:19-20) (701(a)).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 84:22**

Mr. O'Brien's testimony provides more than sufficient foundation of establishing that he recognizes Mr. Moffitt's signature. *See* prior responses to Defendants' objections. Mr. Moffitt's ratification of the contract at issue in this matter is highly relevant (and not outside the scope of)t his litigation.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 88:8-11**

> 8 THE WITNESS: I personally think this whole
> 9 letter is redundant to the previous letter we looked
> 10 at. We were talking about secretary, car, blah, blah,
> 11 blah. So I don't -- I don't put any faith in the
> (R. O'Brien Dep., 11/30/16, 88:8-11)

**OBJECTIONS TO RAYMOND O'BRIEN 88:8-11**

Incomplete: designation does not include the witness's complete answer. If the testimony is admitted, for completeness, the designation should include testimony at 88:12 (106). Defendants would not object to the designation of testimony that includes the deponent's testimony at 88:12.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 88:8-11**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 89:15-17**

> 15 MS. KNUDSON: Introducing Exhibit 5, it's a
> 16 November 30th, 1987, letter from Raymond O'Brien to
> 17 L.R. Scott.
> (R. O'Brien Dep., 11/30/16, 89:15-17)

**OBJECTIONS TO RAYMOND O'BRIEN 89:15-17**

Objection. This is merely counsel's statement and not testimony, and is therefore irrelevant and improper. (See Fed. R. Civ. Proc. 32; 401, 402.)

1

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 89:15-17**

2

Relevant. Establishes designation of Exhibits and provides context for later

3

questioning/testimony about exhibits.  This is particularly true where here, per the Court's standing

4

orders, the parties (to the extent possible) have conformed trial exhibit numbers to deposition exhibit

5

numbers.

6

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 89:19**

7

19 (Exhibit 5 marked)
(R. O'Brien Dep., 11/30/16, 89:19)

8

**OBJECTIONS TO RAYMOND O'BRIEN 89:19**

9

Objection.  This designation refers to the court reporter's notes and not testimony, and is

10

therefore irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)

11

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 89:19**

12

Relevant. Establishes designation of Exhibits and provides context for later

13

questioning/testimony about exhibits.  This is particularly true where here, per the Court's standing

14

orders, the parties (to the extent possible) have conformed trial exhibit numbers to deposition exhibit

15

numbers.

16

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 97:16-98:1**

17

18

16 Q. Do you recall if you discussed the letters in
17 Exhibits 3 through 7 with the full board on December
18 7th, 1987?

19

19 A. Do I recall discussing it with them?
20 Q. Yes.

20

21 A. No, but they got this letter.
22 Q. There's another signature on the bottom of
23 the page. Do you believe that might be Don Moffitt's
24 signature?

21

22

25 A. Same. He must have reviewed that whole
1 file.

23

(R. O'Brien Dep., 11/30/16, 97:16-98:1) (Underlined testimony designated by Plaintiff
2 I know, but I'm not sure it's his.

24

(R. O'Brien Dep., 11/30/16, 83:2) (Not designated by Plaintiff)
4 THE WITNESS: Well, I could speculate that
5 Moffitt succeeded Scott and he got this letter out

25

(R. O'Brien Dep., 11/30/16, 83:4-5) (Not designated by Plaintiff)
8 THE WITNESS: That would be my speculation.

26

(R. O'Brien Dep., 11/30/16, 83:8) (Not designated by Plaintiff)
14 THE WITNESS: So that's pure speculation

27

(R. O'Brien Dep., 11/30/16, 83:14) (Not designated by Plaintiff)

28

25

**OBJECTIONS TO RAYMOND O'BRIEN 97:16-98:1**

Lack of personal knowledge/foundation/speculation (602); deponent himself says he never says he does not remember "discussing" the letters with the board (97:16-21). Deponent assumes, without actual personal knowledge, that Don Moffit "must have reviewed" the entire file (97:25-98:1). Irrelevant and immaterial (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Any arrangement Don Moffitt might have had with Raymond O'Brien is outside the scope of this litigation and will confuse the jury. Lack of personal knowledge of Don Moffitt's signature (83:2, 83:4-5, 83:8, 83:14).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 97:16-98:1**

Directly relevant and highly probative. Not confusing to the jury as Mr. O'Brien clearly identifies that he is speculating.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 101:9**

7 Q. And that was an office that was not at -- in
8 Consolidated Freightways' facilities?
9 A. My office. Chris's office.
(R. O'Brien Dep., 11/30/16, 101:9) (Underlined testimony designated by Plaintiff)
(R. O'Brien Dep., 11/30/16, 101:7-8) (Not designated by Plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 101:9**

Incomplete: designation does not include the question the deponent is answering. If the testimony is admitted, for completeness, the designation should include the question at 101:7-8 (106) Defendants would not object to the designation of testimony that includes counsel's question at 101:7-8.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 101:9**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 104:13-16**

13 Q. Mr. O'Brien, have you heard of O'Brien
14 Interests, Inc.?
15 A. Have I heard of it?
16 Q. Um-hum.
17 A. I did.
(R. O'Brien Dep., 11/30/16, 104:13-16) (Underlined testimony designated by Plaintiff)
(R. O'Brien Dep., 11/30/16, 104:17) (Not designated by Plaintiff)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## OBJECTIONS TO RAYMOND O'BRIEN 104:13-16

Incomplete: designation does not include the witness's answer.  If the testimony is admitted, for completeness, the designation should include the testimony at 104:17 (106).  Defendants would not object to the designation of testimony that includes the deponent's testimony at 104:17.

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 104:13-16

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 108:8

6 Q. What -- what did you use the car service
7 for?
8 A. Whatever I wanted to.
(R. O'Brien Dep., 11/30/16, 108:8) (Underlined testimony designated by Plaintiff)
(R. O'Brien Dep., 11/30/16, 108:6-7) (Not designated by Plaintiff

## OBJECTIONS TO RAYMOND O'BRIEN 108:8

Incomplete: designation does not include the question the deponent is answering.  If the testimony is admitted, for completeness, the designation should include the question at 108:6-7 (106).  Defendants would not object to the designation of testimony that includes counsel's question at 108:6-7.

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 108:8

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 108:11

9 Q. Business that was not related to Consolidated
10 Freightways?
11 A. For whatever I wanted it.
(R. O'Brien Dep., 11/30/16, 108:11) (Underlined testimony designated by Plaintiff)
(R. O'Brien Dep., 11/30/16, 108:9-10) (Not designated by Plaintiff)

## OBJECTIONS TO RAYMOND O'BRIEN 108:11

Incomplete: designation does not include the question the deponent is answering.  If the testimony is admitted, for completeness, the designation should include the question at 108:9-10 (106).  Defendants would not object to the designation of testimony that includes counsel's question at 108:9-10.

1

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 108:11**

2

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

3

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

4

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 114:23**

5

      21 Q. You're the owner. Correct? Are you also the

6

      22 owner of Brock Transportation?
      <u>23 A. I'm not. I'm a stockholder.</u>

7

      (R. O'Brien Dep., 1/17/17, 114:23) (Underlined testimony designated by Plaintiff)
      (R. O'Brien Dep., 11/30/16, 114:21-22) (Not designated by Plaintiff)

8

**OBJECTIONS TO RAYMOND O'BRIEN 114:23**

9

Incomplete: designation does not include the counsel's question.  If the testimony is admitted, for

10

completeness, the designation should include the corresponding question at 114:21-22 (106).

11

Defendants would not object to the designation of testimony that includes the deponent's testimony at

12

114:21-22.

13

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 114:23**

14

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

15

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

16

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN DEPOSITION ERRATA
CORRESPONDING TO DESIGNATIONS ABOVE**

17

*See* Exhibit F.

18

**OBJECTIONS TO RAYMOND O'BRIEN DEPOSITION ERRATA CORRESPONDING TO
DESIGNATIONS ABOVE**

19

20

Objection. Plaintiff's errata is improperly designated here because the changes reflected in the

21

errata are improper and because the errata greatly prejudiced Defendants in light of Raymond O'Brien's

22

death.  Specifically, the supposed corrections in the errata are so material in nature that they completely

23

change O'Brien's testimony regarding substantive issues in the case.  To allow Plaintiff to now rely on

24

such extensive rewritings of Raymond O'Brien's testimony, particularly given he is no longer alive,

25

would be improper and greatly prejudice Defendants. See Hambleton Brothers Lumber Co., 397 F.3d at

26

1225 (changes to deposition testimony are impermissible when not for purposes of correcting an error in

27

transcription); see also Garcia v. Pueblo Country Club, 299 F.3d 1233, 1245 n. 5 (10th Cir. 2002)

28

(finding that if a deponent was allowed to change the substance of what he or she said under oath, "one

could merely answer the questions with no thought at all then return home and plan artful responses. A deposition is not a take home examination.") and Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 389 (7th Cir. 2000) (holding that "a change of substance which actually contradicts the transcript is impermissible unless it can be plausibly represented as the correction of an error in transcription, such as dropping a 'not'"); Burns v. Bd. Of County Comm 'rs, 330 F.3d 1275, 1282 (10th Cir. 2003) (changes where the deponent was cross-examined at the deposition, that were not based on newly discovered evidence, and that did not reflect obvious confusion, were rejected by the court); Citgo Petroleum Corp. v. Ranger Enters., 832 F.Supp.2d 878, 884 (W.D. Wisc. 2009) (a deponent "may not add new testimony under the guise of correcting errors")  The changes are substantive, improper, and prejudicial and must be excluded. (403).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN DEPOSITION ERRATA CORRESPONDING TO DESIGNATIONS ABOVE**

Plaintiff's errata was submitted in a timely manner, prior to the completion of Mr. O'Brien's deposition and in particular before the second day of Mr. O'Brien's deposition.  The errata include revisions to the following lines of the transcript of the first day of Mr. O'Brien's deposition that correspondence to designations made by Plaintiff.

Corrections to testimony at p. 21:4, 45:1, 47:6, 56:1-2, 56:5, and 111:24. *See* Trial Ex. 144, attached hereto as **Exhibit B**.  In addition, Plaintiff reserves the right to use the errata as part of its counter designations to deposition testimony designated by Defendants.

Given that Defendants' were served with a copy of the Errata in advance of Mr. O'Brien's second day of deposition.  *See* Ex. B.  They had the opportunity to question him regarding these changes.  The fact that they did not do so was their own choice.  The changes on the errata involve testimony directly relevant to this matter, and will help prevent jury confusion regarding thing such as Mr. O'Brien's inadvertently switching the names of the individual who he negotiate the original agreement with (Jack Kelley) versus the individual he negotiated the modification with (Dr. Keith Kennedy) a slip understandable for someone in their 90s.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN VIDEO CORRESPONDING TO DESIGNATIONS ABOVE**

Unable to excerpt because concerns video.

29

1

2   **OBJECTIONS TO RAYMOND O'BRIEN VIDEO CORRESPONDING TO DESIGNATIONS ABOVE**

3

4       Irrelevant/immaterial (FRE 401-402). Prejudicial/confusing/waste of time/cumulative (FRE

5   403). Lack of personal knowledge/foundation/speculation (FRE 602). Hearsay (FRE 801).  Plaintiff's

6   attempt to designate all video deposition testimony corresponding to transcript designations is

7   insufficient and prejudicial to Defendants (FRE 403).  Plaintiff must cite to actual video testimony (i.e.

8   specific times on the video) he intends to use at trial.  Otherwise, Defendants are unable to object to

9   "any dead time, long pauses, and objections/colloquy," as well as coughing, interruptions by healthcare

10  providers, and other aspects of Raymond O'Brien's video deposition not necessary to understand his

11  answers, irrelevant to the claims in this case, and highly prejudicial to Defendants.  (See Court's

12  Standing Order ¶ 29 (b)).

13      If the Court is inclined to permit Plaintiff to show video, Defendants request that the Court order

14  Plaintiff to lodge specific video deposition designations, at which time Defendants can make any

15  necessary objections and also prepare Defendants' video deposition designations. Defendants further

16  request that they also be allowed to show portions of Raymond O'Brien's video testimony they

17  designate because allowing Plaintiff to show video while Defendants read testimony into the record

18  would be unduly prejudicial (FRE 403).

19  **RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN VIDEO CORRESPONDING TO DESIGNATIONS ABOVE**

20      With regards to Defendants use of any video, such prohibition would be unduly prejudicial to

21  Plaintiff for numerous reasons, including but not limited to the fact that (1) Raymond O'Brien is a key

22  witness in the case, (2) part of the damages that Plaintiff seeks recovery for (on Mr. O'Brien's behalf) is

23  Mr. O'Brien's emotional distress, and (3) Defendants will have their own witness able to testify in

24  person on the stand (and also may present video of its own witnesses deposition testimony)..

25      Such -objection is particularly unfounded where (1) it is Defendants' removal of this matter to

26  federal court that prevented trial on this matter from occurring while Mr. O'Brien was still alive, and (2)

27

28

the Court specifically ordered the video deposition be taken of the Plaintiff.  *See* ECF No. 19 Case Management and Pretrial Order.[2]

In addition, it is noteworthy that while Defendants have criticized Plaintiff's designated expert Dr. Paul Berg witness (designated on the issue of emotional distress), for only reviewing a portion of Mr. O'Brien's video deposition, *see, e.g.,* Defendants' MIL No. 1, at the same time now they would like the jury not to view any of that same video.

### *PLAINTIFF'S DEPOSITION DESIGNATIONS FOR RAYMOND O'BRIEN JANUARY 27, 2017 (VOLUME II)*

### EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN ENTIRE TRANSCRIPT AND ALL VIDEO PLUS ALL EXHIBITS

Unable to excerpt because Plaintiff referenced the entire transcript and video.

### OBJECTIONS TO RAYMOND O'BRIEN ENTIRE TRANSCRIPT AND ALL VIDEO PLUS ALL EXHIBITS

Irrelevant/immaterial (FRE 401-402). Prejudicial/confusing/waste of time/cumulative (FRE 403). Lack of personal knowledge/foundation/speculation (FRE 602). Hearsay (FRE 801). In accordance with the Court's standing order, the parties are to specifically designate those portions of depositions to be used at trial. (Standing Order ¶ 29.) Further, while the parties agree that Mr. O'Brien's transcript can be admitted for the limited purpose of showing materials reviewed by the experts, each party retains its rights to raise objections if, at any point, another party seeks to admit the entirety of the transcript for a different purpose.

As to the designation of the entire video of Raymond O'Brien video deposition, Defendants further object that allowing such designation would permit hours of irrelevant, immaterial, prejudicial, cumulative, speculative, and otherwise improper video evidence at trial (FRE 401-403).  The prejudicial nature of the second volume of Raymond O'Brien's video deposition is heightened by the fact that he is wearing the same clothes as he wore for his first day of deposition about 2 months earlier, making his physical decline that much more apparent.  He is also wearing an oxygen tube clearly visible in the

---

[2] As the Court is aware, this matter was initially filed in state court, with Mr. O'Brien immediately filing a motion for preference pursuant to California Code of Civil Procedure 36.  If that motion had been granted, which it almost certainly would have given Mr. O'Brien's age and health, trial would have occurred while he was still alive.  Unfortunately, Defendants prevented such expeditious trial by removing this matter to Federal Court.  *See* ECF No. 1.

video.  Images of Raymond O'Brien in this frail state prior to his demise will cause sympathy and bias the jury (FRE 403).

Ultimately, permitting the entirety of Raymond O'Brien's video testimony at trial would waste this court's time and conflict with Plaintiff's witness designation, which allots only 2.5 hours to Raymond O'Brien's direct testimony (while the video deposition is approximately 6 hours long) (FRE 403).  Allowing in the entirety of Raymond O'Brien's testimony would run afoul of the Court's Standing Order ¶ 29 (b), which sets forth procedure to "omit any dead time, long pauses, and objections/colloquy not necessary to understand the answers."

If the Court is inclined to permit Plaintiff to show video, Defendants request that the Court order Plaintiff to lodge specific video deposition designations, at which time Defendants can make any necessary objections and also prepare Defendants' video deposition designations. Defendants further request that they also be allowed to show portions of Raymond O'Brien's video testimony they designate because allowing Plaintiff to show video while Defendants read testimony into the record would be unduly prejudicial (FRE 403).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN ENTIRE TRANSCRIPT AND ALL VIDEO PLUS ALL EXHIBITS**

As indicated by the Parties Proposed Final Pretrial Order, which identifies 2.5 hours of testimony from Mr. O'Brien, Plaintiff does not intend to present the entirety of Mr. O'Brien's deposition at trial. That being said, given that Mr. O'Brien, a key witness, is not available to appear in person to testify at trial it would be unduly prejudicial to limit Plaintiff to any testimony identified before trial when Plaintiff has not heard Defendants' opening argument.  In addition, Mr. O'Brien will not be Plaintiff's witness and therefore, Plaintiff cannot make the full determination of testimony necessary (and avoiding cumulative testimony) until other witnesses testify.   Notwithstanding the foregoing, Plaintiff has made a good faith effort to identify specific designations to be used.

With regards to Defendants use of any video, such prohibition would be unduly prejudicial to Plaintiff for numerous reasons, including but not limited to the fact that (1) Raymond O'Brien is a key witness in the case, (2) part of the damages that Plaintiff seeks recovery for (on Mr. O'Brien's behalf) is

Mr. O'Brien's emotional distress, and (3) Defendants will have their own witness able to testify in person on the stand (and also may present video of its own witnesses deposition testimony)..

Such -objection is particularly unfounded where (1) it is Defendants' removal of this matter to federal court that prevented trial on this matter from occurring while Mr. O'Brien was still alive, and (2) the Court specifically ordered the video deposition be taken of the Plaintiff. *See* ECF No. 19 Case Management and Pretrial Order.[3]

In addition, it is noteworthy that while Defendants have criticized Plaintiff's designated expert Dr. Paul Berg witness (designated on the issue of emotional distress), for only reviewing a portion of Mr. O'Brien's video deposition, *see, e.g.,* Defendants' MIL No. 1, at the same time now they would like the jury not to view any of that same video.

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 119-123

Caption Page of Deposition transcript.

## OBJECTIONS TO RAYMOND O'BRIEN 119-123

As to 119-121:25, Defendants object as these portions of the transcript are irrelevant and immaterial, and address preliminary matters not relevant to the claims at issue in this case (FRE 401-402); prejudice/confusion/waste of time/cumulative (FRE 403).

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 119-123

Provided  for context only.

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 129:24-130:5

> 24 MS. WENGER: And just to be clear, we're
> 25 referring to the negotiation of the modification of the
> 1 $6,000 a month as opposed to the --
> 2 MS. KNUDSON: Right.
> 3 MS. WENGER: original 1987 --
> 4 MS. KNUDSON: We're talking about the
> 5 agreement as modified.
> (R. O'Brien Dep., 1/17/17, 129:24-130:5)

---

[3] As the Court is aware, this matter was initially filed in state court, with Mr. O'Brien immediately filing a motion for preference pursuant to California Code of Civil Procedure 36.  If that motion had been granted, which it almost certainly would have given Mr. O'Brien's age and health, trial would have occurred while he was still alive.  Unfortunately, Defendants prevented such expeditious trial by removing this matter to Federal Court.  *See* ECF No. 1.

1   **OBJECTIONS TO RAYMOND O'BRIEN 129:24-130:5**

2         Objection. Designation refers only to discussion between counsel for Plaintiff and counsel for

3   Defendants, and not questions directed to or testimony by the witness.

4   **RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 129:24-130:5**

5         Directly relevant and helpful for clarity and to prevent confusion by the jury regarding Mr.

6   O'Brien's testimony.

7   **EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 130:17-131:21**

8         17 Q. Was anyone else present when you discussed
      18 the agreement with Dr. Kennedy?

9         19 A. Not that I remember.
      20 Q. Do you recall where the discussion took

10        21 place?
      22 A. I'm not sure.

11        23 Q. What specifically were the terms of the
      24 agreement?

12        25 A. Well, I told him in lieu of paying about
      1 $100,000 (sic) a month rent, paying for a full-time

13        2 secretary and paying for a car with a driver and
      3 furnishing me an office, since I had an office at my

14        4 home in Livermore, why didn't we just settle for a flat
      5 rate per month instead of all this stuff; it would be a

15        6 lot cheaper for you and simpler for us, and we settled
      7 for $6,000 a month and that was it. It was my idea.

16        8 Q. Did Dr. Kennedy specifically agree that the
      9 agreement was for life?

17        10 A. I don't know. I don't recall about life. I
      11 presume it was for life because the previous one was.

18        12 They were talking about extension of the previous
      13 agreement for $6,000 a month.

19        14 Q. And what were your obligations under the
      15 agreement?

20        16 A. To live. I had already done the obligations.
      17 We were -- I was obligated to respond to any phone

21        18 calls in my endeavor, but by then it was getting late
      19 in life and they weren't calling very often.

22        20 Q. Under what circumstances could the agreement
      21 be terminated?

23        (R. O'Brien Dep., 1/17/17, 130:17-131:21)

24  **OBJECTIONS TO RAYMOND O'BRIEN 130:17-131:21**

25        Objection.  Irrelevant and prejudicial (FRE 401-403).  The terms of the arrangement between

26  O'Brien and XPO CNW are not relevant to the claims remaining in this case.

27

28

1

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 130:17-131:21**

2

Directly relevant and highly probative to basis to establish background of the contract and

3

Defendants' knowledge of the contract, and their lack of good faith, including their lack of good faith in

4

claiming they made a determination there was no contract/ the contract was unenforceable.

5

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 145:20-24**

6

7
    20 MS. WENGER: So I said you can testify as to
    21 the companies that you did work for and identify

8
    22 those.
    23 THE WITNESS: The only one I know of is
    24 Con-Way.
    (R. O'Brien Dep., 1/17/17, 145:20-24)

9

**OBJECTIONS TO RAYMOND O'BRIEN 145:20-24**

10

Objection. Designation includes statements by counsel for Plaintiff, who is not a witness, and is

11

phrased as a statement as to what witness can testify to rather than a question.  Prejudicial (FRE 403).

12

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 145:20-24**

13

O'Brien's testimony about his working for Defendant is directly relevant and the question

14

provides context for the answer.  No objection to the form of the question was made at deposition and

15

thus is waived.

16

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 163:10-164:3**

17

18
    <u>10 Q. During your last day of deposition you said
    11 that following your retirement, you were available to
    12 provide consulting to Consolidated. Correct?</u>

19
    <u>13 A. Right.
    14 Q. How often did you provide consulting after</u>

20
    <u>15 you retired?
    16 MS. WENGER: And just to be clear, we're</u>

21
    <u>17 talking about retirement in 1988 when you're asking
    18 that question. Correct?</u>

22
    <u>19 MS. KNUDSON: Correct.
    20 THE WITNESS: I don't know. Quite a few</u>

23
    <u>21 times. But there's a gap in there where we had
    22 conversations, and you can call them whatever you want</u>

24
    <u>23 to call them, and they got into a situation where
    24 Consolidated Freightways was losing a million dollars a</u>

25
    <u>25 day and I went back to work, and all that kind of runs
    1 together for me in time-wise, but I had a lot of</u>

26
    <u>2 conversations with Scott and conversations with
    3 Con-Way, a few. A few. Because they moved away.</u>

27
    4 Whatever it was, it was cheap labor.
    (R. O'Brien Dep. 1/17/17, 163:10-164:3) (Underlined testimony designated by Plaintiff)

28
    (R. O'Brien Dep., 1/17/17, 164:4) (Not designated by Plaintiff)

1

**OBJECTIONS TO RAYMOND O'BRIEN 163:10-164:3**

2

    Objection.  Irrelevant, speculative and prejudicial (FRE 401, 402, 403, 602). The designation

3

includes testimony regarding his alleged post-retirement work with XPO CNW that is irrelevant to the

4

claims remaining in the case.  Incomplete.  Designation omits portions of witness's answer.  If admitted,

5

for completeness, the designation should include 164:4.

6

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 163:10-164:3**

7

    Directly relevant and highly probative to the contract at issue in this matter. With regards to

8

"completeness" objection, see Plaintiff's Second Amended Supplemental Designations of Deposition

9

Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants'

10

objection).

11

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 164:6-11**

12

    6 Q. After you came back for the period to turn
    7 the company around and do not Moffitt was hired as CEO,

13

    8 did you continue to provide consulting?
    9 A. Let me make it clear. I came back because

14

    10 the company was losing money. Don Moffitt came with me
    11 and was very important in getting it turned around.

15

    (R. O'Brien Dep., 1/17/17, 164:6-11)

16

**OBJECTIONS TO RAYMOND O'BRIEN 164:6-11**

17

    Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402).  Unduly

18

prejudicial/confusing/waste of time/cumulative (403). Reference to Raymond O'Brien's post-retirement

19

work and another CNW employee is irrelevant to the claims at issue and prejudicial.

20

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 164:6-11**

21

    Directly relevant and highly probative to services and value that Mr. O'Brien provided under the

22

contract, also goes to Mr. O'Brien's history and role with the company as it relates to the emotional

23

distress suffered when Defendants ceased payments without notice and in a fraudulent manner.

24

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 164:23-165:9**

25

    23 Q. Do you recall if after your board service
    24 ended you continued to provide consult to Con-Way?

26

    25 A. Yeah. I did. Which board service?
    1 Q. The board service that ended in 1995, I

27

    2 believe.
    3 A. At which company?

28

    4 Q. Con-Way. Consolidated.

5 A. I think -- I had some conversations with them
6 from time to time, yeah.
7 Q. Do you recall who you had those conversations
8 with?
9 A. What's the president's name?
(R. O'Brien Dep., 1/17/17, 164:23-165:9)

## OBJECTIONS TO RAYMOND O'BRIEN 164:23-165:9

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403).Unduly prejudicial/confusing/waste of time/cumulative (403). Reference to Raymond O'Brien's post-retirement work is irrelevant to the claims at issue and prejudicial.

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 164:23-165:9

Directly relevant and highly probative to contract at issue, Defendants' knowledge of the contract and services/value provided under the contract.

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 165:23-166:2

23 Q. Did you provide consultation to anyone else
24 at Con-Way or Consolidated?
25 A. I already told you I provided conversations
1 (sic) with Larry Scott, and nobody else other than
2 Stotlar.
(R. O'Brien Dep., 1/17/17, 165:23-166:2)

## OBJECTIONS TO RAYMOND O'BRIEN 165:23-166:2

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Reference to Raymond O'Brien's post-retirement work is irrelevant to the claims at issue and prejudicial.

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 165:23-166:2

Directly relevant and highly probative to contract at issue, Defendants' knowledge of the contract and services/value provided under the contract.

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 174:8-175:24

8 Q. I'll introduce as Exhibit 16 an E-mail --
9 with the first -- E-mail chain with the first E-mail
10 being from Gordon Devens to Renee O'Brien and Ray
11 O'Brien dated September 17th, 2016.
12 (Exhibit 16 marked)
13 BY MS. KNUDSON:
14 Q. Mr. O'Brien, do you recognize this E-mail

15 chain?
16 A. Do I what?
17 Q. Do you recognize this E-mail chain? Do you
18 recognize this E-mail chain?
19 A. Do I recognize the E-mail?
20 Q. Yes.
21 A. I wouldn't say I recognized the E-mail.
22 Q. Do you have any --
23 A. But I recognize the content.
24 Q. Do you have any reason to believe that the
(R. O'Brien Dep., 1/17/17, 174:8-175:24)

**OBJECTIONS TO RAYMOND O'BRIEN 174:8-175:24**

Objection. Irrelevant. Prejudicial. (FRE 401-403).  The designated testimony includes language indicating either that Raymond O'Brien failed to hear and/or understand the question (which he answers later on in the transcript).  This testimony is irrelevant and prejudicial to Defendants.

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 174:8-175:24**

The fact that Mr. O'Brien, a man in his 90s had trouble hearing imposes no substantial prejudice on Defendants, and is far outweighed by the probative value of Mr. O'Brien's testimony about the email marked as Exhibit 16.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 184:18-187:9**

18 Q. Okay. And so these are the letters, the
19 three letters between yourself and Mr. Scott back in
20 1987. Correct?
21 And so my question is going to be when you
22 talk about the written agreement regarding your office,
23 secretary and car service, the writing that you're
24 referring to is these three letters. Correct?
25 A. It's all in here.
1 Q. Okay. And so these three letters reflect the
2 terms of -- of that agreement?
3 A. Beg pardon?
4 Q. These -- these letters reflect the terms
5 of -- of the agreement you came to?
6 A. In fact, they go a little overboard. All
7 those country clubs.
8 Q. If you look -- if you look at the second
9 page.
10 A. Yeah.
11 Q. Do you recognize that as Mr. Scott's
12 signature where it says -- if you look at the second
13 page.
14 A. Yeah.
15 Q. Is that Mr. Scott's signature?
16 A. It is.
17 Q. Okay.

18 A. Who else signs their name L-a-r-y?
19 Q. Somebody else named Lary. I'm not going to
20 joke, somebody else named Lary. So then if you turn to
21 the third page, same boring question, do you recognize
22 the signature on the second page?
23 A. Recognize what?
24 Q. So the letter dated November 24th, 1987, and
25 this is actually Exhibit 4.
1 A. The second page?
2 Q. It's the third page of what I gave you, but
3 it's the one that at the top says November 24th, 1987,
4 and it's marked Exhibit 4.
5 A. We don't have the same page.
6 Q. Uh-oh. It's the third page. Is that
7 Mr. Scott's signature that you recognize?
8 A. Yep.
9 Q. Okay. And then if you turn to the last page,
10 which is Exhibit 5, that's your signature at the
11 bottom? So is that your signature on the bottom of
12 the -- excuse me -- bottom of page 5 -- Exhibit 5?
13 A. Okay.
14 Q. And -- and what was Mr. Scott's position at
15 that -- at that time in the company?
16 A. Was he president?
17 Q. Is that your recollection?
18 A. Well, I don't know what he was or is about to
19 be.
20 Q. And did you believe at that time that he had
21 the authority to negotiate --
22 A. Yeah.
23 Q. -- an agreement on behalf of Consolidated?
24 A. Yeah, he would.
25 Q. Okay. And it was your understanding that the
1 board was aware of this agreement that's reflected in
2 Exhibits 3 through 5?
3 A. The board was aware of what?
4 Q. So is it your understanding that -- that
5 Consolidated's board of directors was aware of the
6 agreement that was negotiated between yourself and
7 Mr. Scott that's reflected in Exhibits 3 through 5?
8 A. I think the board would have known about all
9 of this.
(R. O'Brien Dep., 1/17/17, 184:18-187:9)

## OBJECTIONS TO RAYMOND O'BRIEN 184:18-187:9

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly

prejudicial/confusing/waste of time/cumulative (403). The designated testimony discusses the signatures

at the bottom of versions of letters Plaintiff contends constitute a written agreement, but are not

authenticated and are not contemporaneous with the letter, so irrelevant (FRE 401-402, 901).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 184:18-187:9**

Directly relevant and highly probative to the agreement at issue, Defendants' knowledge of the agreement and bad faith in terminating payments to Mr. O'Brien.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 188:2-190:19**

```
2 marked as Exhibit 7. So is Exhibit 7 correspondence
3 that you sent to Consolidated's board of directors
4 enclosing the three letters between yourself and
5 Mr. Scott representing the agreement regarding your
6 secretary, office and car service that we've just been
7 talking about? Is that a yes? You're shaking your
8 head.
9 A. Yes. Yeah.
10 Q. Okay. Okay.
11 A. Yes.
12 Q. Did any member of Consolidated's board ever
13 indicate to you that they objected to that --
14 A. No.
15 Q. -- agreement? And from 1988 through 2006,
16 were the board members at Consolidated aware that that
17 car service, secretary and office was being provided to
18 you?
19 A. Yeah. They met there all the time.
20 Q. Okay. So they saw you in your office?
21 A. All the time.
22 Q. Okay. Did any of those board members ever
23 come -- when you were in your office, come --
24 A. Sure.
25 Q. -- by and talk to you and ask you questions
1 and --
2 A. Sure.
3 Q. -- and get your input?
4 A. Yeah. Or I theirs.
5 Q. Okay.
6 A. We used the office for corporate
7 headquarters.
8 Q. Okay. Okay. And during -- during that time
9 from 1988 to 2005, did any of those directors or anyone
10 else at Con-Way ever indicate that there was a problem
11 with those benefits being provided to you?
12 A. No.
13 Q. No. Did anyone at Consolidated during that
14 time from 1988 to 2005 indicated that that was
15 something they didn't think they had to provide you?
16 A. No.
17 Q. No. Okay. And so from 1988 through 1991,
18 you served on Consolidated's board of directors?
19 A. Right.
20 Q. Okay. And then you continued to serve on
21 their board of directors from 1991 through 1995?
22 A. On the parent company.
23 Q. And in 1991 you -- you came back as -- as an
```

40

24 employee, and what was your position when they brought
25 you back, if you remember?
1 A. Probably president.
2 Q. President. Okay. And that -- that term as
3 president lasted approximately a year?
4 A. Much weren't much worried about titles when
5 you're losing that kind of money.
6 Q. And -- and so that -- that role lasted about
7 a year?
8 A. About nine months.
9 Q. About nine months. Okay. And did it stop
10 when the company was in better shape and you had helped
11 turn around --
12 A. We got paid the full year, that was it.
13 Q. Okay. For that -- that particular role?
14 Okay. And as part of your work during that -- that
15 time period, did you terminate Lary Scott?
16 A. Yeah.
17 Q. Okay. Do you think he was happy with being
18 terminated?
19 A. Well, no.
(R. O'Brien Dep., 1/17/17, 188:2-190:19)

**OBJECTIONS TO RAYMOND O'BRIEN 188:2-190:19**

Irrelevant to the claims at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Mischaracterization of testimony (602).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 188:2-190-19**

Directly relevant and highly probative to the agreement at issue, Defendants' knowledge of that agreement and bad faith in terminating payments to Mr. O'Brien.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 191:24-194:3**

24 Q. Did anyone at any time ever tell you that --
25 that they thought the office, the secretary and the car
1 service was just a gift -- I'll rephrase.
2 Anyone at Consolidated at any time ever
3 indicate that they thought the office, secretary and
4 car service was just a gift that they thought they
5 could stop providing you at any time? So let me ask it
6 again. So --
7 A. Did you say secretary?
8 Q. I did say secretary. So did anyone at
9 Consolidated ever or when it became Con-Way, Inc. make
10 any statements to you that they believed that those
11 benefits were just a gift that they could stop
12 providing at any time?
13 A. No. No.
14 Q. Okay.
15 A. You've got to really understand those people
16 felt very indebted to me. In fact, the most money

41

17 we've ever made was under my jurisdiction running the
18 motor carrier.
19 Q. So they valued having you around --
20 A. And I --
21 Q. -- having your input?
22 A. And I didn't have to do that. Well, maybe I
23 had to, but I didn't have to.
24 Q. So you talked about how it -- you then -- at
25 some point you determined that -- you approached Keith
1 Kennedy about modifying the agreement so that instead
2 of Consolidated paying all those expenses for the
3 office, the secretary and the car service, that you
4 would change the structure so it was a $6,000 a month
5 payment instead. Is that right?
6 A. Yeah. I should have -- I should have tied it
7 to inflation.
8 Q. And you -- in the complaint you -- it
9 originally references that -- that maybe you thought
10 that it was in 2011, but you've testified earlier
11 that -- that you can't from the top of your head
12 remember the date, but that it would be based on --
13 A. The first invoice.
14 Q. -- the invoice. Okay. Is that correct?
15 Okay.
16 And do you remember at the point when you
17 spoke to Dr. Kennedy about making that modification, do
18 you have an approximate amount of kind of based on your
19 previous knowledge of the company about how much
20 those -- the benefits of the office, the secretary and
21 the car service were costing the company at the point
22 when you were negotiating that -- that modification?
23 A. I don't know about the question. I knew it
24 was costing the company a fortune.
25 Q. Do you have an estimate of -- of the
1 approximate amount that you recall that that was?
2 A. Yeah. I think the office itself was probably
3 $90,000 a year.
(R. O'Brien Dep., 1/17/17, 191:24-194:3)

## OBJECTIONS TO RAYMOND O'BRIEN 191:24-194:3

Irrelevant to the claims at issue in this case (401-402). Unduly prejudicial/confusing/waste of

time/cumulative (403). The designated testimony includes inflammatory language, speculation and

exaggerations by the witness that are highly prejudicial to Defendants (403, 602).  Mischaracterization

of testimony (602).

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 191:24-194:3

Directly relevant and highly probative to the agreement at issue, Defendants' knowledge of that

agreement and bad faith in terminating payments to Mr. O'Brien.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 194:6-8**

> 4 Q. Okay.
> 5 A. We redid the building and we had Gensler do
> <u>6 it and that's expensive. And then we had a Lincoln for</u>
> <u>7 a car, at least that would be $75,000, a year and a</u>
> <u>8 secretary probably making 120-.</u>
> (R. O'Brien Dep., 1/17/17, 194:6-8) (Underlined testimony designated by Plaintiff)
> (R. O'Brien Dep., 1/17/17, 194:4-5) (Not designated by Plaintiff)

**OBJECTIONS TO RAYMOND O'BRIEN 194:6-8**

Irrelevant to the claims at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Incomplete as it omits question that provides context for response (106).  If admitted, designation should include 194:4-5 (106).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 194:6-8**

Relevant to the benefits provided under the original agreement at issue in this matter.  With regards to the objection as to completeness, see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 194:14-195:25**

> 14 Q. You've identified the three things. And when
> 15 you were serving on the board and when you were serving
> 16 as CEO, you -- you reviewed the company's financial
> 17 statements?
> 18 A. I did what?
> 19 Q. So when you were serving on the company's
> 20 board, Consolidated's board, and in your role when you
> 21 were CEO, did you have occasion to review the company's
> 22 financial statements and expenses?
> 23 A. Every month.
> 24 Q. Every month. Okay. So that would provide
> 25 you an idea, you would see expenses like the cost of
> 1 the office?
> 2 A. Yeah, it was provided to me.
> 3 Q. Okay.
> 4 A. And we turned it over to Moffitt, and that
> 5 became the headquarters.
> 6 Q. And so when you -- when you negotiated with
> 7 Mr. Kennedy that modification of $6,000 a month, did
> 8 you believe that Mr. Kennedy had the authority to
> 9 negotiate and deal with you?
> 10 A. Of course.
> 11 Q. And based -- was that based on his --
> 12 A. I had the authority. Had I been chairman of
> 13 the board, I wouldn't have had any qualms about it at

14 all.
15 Q. Do you have any reason to think he doesn't
16 have the authority --
17 A. I would have told the board and that's it.
18 Q. Sorry. Talking over each other.
19 A. Anyway, there wasn't a thought, just came up
20 on a spur of the moment.
21 Q. And did -- in your conversations with
22 Dr. Kennedy, did you ever -- did he ever make any
23 statements or did you ever make any statements to him
24 that the monthly payments would end after a certain
25 period of time?
(R. O'Brien Dep., 1/17/17, 194:14-195:25)

## OBJECTIONS TO RAYMOND O'BRIEN 194:14-195:25

Irrelevant to the claims at issue in this case (401-402). The witness's functions prior to his

retirement are irrelevant to the claims in this case. Unduly prejudicial/confusing/waste of

time/cumulative (403). Hearsay (801).

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 194:14-195:25

Directly relevant and highly probative to the agreement at issue and Defendants' knowledge of

that agreement. Not hearsay to the extent introduced not for the truth of the matter but to establish

Defendants knowledge. Furthermore, any statements by Dr. Kennedy, who at the time was CNW's

CEO, are a statement by the opposing party and thus fall within an exception to the hearsay rule.

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 196:2-199:22

2 Q. No. And it was your understanding that just
3 like the original --
4 A. Just go on.
5 Q. -- it would go --
6 A. Of course.
7 Q. -- as long as you were living. Correct?
8 A. Best deal they ever had.
9 Q. Very valuable. And so in order to -- the
10 deal you negotiated with him, with Dr. Kennedy, was
11 that in order to get that $6,000 a month payment, you
12 would give up the office, the secretary and the car
13 service?
14 A. Car service only when I wanted it.
15 Q. Correct.
16 A. No driver or car. That was the other thing.
17 I had to pay the driver too. You add it on to this
18 other bill.
19 Q. And the car itself. Correct?
20 A. We stopped that.
21 Q. Okay. And we've -- and you've talked
22 about -- you've testified both in the first day and a

44

23 little bit today about these payments not being a big
24 deal. I think your first day you referred to it being
25 peanuts. Did you think it was -- do you think that the
1 money is not a big deal to you or you're referring to
2 the money not being a big deal to --
3 A. To the corporation. It wasn't a big deal.
4 Still isn't. It is to me.
5 Q. Absolutely. And that's because in the scheme
6 of things, the amount of money to the company is --
7 is --
8 A. And I need it.
9 Q. Absolutely. I -- absolutely.
10 A. These people working for me aren't free.
11 Q. And so the modifications, when the structure
12 of the agreement was changed to the $6,000 a month,
13 would you have expected that there would be a formal
14 board resolution approving that agreement?
15 A. Not really.
16 Q. And why -- why not?
17 A. Because Kennedy approved it, and I think if
18 you're chairman of the board, you have some authority.
19 That's like saying could he go downstairs and buy
20 Coca-Cola without board approval.
21 Q. So it was because of the amount was not --
22 A. Was not -- it's a big deal for the company,
23 they saved a lot of money.
24 Q. Right. But the amount --
25 A. Why would he have to run to the board and say
1 hey, we're going to save this amount of money when -- I
2 don't know what he did, but I wouldn't.
3 Q. Okay. And we've -- you've talked a little
4 bit earlier about O'Brien Interests, and so that's an
5 entity that -- would it be accurate to say they manage
6 your financial and personal affairs somewhat like a
7 secretary would? Or if I'm not accurately describing
8 it, you can kind of give a description of what they --
9 A. In a sense it was a holding company. We used
10 O'Brien Interests to make acquisitions or to use the
11 people to make acquisitions.
12 Q. But they --
13 A. Chris is president of it. Aren't you, Chris?
14 Q. It's not his deposition. But they also --
15 O'Brien Interests also does things like handle your
16 bills and manage your --
17 A. Handle the bills.
18 Q. -- financial affairs?
19 A. And they did financial stuff.
20 Q. Okay.
21 A. And it's a full-time -- I'm probably losing
22 money on it, $6,000.
23 Q. And they -- so they're your -- for a lot of
24 purposes, they're your agent that they've -- you've
25 given them authority to do things on your behalf. Is
1 that correct?
2 A. Of course.

45

3 Q. Okay. And do you give them direction and
4 authority to send the invoices to Consolidated or
5 Con-Way for the $6,000 a month? Did you give them --
6 did you give O'Brien Interests the direction to send
7 those invoices that we've been looking at previously?
8 A. I just told her --
9 Q. Okay.
10 A. It worked fine.
11 Q. And so from 2006 through November 2015, you
12 received monthly payments from Con-Way? And when was
13 the -- when was the first month that you stopped
14 receiving checks from Con-Way?
15 A. I guess nine months ago. $82,000 worth.
16 Q. December of 2015, does that --
17 A. I saw that number somewhere.
18 Q. Okay. Did -- did anyone from Con-Way or XPO
19 contact you ahead of time and -- and inform you that
20 they were going to stop making --
21 A. No.
22 Q. -- those payments? Okay. And from 2006
(R. O'Brien Dep., 1/17/17, 196:2-199:22)

## OBJECTIONS TO RAYMOND O'BRIEN 196:2-199:22

Irrelevant to the claims at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). The designated testimony includes inflammatory language, speculation and exaggerations by the witness that are highly prejudicial to Defendants (403, 602). Mischaracterization of testimony; counsel's questions contain opinions on the facts presented by the witness that are prejudicial to Defendants (602; for example, counsel for Plaintiff opines that Raymond O'Brien's services were Very valuable" and that the amount of money in question was "Absolutely" not a "big deal"). The designation is also incomplete in that it omits portions of questions and answers (106).

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 196:2-199:22

Directly relevant and highly probative as to agreement at issue, Defendants' knowledge of that agreement and emotional distress suffered by Plaintiff when Defendants stopped payments. Also relevant to help jury understand why payments owed to Mr. O'Brien were being sent to O'Brien Interests. With regards to the objection as to "completeness", see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 200:6-16

6 Q. Did you ever have any communication from

7 anyone at Con-Way saying there was any problem with --
8 A. There was never --
9 Q. -- payment? No?
10 A. No.
11 Q. And since 19 -- you talked about how after
12 you retired in 1988, you were available and individuals
13 at Consolidated, what then became Con-Way, came to you
14 for -- to discuss business matters and to get your
15 advice. Is that correct?
16 A. They came, yeah.
(R. O'Brien Dep., 1/17/17, 200:6-16)

## OBJECTIONS TO RAYMOND O'BRIEN 200:6-16

Irrelevant to the claims at issue in this case (401-402). Unduly prejudicial/confusing/waste of

time/cumulative (403).

## RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 200:6-16

Directly relevant and highly probative to agreement, services provided by Mr. O'Brien, and

Defendants' knowledge of that agreement and bad faith in terminating payments.

## EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 201:2-12

2 Q. And during that time after 1998, you always
3 made yourself available --
4 A. Yeah. I was available.
5 Q. -- for advice? Was there a point where you
6 just -- you stopped getting calls? Because you
7 testified earlier about it kind of trailed off as far
8 as --
9 A. Yeah.
10 Q. So it wasn't because you stopped being
11 available or willing to provide the --
12 A. No. I went to lunch with those guys and you
13 talk business. That's where advice comes up, through
14 business or golf.
(R. O'Brien Dep., 1/17/17, 201:2-12) (Underlined testimony designated by Plaintiff)
(R. O'Brien Dep., 1/17/17, 201:13-14) (Not designated by Plaintiff)

## OBJECTIONS TO RAYMOND O'BRIEN 201:2-12

Objection.  Irrelevant, speculative and prejudicial (FRE 401, 402, 403, 602). The designation

includes testimony regarding his alleged post-retirement work with XPO CNW that is irrelevant to the

claims remaining in the case.  Incomplete.  Designation omits portions of witness's answer.  If admitted,

for completeness, the designation should include 201:13-14 (106).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 201:2-12**

Directly relevant and highly probative to agreement, services provided by Mr. O'Brien, and Defendants' knowledge of that agreement and bad faith in terminating payments. With regards to objection as to completeness, *see* Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 201:15-202:4**

```
15 Q. When you -- when you negotiated that
16 modification to the $6,000 a month with Kennedy, did
17 Dr. Kennedy say -- ever say anything to you about well,
18 we're going to give you the $6,000 a month, but you --
19 you're required to use it for -- to -- to pay for an
20 office and secretary and a car service, or -- or was it
21 just a deal where he said well, we'll just -- in
22 exchange for you giving up the office and secretary --
23 A. Yeah.
24 Q. -- and car service, we'll give you the $6,000
25 a month?
1 A. Yeah.
2 Q. There was no condition on what it got used
3 for?
4 A. No. It was just in lieu of the other.
(R. O'Brien Dep., 1/17/17, 201:15-202:4)
```

**OBJECTIONS TO RAYMOND O'BRIEN 201:15-202:4**

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 201:15-202:4**

Directly relevant and highly probative to agreement, Defendants' knowledge of that agreement and bad faith in terminating payments.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 203:22-204:1**

```
22 So we've been discussing individuals from
23 Consolidated and then Con-Way call it after 1988,
24 coming to -- talking to you to get advice and to get
25 your input. Did that sometimes also happen -- did they
1 give you a call over the phone?
2 THE WITNESS: Sometimes.
(R. O'Brien Dep., 1/17/17, 203:22-204:1) (Underlined testimony designated by Plaintiff)
(R. O'Brien Dep., 1/17/17, 204:2) (Not designated by Plaintiff)
```

1

**OBJECTIONS TO RAYMOND O'BRIEN 203:22-204:1**

2

Irrelevant (401, 402). Designation includes statements by counsel for Plaintiff, who is not a

3

witness, and is phrased as a statement rather than a question (602). Prejudicial (403).  Incomplete.

4

Designation omits portions of witness's answer.  If admitted, for completeness, the designation should

5

include 204:2 (106).

6

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 203:22-204:1**

7

Directly relevant and highly probative to agreement, services provided by Mr. O'Brien, and

8

Defendants' knowledge of that agreement and bad faith in terminating payments.  No objection was

9

made to Plaintiff's counsel as to the form of the question and thus any such objection was waived.

10

With respect to objection as to completeness, *see* Plaintiff's Second Amended Supplemental

11

Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to

12

address Defendants' objection).

13

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN 204:18-21**

14

18 MS. WENGER: Got you. Last thing, I would
19 like to request that we receive a copy of the

15

20 transcript for Mr. O'Brien to review and make changes
21 before it's in final.

16

(R. O'Brien Dep., 1/17/17, 204:18-21)

17

**OBJECTIONS TO RAYMOND O'BRIEN 204:18-21**

18

Designation consists of statement by counsel for Plaintiff, who is not a witness.  Counsel's

19

request for a transcript of the deposition is irrelevant to the claims at issue in this case.

20

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN 204:18-21**

21

Relevant to Mr. O'Brien's reservation of rights to make changes.

22

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN DEPOSITION ERRATA CORRESPONDING TO DESIGNATIONS ABOVE**

23

*See* Exhibit F.

24

**OBJECTIONS TO RAYMOND O'BRIEN DEPOSITION ERRATA CORRESPONDING TO DESIGNATIONS ABOVE**

25

26

Objection. Plaintiff's errata is improperly designated here because the changes reflected in the

27

errata are improper and because the errata greatly prejudiced Defendants in light of Raymond O'Brien's

28

death.  Specifically, the supposed corrections in the errata are so material in nature that they completely

change O'Brien's testimony regarding substantive issues in the case.  To allow Plaintiff to now rely on such extensive rewritings of Raymond O'Brien's testimony, particularly given he is no longer alive, would be improper and greatly prejudice Defendants. See Hambleton Brothers Lumber Co., 397 F.3d at 1225 (changes to deposition testimony are impermissible when not for purposes of correcting an error in transcription); see also Garcia v. Pueblo Country Club, 299 F.3d 1233, 1245 n. 5 (10th Cir. 2002) (finding that if a deponent was allowed to change the substance of what he or she said under oath, "one could merely answer the questions with no thought at all then return home and plan artful responses. A deposition is not a take home examination.") and Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 389 (7th Cir. 2000) (holding that "a change of substance which actually contradicts the transcript is impermissible unless it can be plausibly represented as the correction of an error in transcription, such as dropping a 'not'"); Burns v. Bd. Of County Comm 'rs, 330 F.3d 1275, 1282 (10th Cir. 2003) (changes where the deponent was cross-examined at the deposition, that were not based on newly discovered evidence, and that did not reflect obvious confusion, were rejected by the court); Citgo Petroleum Corp. v. Ranger Enters., 832 F.Supp.2d 878, 884 (W.D. Wisc. 2009) (a deponent "may not add new testimony under the guise of correcting errors")  The changes are substantive, improper, and prejudicial and must be excluded. (403).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN DEPOSITION ERRATA CORRESPONDING TO DESIGNATIONS ABOVE**

Errata submitted by Mr. O'Brien was limited to first day of testimony and did not relate to second day of testimony.  See re: Exhibit F, errata as associated with first day of testimony.

**EXCERPT OF DESIGNATION OF RAYMOND O' BRIEN VIDEO CORRESPONDING TO DESIGNATIONS ABOVE**

Unable to excerpt because concerns video.

**OBJECTIONS TO RAYMOND O'BRIEN VIDEO CORRESPONDING TO DESIGNATIONS ABOVE**

Irrelevant/immaterial (FRE 401-402). Prejudicial/confusing/waste of time/cumulative (FRE 403). Lack of personal knowledge/foundation/speculation (FRE 602). Hearsay (FRE 801).  Plaintiff's attempt to designate all video deposition testimony corresponding to transcript designations is insufficient and prejudicial to Defendants (FRE 403).  Plaintiff must cite to actual video testimony (i.e.

specific times on the video) he intends to use at trial.  Otherwise, Defendants are unable to object to "any dead time, long pauses, and objections/colloquy," as well as coughing, interruptions by healthcare providers, and other aspects of Raymond O'Brien's video deposition not necessary to understand his answers, irrelevant to the claims in this case, and highly prejudicial to Defendants.  (See Court's Standing Order ¶ 29 (b)).

The prejudicial nature of the second volume of Raymond O'Brien's video deposition is heightened by the fact that he is wearing the same clothes as he wore for his first day of deposition about 2 months earlier, making his physical decline that much more apparent.  He is also wearing an oxygen tube clearly visible in the video.  Images of Raymond O'Brien in this frail state prior to his demise will cause sympathy and bias the jury (FRE 403).

If the Court is inclined to permit Plaintiff to show video, Defendants request that the Court order Plaintiff to lodge specific video deposition designations, at which time Defendants can make any necessary objections and also prepare Defendants' video deposition designations. Defendants further request that they also be allowed to show portions of Raymond O'Brien's video testimony they designate because allowing Plaintiff to show video while Defendants read testimony into the record would be unduly prejudicial (FRE 403).

**RESPONSE TO OBJECTIONS TO RAYMOND O'BRIEN VIDEO CORRESPONDING TO DESIGNATIONS ABOVE**

With regards to Defendants use of any video, such prohibition would be unduly prejudicial to Plaintiff for numerous reasons, including but not limited to the fact that (1) Raymond O'Brien is a key witness in the case, (2) part of the damages that Plaintiff seeks recovery for (on Mr. O'Brien's behalf) is Mr. O'Brien's emotional distress, and (3) Defendants will have their own witness able to testify in person on the stand (and also may present video of its own witnesses deposition testimony)..

Such -objection is particularly unfounded where (1) it is Defendants' removal of this matter to federal court that prevented trial on this matter from occurring while Mr. O'Brien was still alive, and (2) the Court specifically ordered the video deposition be taken of the Plaintiff.  *See* ECF No. 19 Case Management and Pretrial Order.[4]

---

[4] As the Court is aware, this matter was initially filed in state court, with Mr. O'Brien immediately filing a motion for preference pursuant to California Code of Civil Procedure 36.  If that motion had been

1    In addition, it is noteworthy that while Defendants have criticized Plaintiff's designated expert

2  Dr. Paul Berg witness (designated on the issue of emotional distress), for only reviewing a portion of

3  Mr. O'Brien's video deposition, *see, e.g.,* Defendants' MIL No. 1, at the same time now they would like

4  the jury not to view any of that same video.

5    Last, Defendants should be estopped from preventing Plaintiff from presenting video of this

6  testimony where Defendants were the one insisting on taking a second day of Mr. O'Brien's deposition

7  over Plaintiff's objections due to health concerns and the impact such stress would have on Mr. O'Brien.

8  Any prejudice that Defendants may suffer is of their own doing and far outweighed by the probative

9  value of video testimony.

10

11    ***DEPOSITION DESIGNATIONS FOR LARY SCOTT***

12  **EXCERPT OF DESIGNATION OF LARY SCOTT 34:11-16**

13    11 Q So in this litigation, Mr. O'Brien claims that
    12 in November '87, he entered into a written agreement
14    13 with CF, Inc., that he would be entitled -- for some
    14 period of time, he would be entitled to a secretary, a
15    15 car service, and an office. Are you --
    16 A Yes.
16    (L. Scott Dep., 2/16/17, 34:11-16)

17  **OBJECTIONS TO LARY SCOTT 34:11-16**

18    Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402).  Unduly

19  prejudicial/confusing/waste of time/cumulative (403). Defendants further object to this designation as it

20  is incomplete and does not contain a question (106).

21  **RESPONSE TO OBJECTIONS TO LARY SCOTT 34:11-16**

22    Directly relevant and highly probative to agreement at issue and Defendants' knowledge of that

23  agreement.  With regards to the incompleteness objection, *see* Plaintiff's Second Amended Deposition

24  Designations with revised designations.

25  **EXCERPT OF DESIGNATION OF LARY SCOTT 34:24-35:21**

26    24 Q Are you aware of any such arrangement?

27  _____

28  granted, which it almost certainly would have given Mr. O'Brien's age and health, trial would have
occurred while he was still alive.  Unfortunately, Defendants prevented such expeditious trial by
removing this matter to Federal Court.  *See* ECF No. 1.

25 A Yes.
1 Q What were the terms of such arrangement
2 between CF and O'Brien?
3 A Well, he had an office at the company's
4 expense. And one of the benefits as the CEO was he had
5 a limo, a short one, and a driver who did other things
6 around the office. And he was -- there was an agreement
7 where Ray would have car service. As I remember, if I
8 was not using the car, he could call from his office and
9 have the driver pick him up and take him to the city or
10 wherever he was going. If I was using the car, he
11 was -- he could rent one, and it would be part of his
12 office expense.
13 Q And was having an executive secretary part of
14 that agreement as well?
15 A I believe it was, yeah. Uh-huh. Yes.
16 Q What would O'Brien provide to CF in return?
17 A Well, as the outside -- or as the chairman,
18 presiding chairman over the board, I used him quite a
19 bit for counsel and advice. We had lunch together every
20 three weeks or so, played a round of golf maybe once a
21 month, at which time we would talk business. But other
(L. Scott Dep., 2/16/17, 34:24-35:21)

## OBJECTIONS TO LARY SCOTT 34:24-35:21

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403).

## RESPONSE TO OBJECTIONS TO LARY SCOTT 34:24-35:21

Directly relevant and highly probative to agreement at issue and Defendants' knowledge of that agreement. With regards to the incompleteness objection, *see* Plaintiff's Second Amended Deposition Designations with revised designations.

## EXCERPT OF DESIGNATION OF LARY SCOTT 43:10-20

10 Exhibit 3 to O'Brien's deposition. This is another one
11 of the letters.
12 A Okay.
13 Q And I'll give you a minute to read it. Let me
14 know when you're ready.
15 A Okay.
16 Wow. Okay.
17 Q Do you recognize this letter?
18 A Uh-huh.
19 Q And is that your signature on the bottom
20 saying, "Lary"?
(L. Scott Dep. 2/16/17, 43:10-20)

**OBJECTIONS TO LARY SCOTT 43:10-20**

Irrelevant and immaterial (401-402); prejudicial/confusing/waste of time/(403).  Defendants further object to this designation as incomplete: designation ends in the middle of a question/answer (106).

**RESPONSE TO OBJECTIONS TO LARY SCOTT 43:10-20**

Directly relevant and highly probative as it involves authentication of his signature on the original agreement.  With regards to the incompleteness objection, *see* Plaintiff's Second Amended Deposition Designations with revised designations.

**EXCERPT OF DESIGNATION OF LARY SCOTT 79:24-80:20**

24 So you previously testified that as part of
25 the agreement that we've been discussing, that after
1 Mr. O'Brien retired as CEO, he would continue to serve
2 as an outside chairman on CF's Board of Directors;
3 correct?
4 MS. SHMYGOL: Same objection.
5 THE WITNESS: Well, I'm not -- I'm not sure of
6 the -- of the -- you know, the proper description of
7 what he did, outside chairman or --
8 BY MS. WENGER:
9 Q But he would continue to serve on the board?
10 A Yeah. Yeah. Right.
11 Q Would that be accurate?
12 A Right.
13 Q Okay. And as part of that, he would -- as
14 part of serving on the board, he would provide advice
15 and kind of lend his expertise to you and others while
16 he was -- while he was continuing to serve on the board?
17 Would that be correct?
18 MS. SHMYGOL: Objection. Vague and ambiguous.
19 Go ahead.
20 THE WITNESS: Yeah. Okay.
(L. Scott Dep. 2/16/17, 79:24-80:20)

**OBJECTIONS TO LARY SCOTT 79:24-80:20**

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Mischaracterization of testimony (602).

**RESPONSE TO OBJECTIONS TO LARY SCOTT 79:24-80:20**

Directly relevant and highly probative to agreement at issue and Defendants' knowledge of that agreement.  With regards to the incompleteness objection, *see* Plaintiff's Second Amended Deposition Designations with revised designations.

***DEPOSITION DESIGNATIONS FOR DOUGLAS STOTLAR***

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 9:1-25**

1 MARKED FOR IDENTIFICATION:
2 DEPOSITION EXHIBIT 1
3 9:09 a.m.
4 BY MS. SHMYGOL:
5 Q. Mr. Stotlar, do you recognize this subpoena?
6 A. I do.
7 Q. And you're appearing here pursuant to this document
8 today?
9 A. Correct.
10 Q. And just for clarification, this is the amended
11 subpoena indicating the time for today, and on the
12 third page the proof of service is not filled out
13 because you asked us to email it to you.
14 A. Correct.
15 Q. Okay. Great. Did you do anything to prepare for
16 today's deposition?
17 A. No.
18 Q. Did you review any documents?
19 A. I don't have any documents.
20 Q. So I know in the subpoena we asked for some documents
21 and did you do anything to search for those documents?
22 A. I read your subpoena and I have no documents, so . . .
23 Q. Are you sure you don't have any emails or anything
24 like that?
25 A. I'm sure.
(D. Stotlar Dep., 2/23/2017, 9:1-25)

**OBJECTIONS TO DOUGLAS STOTLAR 9:1-25**

Irrelevant and immaterial; addresses preliminary matters not relevant to the facts at issue in this case (401-402); prejudice/confusion/waste of time/cumulative (403).

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 9:1-25**

Provided for background.

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 11:4-7**

4 Q. So when were you -- let's go through and -- when did
5 you become CEO of Con-Way?
6 A. In April of 2005.
7 Q. And were you CEO -- just CEO or CEO and president?
(D. Stotlar Dep., 2/23/2017, 11:4-7)

**OBJECTIONS TO DOUGLAS STOTLAR 11:4-7**

Incomplete: designation ends in the middle of a question/answer.

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 11:4-7**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 22:24-23:11**

```
24 Q. So during the time that you were CEO of the holding
25 company, Raymond O'Brien always had the office on
1 premises --
2 A. Correct.
3 Q. -- at the company?
4 A. Until we moved the headquarters to Ann Arbor in 2008.
5 Q. Okay. And what happened, then, to -- so he didn't
6 have an office after that?
7 A. So there was -- apparently there was an agreement made
8 with Ray to allow him to work out of his son -- I
9 believe out of his son's offices and there would be
10 some type of financial consideration paid to his son
11 for providing that space to his father.
(D. Stotlar Dep., 2/23/2017, 22:24-23:11)
```

**OBJECTIONS TO DOUGLAS STOTLAR 22:24-23:11**

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly

prejudicial/confusing/waste of time/cumulative (403).  Lack of personal

knowledge/foundation/speculation (602).

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 22:24-23:11**

Directly relevant and highly probative to the agreement at issue, Defendants' knowledge of that

agreement and their bad faith in terminating payments to Mr. O'Brien and attempting to claim that a

contract did not exist.  This is particularly true given that Mr. Stotlar was CEO of Con-Way at the time it

was acquired by XPO Logistics and the disclosure statement identifying the agreement was shared with

XPO.

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 24:22-24; 25:1-8; 25:13-15; 26:2-5; 26:8-9**

```
22 A. My understanding was that when Ray retired from the
23 board, there was an agreement reached between Ray and
24 the board at that time, and that's all I know. I was
(D. Stotlar Dep., 2/23/2017, 24:22-24)

1 point in time. And, in fact, after I became CEO,
2 Keith Kennedy, who had been part of the board up to
3 that point, was my mentor for getting up to speed on
4 being a publicly traded company CEO, and he said,
```

56

5 "Look, I'll deal with the past chairman agreements.
6 You don't have to worry about those." And I didn't.
7 Q. Okay. What was your understanding of the terms of the
8 agreement with Mr. O'Brien?
(D. Stotlar Dep., 2/23/2017, 25:1-8)

13 really went down into the details of the terms. I
14 knew that we provided him with an office and some
15 administrative support.
(D. Stotlar Dep., 2/23/2017, 25:13-15)

2 Q. Okay. Did you have any understanding as to the
3 duration of the arrangement with Mr. O'Brien, how long
4 was the company to provide him with an office?
5 A. My understanding is it was for life.
(D. Stotlar Dep., 2/23/2017, 26:2-5)

8 A. Just through conversation -- just through
9 conversations with Jennifer Pileggi and Keith Kennedy.
(D. Stotlar Dep., 2/23/2017, 26:8-9)

## OBJECTIONS TO DOUGLAS STOTLAR 24:22-24; 25:1-8; 25:13-15; 26:2-5; 26:8-9

Irrelevant and immaterial; address facts no longer at issue in this case (401-402). Unduly

prejudicial/confusing/waste of time/cumulative (403).  Lack of personal

knowledge/foundation/speculation (602).  Defendants further object to these designations as they are

taken out of context and mischaracterize the witness's testimony by selectively cutting out language that

does not suit Plaintiff's purpose.  For example, Plaintiff designates testimony around the witness's

statement that he "was not involved in the process" and "wasn't around" when the alleged agreement

between O'Brien and CNW was made (106).

## RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 24:22-24; 25:1-8; 25:13-15; 26:2-5; 26:8-9

Directly relevant and highly probative to agreement at issue and Defendants' knowledge of that

agreement.  With regards to the incompleteness objection, *see* Plaintiff's Second Amended Deposition

Designations with revised designations.

## EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 31:18-32:2

18 Q. And was it your understanding that the company at that
19 time was not ready to commit to providing an offsite
20 office to either Mr. Moffitt or Mr. O'Brien for any
21 future period of time?
22 MS. WENGER: Objection. Vague and
23 ambiguous.
24 A. No. I'm not aware of that. My understanding is that

25 these were commitments they made to these gentlemen
1 when they retired from their positions for life and
2 we're going to honor them. That was my understanding.
(D.Stotlar Dep., 2/23/2017, 31:18-32:2)

## OBJECTIONS TO DOUGLAS STOTLAR 31:18-32:2

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly

prejudicial/confusing/waste of time/cumulative (403).   Lack of personal

knowledge/foundation/speculation (602).

## RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 31:18-32:2

Directly relevant and highly probative to agreement at issue, Defendants' knowledge of that

agreement and Defendants' bad faith in stopping payments to Mr. O'Brien.


## EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 33:7-17

7 Q. So you mentioned earlier that at some point the
8 arrangement with Mr. O'Brien changed whereas the
9 company began providing him a cash payment and not a
10 physical office space; is that correct?
11 A. Correct.
12 Q. And what was your understanding as to why that change
13 was made?
14 A. Because we moved the offices from California,
15 corporate headquarters from California to Ann Arbor,
16 Michigan, so we would no longer have a physical
17 presence there.
(D. Stotlar Dep., 2/23/2017, 33:7-17)

## OBJECTIONS TO DOUGLAS STOTLAR 33:7-17

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly

prejudicial/confusing/waste of time/cumulative (403).   Lack of personal

knowledge/foundation/speculation (602).

## RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 33:7-17

Directly relevant and highly probative to agreement at issue and Defendants' knowledge of that

agreement.

## EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 34:5-9

5 Q. Let's go into the details of the change from providing
6 a physical office to providing a cash payment. Do you
7 remember how you first learned of that idea?

8 A. I think Keith Kennedy handled it on behalf of the
9 board with Ray.
(D. Stotlar Dep., 2/23/2017, 34:5-9)

**OBJECTIONS TO DOUGLAS STOTLAR 34:5-9**

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402).  Lack of personal knowledge/foundation/speculation (602).  Stotlar does not have any personal knowledge of the payments and so cannot properly comment on them.

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 34:5-9**

Directly relevant and highly probative to agreement at issue and Defendants' knowledge of that agreement.

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 34:17-23**

17 Q. Did you have to approve that change?
18 A. No. Because it would have ultimately gone to the
19 board for ratification.
20 Q. Okay. Do you know if this new arrangement or
21 agreement was memorialized in writing?
22 A. I believe there was a board resolution at some point
23 in time concerning that change.
(D.Stotlar Dep., 2/23/2017, 34:17-23)

**OBJECTIONS TO DOUGLAS STOTLAR 34:17-23**

Irrelevant and immaterial; address facts no longer at issue in this case (401-402).  Lack of personal knowledge/foundation/speculation (602).  Stotlar does not have any personal knowledge of the payments and so cannot properly comment on them.

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 34:17-23**

Directly relevant and highly probative to agreement at issue and Defendants' knowledge of that agreement.  With regards to the incompleteness objection, *see* Plaintiff's Second Amended Deposition Designations with revised designations.

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 35:7-18**

7 Q. Okay. And do you remember what the sum of the monthly
8 cash payment was?
9 A. No.
10 Q. And what was your understanding as to the duration of
11 that agreement with Mr. O'Brien?
12 A. Goes back to the fact that I thought the agreement was

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS / CASE NO. 4:16-CV-03869-JSW

13 for life and I didn't have any other reason to believe
14 it wasn't.
15 Q. So did you understand at the time that the payments --
16 the cash payments would be made for the rest of
17 Mr. O'Brien's life?
18 A. That was my understanding.
(D. Stotlar Dep., 2/23/2017, 35:7-18)

**OBJECTIONS TO DOUGLAS STOTLAR 35:7-18**

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Lack of personal knowledge/foundation/speculation (602). Stotlar does not have any personal knowledge of the payments and so cannot properly comment on them.

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 35:7-18**

Directly relevant and highly probative to agreement at issue, Defendants' knowledge of that agreement and bad faith in terminating payments to Mr. O'Brien.

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 36:2-17**

2 Q. And I'm sorry. I probably should have asked a more
3 specific question. Were those discussions about
4 changing from the -- from providing Mr. O'Brien with a
5 physical office space to providing him with cash
6 payments or are those discussions in any way related
7 to either providing Mr. O'Brien with an office or
8 providing him with payments?
9 A. Yes.
10 Q. The latter?
11 A. All of them. Because it would have been a continuum;
12 right? When we moved the offices the first time from
13 Palo Alto to Menlo Park there would have been
14 conversations around what do we do with Ray, and then
15 the same thing when it was to provide the external
16 office space. And I'll reiterate the fact that this
17 was something established by a prior board. It had
(D. Stotlar Dep., 2/23/2017, 36:2-17)

**OBJECTIONS TO DOUGLAS STOTLAR 36:2-17**

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Lack of personal knowledge/foundation/speculation (602). Stotlar does not have any personal knowledge of the payments and so cannot properly comment on them.

1

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 36:2-17**

2

Directly relevant and highly probative to agreement at issue, Defendants' knowledge of that

3

agreement and bad faith in terminating payments.

4

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 36:23-37:7**

5

23 Q. Did you discuss the change in arrangement with

6

24 Mr. O'Brien from providing him a physical office to
25 making cash payments, did you discuss that change with
1 anybody else on the holding company's board?

7

2 A. Other than Keith Kennedy, no. And then only if there
3 was -- only when there was a full board discussion on

8

4 the topic, and it was just -- again, it would have
5 been a briefing by Jennifer and Keith on what the

9

6 arrangements that they'd come up with and the board
7 ratified.

10

(D. Stotlar Dep., 2/23/2017, 36:23-37:7)

11

**OBJECTIONS TO DOUGLAS STOTLAR 36:23-37:7**

12

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly

13

prejudicial/confusing/waste of time/cumulative (403). Lack of personal

14

knowledge/foundation/speculation (602). Stotlar does not have any personal knowledge of the

15

payments and so cannot properly comment on them.

16

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 36:23-37:7**

17

Directly relevant and highly probative to agreement at issue, Defendants' knowledge of that

18

agreement and bad faith in terminating payments.

19

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 38:2-4**

20

2 briefing on what had transpired, because basically I

21

3 think the thought was we were still honoring the
4 commitment that was made to Ray.

22

(D. Stotlar Dep. 2/23/2017, 38:2-4)

23

**OBJECTIONS TO DOUGLAS STOTLAR 38:2-4**

24

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly

25

prejudicial/confusing/waste of time/cumulative (403). Lack of personal

26

knowledge/foundation/speculation (602). Incomplete: designation ends in the middle of a

27

question/answer (106).

28

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 38:2-4**

Directly relevant and highly probative to agreement at issue, Defendants' knowledge of that agreement and bad faith in terminating payments.

With regards to the completeness objection, *see* Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 43:8-13**

    8 Q. Okay. And similar question with regards to the
    9 monthly payment that replaced that office and
    10 administrative support. Would it be fair to say that
    11 that payment would not have -- that monthly payment
    12 would not have been implemented unless it was approved
    13 by the board?
    (D. Stotlar Dep. 2/23/2017, 43:8-13)

**OBJECTIONS TO DOUGLAS STOTLAR 43:8-13**

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  Lack of personal knowledge/foundation/speculation (602).

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 43:8-13**

Directly relevant and highly probative to agreement at issue, Defendants' knowledge of that agreement and bad faith in terminating payments.

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR 43:16-44:11**

    16 A. Again, I realized -- I don't -- because it was an
    17 agreement with Ray and the board, it would have come
    18 back to the board.
    19 BY MS. WENGER:
    20 Q. Okay.
    21 A. And I recall that it did.
    22 Q. Okay. And maybe a better question is would it be fair
    23 to say that that payment wouldn't have been
    24 implemented unless the appropriate body approved it?
    25 A. Yes.
    1 Q. Okay. And it was your understanding, I understand you
    2 weren't involved when the original agreement was put
    3 into place, but it was your understanding from
    4 conversations with individuals at Con-Way that the
    5 company had an obligation to provide Ray with an
    6 office and administrative support?
    7 A. That was my understanding.

8 Q. Okay. And did you ever have any belief that the
9 company had a right to terminate those benefits if
10 they wanted to?
11 A. I didn't believe we had that right.
(D.Stotlar Dep. 2/23/2017, 43:16-44:11)

**OBJECTIONS TO DOUGLAS STOTLAR 43:16-44:11**

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly

prejudicial/confusing/waste of time/cumulative (403). Lack of personal

knowledge/foundation/speculation (602).

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR 43:16-44:11**

Directly relevant and highly probative to agreement at issue, Defendants' knowledge of that

agreement and bad faith in terminating payments. Also directly relevant to rebutting claims by one of

Defendants' witness(es) that Stotlar did not believe there was a binding contract

**EXCERPT OF DESIGNATION OF DOUGLAS STOTLAR EXHIBIT 1**

*See* Exhibit G.

**OBJECTIONS TO DOUGLAS STOTLAR EXHIBIT 1**

Irrelevant and immaterial; addresses preliminary matters not relevant to the facts at issue in this

case (401-402); prejudice/confusion/waste of time/cumulative (403).

**RESPONSE TO OBJECTIONS TO DOUGLAS STOTLAR EXHIBIT 1**

This designation was inadvertent and Plaintiff withdraws this designation of Stotlar Ex. 1.

### *DEPOSITION DESIGNATIONS FOR GORDON DEVENS*

**EXCERPT OF DESIGNATION OF GORDON DEVENS 31:4-6**

4 Q. You talked -- you talked about there being a
5 newly formed legal term -- excuse me -- legal team after
6 the merger. Can you describe the -- the structure of
(G. Devens Dep., 11/28/2017, 31:4-6)

**OBJECTIONS TO GORDON DEVENS 31:4-6**

Incomplete: designation ends in the middle of a sentence. Objection because counsel is not a

witness; this designation is limited to counsel's question. Unduly prejudicial/confusing/waste of

time/cumulative (403). Lack of personal knowledge/foundation/speculation (602).

1

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 31:4-6**

2

Directly relevant and highly probative. See also Plaintiff's Second Amended Supplemental

3

Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to

4

address Defendants' objection).   Counsel's question provides context for next designation.

5

**EXCERPT OF DESIGNATION OF GORDON DEVENS 31:18-20; 32:4-16**

6

18 Q. Prior to that realignment and formation of
19 that -- that new legal structure, who did you -- who did

7

20 you report to at XPO?
(G. Devens Dep., 11/28/2017, 31:18-20)

8

4 THE WITNESS: I always reported directly to
5 the CEO of XPO.

9

6 BY MS. WENGER:
7 Q. Okay. And was that person the same from 2011

10

8 to 2015, or did it change?
9 A. Yes.

11

10 Q. And who was that?
11 A. Bradley Jacobs.

12

12 Q. Was he the sole person that you reported to?
13 A. Yes.

13

14 Q. Okay. Did you have -- when you started with
15 XPO, did you have a written employment agreement?

14

16 A. I did.
(G. Devens Dep., 11/28/2017, 32:4-16)

15

**OBJECTIONS TO GORDON DEVENS 31:18-20; 32:4-16**

16

17

Objection.  This line of questioning is outside the scope of the noticed 30(b)(6) topics for XPO

Logistics and XPO CNW.

18

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 31:18-20; 32:4-16**

19

20

Mr. Devens was being deposed both pursuant to a 30(b)(6) notice and in his individual capacity.

21

*See* Exhibits C-E.  This information and testimony is not only (contrary to Defendants' claim) within the

22

scope of the 30(b) notice, *see* Exs. C-D, but is also within Mr. Devens' personal knowledge.

23

Furthermore, no objection to this question was made at the time and thus any such objection was

waived.

24

25

**EXCERPT OF DESIGNATION OF GORDON DEVENS 40:21-24; 41:4-6**

26

21 Q. What was your involvement with the due
22 diligence related to the acquisition?

27

23 A. I led up the legal due diligence, working
24 primarily with outside counsel.
25 Q. And -- and who, at that point prior to the --

28

1 the closing of that merger, was -- was the individuals

64

2 at Con-way that you were in discussions with about any
3 due diligence items?
<u>4 A. Primarily Steve Krull, who is the chief</u>
<u>5 general counsel of Con-way, and to a lesser degree,</u>
<u>6 members of his team.</u>
(G. Devens Dep., 11/28/2017, 40:21-24) (Underlined testimony designated by plaintiff)
(G. Devens Dep., 11/28/2017, 40:25-41:3) (Not designated by plaintiff)
(G. Devens Dep., 11/28/2017, 41:4-6) (Underlined testimony designated by plaintiff)

## OBJECTIONS TO GORDON DEVENS 40:21-24; 41:4-6

Objection.  This designation is incomplete as it provides an answer without designating the question (106).  Defendants would not object to the designation of testimony that includes the question at 40:25-41:3.

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 40:21-24; 41:4-6

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF GORDON DEVENS 43:7-9

7 Q. Okay. Did you -- did you look at -- and did
8 you do research on issues of employee -- current and
9 former employee benefits?
(G. Devens Dep., 11/28/2017, 43:7-9)

## OBJECTIONS TO GORDON DEVENS 43:7-9

Incomplete: designation ends in the middle of a question/answer (106). Objection because counsel is not a witness; this designation merely refers to counsel's question.  Unduly prejudicial/confusing/waste of time/cumulative (403).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 43:7-9

With regards to the "completeness" objection, *see* Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation to include Mr. Devens answer.

## EXCERPT OF DESIGNATION OF GORDON DEVENS 46:8-48:26

8 Q. When did you first ever hear of
9 Raymond O'Brien?
10 A. I believe around the beginning of September of
11 2015.
12 Q. So was it part of that due diligence period?
13 A. Yes.

14 MS. SHMYGOL: Objection as to form.

15 Go ahead.

16 BY MS. WENGER:

17 Q. And what -- what did you first -- what was the

18 context in which you first learned about -- of

19 Raymond O'Brien?

20 A. I believe it was in connection with an entry

21 on the disclosure schedule as to the merger agreement.

22 Q. And did you have conversations with anyone at

23 Con-way about that entry?

24 A. Yes.

25 Q. And -- and when did -- okay. So you saw --

1 you first saw the entry on the disclosure statement in

2 September of 2015. And was it around that same time

3 that you had discussions with individuals at Con-way

4 about that --

5 A. Yes.

6 Q. -- entry?

7 MS. SHMYGOL: Objection as to form.

8 BY MS. WENGER:

9 Q. And who at Con-way did you discuss that with?

10 MS. SHMYGOL: Objection as to form.

11 THE WITNESS: Steve Krull.

12 BY MS. WENGER:

13 Q. Anyone else?

14 A. Not that I recall.

15 Q. And what did Mr. Krull say?

16 MS. SHMYGOL: Objection to the extent it calls

17 for privileged information.

18 Go ahead and answer.

19 THE WITNESS: He was explaining the context of

20 the entry and the disclosure schedules.

21 BY MS. WENGER:

22 Q. And what did he state?

23 A. He generally provided background information.

24 Q. And what background information did he

25 provide?

1 A. That Mr. O'Brien was a former chairman and CEO

2 of the company who had long since retired, but the

3 company had continued to pay him amounts following his

4 retirement in addition to the traditional employee

5 benefits like pension and medical benefits.

6 Q. Did he say when Mr. O'Brien had retired?

7 A. I -- I believe he did.

8 Q. And when did he say he retired?

9 A. I believe in the mid-'90s.

10 Q. Did he provide any context beyond describing

11 Mr. Raymond -- Mr. O'Brien as being a former executive

12 of Mr. O'Brien's role and contribution to Con-way?

13 MS. SHMYGOL: Objection as to form.

14 THE WITNESS: He generally mentioned he was a

15 long-tenured employee who rose to a very senior level

16 and ultimately lead the company.

17 BY MS. WENGER:

18 Q. Anything else he described of Mr. O'Brien and

19 his contribution to the company?
20 A. Not that I recall.
21 Q. What did he describe as his -- did he describe
22 anything that Mr. O'Brien did other than being a former
23 CEO?
24 MS. SHMYGOL: Objection as to form.
25 THE WITNESS: Well, it was the former CEO and
(G. Devens Dep., 11/28/2017, 46:8-48:26)

## OBJECTIONS TO GORDON DEVENS 46:8-48:26

Hearsay (801).  Lack of personal knowledge/foundation/speculation (602).  Defendants further object to this designation as there is no line 48:26.

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 46:8-48:26

Sufficient foundation. Submitted to establish Mr. Devens knowledge and state of mind as it relates to his decision and actions in causing payments to Mr. O'Brien to be stopped not the truth of the statements being made.  Furthermore, statements made by Mr. Krull (on behalf of CNW) constitute an opposing party statement and thus fall within an exception to the hearsay rule.

## EXCERPT OF DESIGNATION OF GORDON DEVENS 48:21-49:15; 49:19-53:7

21 Q. What did he describe as his -- did he describe
22 anything that Mr. O'Brien did other than being a former
23 CEO?
24 MS. SHMYGOL: Objection as to form.
25 THE WITNESS: Well, it was the former CEO and
1 also chairman --
2 BY MS. WENGER:
3 Q. Chairman.
4 A. -- of the board.
5 Q. Okay.
6 A. He was a member of the board of directors, a
7 long-tenured senior executive and leader of the company.
8 Q. Okay. Did he -- did he talk about when
9 Mr. O'Brien had been CEO?
10 MS. SHMYGOL: Objection as to form.
11 THE WITNESS: Yeah. Yeah. He generally
12 related the time period.
13 BY MS. WENGER:
14 Q. Okay. And what was that time period?
15 A. I believe in the '80s and '90s.
(G. Devens Dep., 11/28/2017, 48:21-49:15)
19 Q. Okay. What else did he -- so you've talked
20 about him describing -- now, was he describing the
21 $6,000-a-month payment to Mr. O'Brien?
22 A. Yes.
23 Q. And -- and what did he describe as far as how
24 that payment came -- came about?
25 A. Steve told me that there were various

67

1 iterations of the payment and that the -- the $6,000
2 monthly payment wasn't the original structure -- wasn't
3 originally what had been provided to Mr. O'Brien, but
4 that's what it was, I believe, from sometime in the
5 mid-2000s forward.
6 He told me that he didn't have a lot of facts
7 about the -- the situation. But then when he had joined
8 Con-way in approximately 2011, he noticed the
9 $6,000-a-month payment being made, which was hitting his
10 budget. And so he looked into it and talked to the
11 people he thought would be most knowledgeable, whether
12 it was members of his team or members of the board of
13 directors, and tried to establish the factual background
14 of -- of these payments so that he could assess whether
15 the company was obligated to continue the payments.
16 Q. Who did he say he spoke to?
17 A. Members of the board of directors and his --
18 his direct -- the person to whom he reported.
19 Q. And who is the person who he reported to?
20 A. I believe Doug Stotlar.
21 Q. And did he tell you what Mr. Stotlar had said?
22 A. As I recall, Steve had discussion with Doug
23 about the payments and his view that the payments were
24 being made gratuitously by the company and that the
25 company did not need to continue the payments. Doug
1 indicated that that wasn't something that he wanted to
2 pursue further, and he was happy to continue the
3 payments at that time.
4 Q. And when you are talking about "his view," you
5 are referring to Mr. Krull's view?
6 A. (The witness nods.)
7 Q. Okay. Did he tell you anything else that
8 Mr. Stotlar had said?
9 A. Not that I recall.
10 Q. Okay. And when you said that he spoke with
11 directors, was it your understanding that he was
12 referencing the current directors of Con-way or the
13 directors that were serving when the payment -- the
14 $6,000-a-month payment started?
15 MS. SHMYGOL: Objection as to form.
16 Go ahead and answer.
17 THE WITNESS: I'm not certain if it was
18 directors who were serving both at that time and at the,
19 you know, time the payments were initiated or if it was
20 just directors at that time.
21 BY MS. WENGER:
22 Q. Did he ever indicate that he had spoken with
23 Keith Kennedy?
24 A. I believe. Yes.
25 Q. And what did he tell you that Mr. Kennedy had
1 said?
2 A. The same thing that Doug Stotlar had said,
3 which is "We're willing to continue making these
4 payments whether they are gratuitous or not."
5 Q. Did he tell you whether he had discussions

6 with Mr. Kennedy about how the -- how the 6,000-a-month
7 payment had been put in place?
8 A. Could you say it again?
9 Q. Did he -- did Mr. Krull tell you whether he
10 had had discussions with Mr. Kennedy about how the
11 $6,000-a-month payment had come about?
12 A. Yes.
13 Q. And what did he indicate that Mr. Kennedy told
14 him?
15 A. I don't recall specifically. Just that it --
16 it -- the payments started as something other than
17 $6,000 a month, but at that time, they had become $6,000
18 a month.
19 Q. And did he add -- did he indicate whether he'd
20 asked Mr. Kennedy whether the board at that -- at the
21 time when the payments started had approved those
22 payments?
23 A. I don't recall.
24 Q. Did he -- did he ever tell you that he'd --
25 that he'd spoken with anyone that had indicated that
1 those payments were not approved by the board?
2 A. No.
3 Q. Did you ever see any documents that ever
4 indicated that the board had not approved those
5 $6,000-a-month payments?
6 MS. SHMYGOL: Objection as to form.
7 THE WITNESS: No.
(G. Devens Dep., 11/28/2017, 49:19-53:7)

**OBJECTIONS TO GORDON DEVENS 48:21-49:15; 49:19-53:7**

Hearsay (801).  Lack of personal knowledge/foundation/speculation (602).  Unduly

prejudicial/confusing/waste of time/cumulative (403). Defendants object to this designation as it is

nearly 4 pages of testimony and will consume the court's time and resources, and because it is

cumulative.  (403).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 48:21-49:15; 49:19-53:7**

Directly relevant and highly probative.  Mr. Devens knowledge is at the core of this case.  Given

Mr. Devens role as a  key actor in this matter, any claim that a designation of four pages of testimony is

a "waste of time" is absurd.

With regards to Hearsay objection, this excerpt is among other things, submitted to establish Mr.

Devens knowledge and state of mind as it relates to his decision and actions in causing payments to Mr.

O'Brien to be stopped not the truth of the statements being made.  Furthermore, statements made by Mr.

Krull (on behalf of CNW) constitute an opposing party statement and thus fall within an exception to the hearsay rule.  There also exists more than sufficient foundation.

## EXCERPT OF DESIGNATION OF GORDON DEVENS 56:10-20

> 10 Q. So you have testified that Mr. Krull informed
> 11 you that the $6,000 a month was a modification of
> 12 previous benefits that were being provided to
> 13 Mr. O'Brien, correct?
> 14 A. Yes.
> 15 Q. And those benefits were the secretary, the car
> 16 service and the office, correct?
> 17 A. Yes.
> 18 Q. And once the -- he informed you that, once the
> 19 $6000-a-month cash payment started, that Mr. O'Brien
> 20 gave up the secretary, office and car service, correct?
> (G. Devens Dep., 11/28/2017, 56:10-20) (Underlined testimony designated by Plaintiff)
> 24 THE WITNESS: -- he didn't present that as a
> 25 quid pro quo. He presented it to me that there were
> 1 gratuitous post-employment benefits being provided to
> 2 Mr. O'Brien that initially included secretarial
> 3 services, car service and office space. And
> 4 subsequently, those gratuitous payments or services were
> 5 stopped, and a $6,000-a-month cash payment was provided
> 6 to Mr. O'Brien.
> (G. Devens Dep., 11/28/2017, 56:24-57:6) (Not designated by plaintiff)

## OBJECTIONS TO GORDON DEVENS 56:10-20

Mischaracterization of testimony (602).  Hearsay (801).  Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  Lack of personal knowledge/foundation/speculation (602).  Devens does not have any personal knowledge of the payments and so cannot comment on them.   Additionally, Defendants object as this designation takes the witness's testimony out of context; specifically, it excludes Mr. Devens's response to counsel's question at 56:24 to 57:6, and is therefore incomplete (106).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 56:10-20

Inclusion of question is important for understanding of the answer.  No objection was made as to the form of the question and is thus any such objection was waived.  Mr. Devens has claimed that he relied on statements by Mr. Krull in making his decision to cause payments to Mr. O'Brien to be terminated.  Testimony regarding what he was told, and in particular, his conversations with Mr. Krull regarding the payments being made to Mr. O'Brien and the Company's agreement with Mr. O'Brien goes to the key elements of this case as they go to his (and Defendants) knowledge, good faith, and

intent.  As to Hearsay, among other things this testimony is introduced to establish Mr. Devens' knowledge.  In addition, any statements made by Mr. Krull, counsel for CNW, are an opposing party statement, falling within an exception to the hearsay rule.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 57:16-21**

> 16 Q. Okay. He -- did he inform you who was the
> 17 individual who approved the -- the change from the
> 18 secretary, office and car service to be replaced by the
> 19 $6,000-a-month cash payment?
> 20 A. I believe he said it was a member of the
> 21 board.
> (G. Devens Dep., 11/28/2017, 57:16-21)

**OBJECTIONS TO GORDON DEVENS 57:16-21**

Hearsay (801).  Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  Lack of personal knowledge/foundation/speculation (602).  Devens does not have any personal knowledge who, if anyone, approved the payments and so cannot comment on them.

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 57:16-21**

Mr. Devens has claimed that he relied on statements by and conversations with Mr. Krull in making his decision to cause payments to Mr. O'Brien to be terminated.  Testimony regarding what he was told, and in particular, his conversations with Mr. Krull regarding the payments being made to Mr. O'Brien and the Company's agreement with Mr. O'Brien.  goes to the key elements of this case as they go to his (and thus Defendants) knowledge, good faith, and intent.  As to Hearsay, among other things this testimony is introduced to establish Mr. Devens' knowledge.  In addition, any statements made by Mr. Krull, counsel for CNW, are an opposing party statement, falling within an exception to the hearsay rule.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 58:7-9; 58:13-17**

> 7 Q. Instead he actually informed you that both
> 8 Keith Kennedy and Doug Stotlar had indicated that that
> 9 change had been agreed to, correct?
> 10 MS. SHMYGOL: Objection as to form. Misstates
> 11 the testimony.
> 12 THE WITNESS: Nobody characterized anything as
> 13 an agreement. What was communicated to me was that
> 14 Doug Stotlar and members of the board -- I believe,
> 15 including Keith Kennedy -- were satisfied with the

16 continuation of the payment, which Steve had
17 characterized to me as gratuitous.
(G. Devens Dep., 11/28/2017, 58:7-9) (Underlined testimony designated by plaintiff)
(G. Devens Dep., 11/28/2017, 58:10-12) (Not designated by plaintiff)
(G. Devens Dep., 11/28/2017, 58:13-17) (Underlined testimony designated by plaintiff)

## OBJECTIONS TO GORDON DEVENS 58:7-9; 58:13-17

Incomplete: designation ends in the middle of a question/answer. (106). Objection because counsel is not a witness; this designation refers to counsel's question, and counsel is mischaracterizing the testimony (602).  Unduly prejudicial/confusing/waste of time/cumulative (403).  Defendants further object to these designations as they are taken out of context and mischaracterize the witness's testimony by selectively cutting out language that does not suit Plaintiff's purpose. Specifically, Plaintiff fails to designate 58:10-12, which is the beginning of the witness's response to counsel's question, and states that: "Nobody characterized anything as an agreement."

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 58:7-9; 58:13-17

Mr. Devens has claimed that he relied on statements by and conversations with Mr. Krull in making his decision to cause payments to Mr. O'Brien to be terminated.  Testimony regarding what he was told, and in particular, his conversations with Mr. Krull regarding the payments being made to Mr. O'Brien and the Company's agreement with Mr. O'Brien.  goes to the key elements of this case as they go to his (and thus Defendants) knowledge, good faith, and intent.  As to Hearsay, among other things this testimony is introduced to establish Mr. Devens' knowledge.  In addition, any statements made by Mr. Krull, counsel for CNW, are an opposing party statement falling within an exception to the hearsay rule.

With regards to completeness designation, see also Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF GORDON DEVENS 59:20-60:25

20 So you testified that initially Mr. O'Brien --
21 Con-way provided Mr. O'Brien, starting in the late 1980s
22 with a secretary, office and car service, correct?
23 A. I don't know when it started. But yes, I
24 understand he received those benefits.
25 Q. Okay. And that at some point in the 2000 time

1 frame, that was modified to be replaced with a
2 $6,000-a-month cash payment, correct?
3 MS. SHMYGOL: Objection as to form.
4 THE WITNESS: Do you want me to answer?
5 MS. SHMYGOL: Yeah. Go ahead. Unless I tell
6 you not to answer, go ahead and answer.
7 THE WITNESS: Okay.
8 Yeah. What I understood, Katherine, was there
9 had been a stream of benefits, and then subsequently
10 there was simply a $6,000-a-month cash payment. And it
11 wasn't characterized to me whether one replaced the
12 other.
13 BY MS. WENGER:
14 Q. But the secretary, car service and office were
15 no longer provided once the $6,000-a-month payment was
16 put in place?
17 A. That's right.
18 Q. And it was your understanding from Mr. Krull
19 that the board of directors and Mr. Stotlar had approved
20 that $6,000-a-month cash payment?
21 MS. SHMYGOL: Objection as to form. Misstates
22 prior testimony.
23 THE WITNESS: I understood that senior
24 management, including possibly the board, had approved
25 the payment of $6,000 a month.
(G. Devens Dep., 11/28/2017, 59:20-60:25)

**OBJECTIONS TO GORDON DEVENS 59:20-60:25**

Lack of personal knowledge/foundation/speculation, and mischaracterization of the witness's

testimony (602). Hearsay (801).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 59:20-60:25**

Directly relevant and highly probative, goes to the issue of Mr. Devens knowledge of the

agreement between the Company and Mr. O'Brien and his bad faith in terminating payment.  In

addition, any statements made by Mr. Krull, counsel for CNW, are an opposing party statement, falling

within an exception to the hearsay rule.  Mr. Devens (and Defendants) cannot attempt to rely on Mr.

Krull's statements and then  preclude Plaintiff from providing testimony regarding Mr. Krull and Mr.

Devens conversations.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 61:2-13**

2 Q. Did you ever have any direct conversations
3 with any of those board members regarding that payment
4 being put in place?
5 A. No.
6 Q. Did you ever have any conversations with
7 Mr. Kennedy about that $6,000 a month being put in

73

8 place?
9 A. No.
10 Q. Did you ever have any conversations with
11 Mr. Stotlar about that $6,000-a-month payment being put
12 in place?
13 A. Not that I recall.
(G. Devens Dep., 11/28/2017, 61:2-13) (Underlined testimony designated by plaintiff)
22 A. Working under me.
(G. Devens Dep., 11/28/2017, 61:22) (Not designated by plaintiff)

## OBJECTIONS TO GORDON DEVENS 61:2-13

Unduly prejudicial/confusing/waste of time/cumulative (403).  The designation fails to take into account Mr. Devens's testimony at 61:22 that he "discussed those maters with members of the legal team of Con-way and XPO."

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 61:2-13

Directly relevant and highly probative, relevant to the issue of Defendants bad faith and unjustified actions of terminating payments to Raymond O'Brien, particularly to the extent that Mr. Devens failed to even attempt to have conversations with the individuals who negotiated and put the agreement in place.

## EXCERPT OF DESIGNATION OF GORDON DEVENS 62:4-8

4 team at Con-way or XPO, did you ever have conversations
5 with any current or former officers or directors
6 regarding the original benefits that were provided to
7 Mr. O'Brien?
8 A. Not that I recall.
(G. Devens Dep., 11/28/2017, 62:4-8)

## OBJECTIONS TO GORDON DEVENS 62:4-8

Incomplete: designation begins in the middle of a question/answer. (106) Irrelevant and immaterial (401-402).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 62:4-8

Directly relevant and highly probative, relevant to the issue of Defendants bad faith and unjustified actions of terminating payments to Raymond O'Brien, particularly to the extent that Mr. Devens failed to even attempt to have conversations with the individuals who negotiated and put the agreement in place.

74

As to incompleteness objection, see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF GORDON DEVENS 62:11-15**

> 11 Q. Did you ever have any conversations with
> 12 Larry Scott regarding the original benefits that were
> 13 provided?
> 14 MS. SHMYGOL: Objection as to form.
> 15 THE WITNESS: No.
> (G. Devens Dep., 11/28/2017, 62:11-15)

**OBJECTIONS TO GORDON DEVENS 62:11-15**

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 62:11-15**

Directly relevant and highly probative, relevant to the issue of Defendants bad faith and unjustified actions of terminating payments to Raymond O'Brien, particularly to the extent that Mr. Devens failed to even attempt to have conversations with the individuals who negotiated and put the original agreement in place.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 62:17-63:6; 63:8**

> 17 Q. Did you ever make any effort to speak with any
> 18 officers or former or current -- or directors of Con-way
> 19 regarding that -- or those original benefits that were
> 20 provided?
> 21 MS. SHMYGOL: Objection as to form.
> 22 THE WITNESS: I spoke to Steve Krull about it.
> 23 BY MS. WENGER:
> 24 Q. Other than Steve Krull, did you make any
> 25 efforts?
> 1 A. No.
> 2 Q. Did you ever make any efforts -- other than
> 3 your conversation with Mr. Krull, did you ever make any
> 4 efforts to speak with any directors or officers, former
> 5 or current, of Con-way regarding how -- how the
> 6 $6,000-a-month payment came about?
> (G. Devens Dep., 11/28/2017, 62:17-63:6)
> 8 THE WITNESS: No.
> (G. Devens Dep., 11/28/2017, 63:8)

**OBJECTIONS TO GORDON DEVENS 62:17-63:6; 63:8**

Unduly prejudicial/confusing/waste of time/cumulative (403).

1

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 62:17-63:6; 63:8**

2

Directly relevant and highly probative, relevant to the issue of Defendants bad faith and

3

unjustified actions of terminating payments to Raymond O'Brien, particularly to the extent that Mr.

4

Devens failed to even attempt to have conversations with the individuals who negotiated and put the

5

agreement in place.

6

**EXCERPT OF DESIGNATION OF GORDON DEVENS 63:10-24**

7
```
10 Q. Do you ever make any effort to contact
11 Mr. Kennedy or any other directors at that time --
```
8
```
12 MS. SHMYGOL: Objection as to form.
13 BY MS. WENGER:
```
9
```
14 Q. -- about the commencement of that
15 $6,000-a-month payment?
```
10
```
16 A. No.
17 Q. Did you ever speak with Jennifer Pileggi --
```
11
```
18 THE REPORTER: Excuse me?
19 MS. WENGER: Pileggi. I'll give you the
```
12
```
20 spelling.
21 BY MS. WENGER:
```
13
```
22 Q. -- about the commencement of the payment of
23 that $6000-a-month --
```
14
```
24 A. No.
(G. Devens Dep., 11/28/2017, 63:10-24)
```
15

**OBJECTIONS TO GORDON DEVENS 63:10-24**

16

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative

17

(403).

18

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 63:10-24**

19

Directly relevant and highly probative, relevant to the issue of Defendants bad faith and

20

unjustified actions of terminating payments to Raymond O'Brien, particularly to the extent that Mr.

21

Devens failed to even attempt to have conversations with the individuals who negotiated and put the

22

agreement in place.

23

**EXCERPT OF DESIGNATION OF GORDON DEVENS 64:1-65:2**

24
```
1 Did you ever make any attempt to speak with
2 Mr. O'Brien himself about how -- the commencement of
```
25
```
3 that $6,000-a-month payment?
4 MS. SHMYGOL: Objection as to form.
```
26
```
5 Go ahead.
```
27
```
6 THE WITNESS: Yes.
7 BY MS. WENGER:
```
28
```
8 Q. And when was the first time you made an
```

76

9 attempt to speak with Mr. O'Brien about that matter?
10 A. In the first quarter of 2016.
11 Q. Do you remember what month?
12 A. I believe February or March.
13 Q. And that was only in response to emails sent
14 to you by Mr. O'Brien demanding payments for the amounts
15 owed, correct?
16 A. That's right.
17 Q. Okay. So -- so prior to that email
18 correspondence initiated by Mr. O'Brien, you never made
19 any effort to reach out to Mr. O'Brien to get
20 information on those $6,000-a-month payments, correct,
21 and how they started?
22 A. Correct.
23 Q. Okay. Did you ever make any attempt to reach
24 out and speak with Mr. O'Brien about the details of the
25 original benefits of the secretary, car service and
1 office --
2 A. Yeah.
(G. Devens Dep., 11/28/2017, 64:1-65:2)

## OBJECTIONS TO GORDON DEVENS 64:1-65:2

Irrelevant and immaterial (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 64:1-65:2

Directly relevant and highly probative, relevant to the issue of Defendants bad faith and unjustified actions of terminating payments to Raymond O'Brien, particularly to the extent that Mr. Devens failed to even attempt to have conversations with the individuals who negotiated and put the agreement in place. Also directly relevant to Mr. Devens bad faith and fraudulent conduct in relation to his communications (and lack thereof) with Mr. O'Brien, and Mr. O'Brien's emotional distress.

## EXCERPT OF DESIGNATION OF GORDON DEVENS 65:5-6

5 Q. -- and how they came to be provided?
6 A. Yes.

## OBJECTIONS TO GORDON DEVENS 65:5-6

Irrelevant and immaterial (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 65:5-6

Directly relevant and highly probative, relevant to the issue of Defendants bad faith and unjustified actions of terminating payments to Raymond O'Brien, particularly to the extent that Mr.

77

Devens failed to even attempt to have conversations with the individuals who negotiated and put the agreement in place.  Also directly relevant to Mr. Devens bad faith and fraudulent conduct in relation to his communications (and lack thereof) with Mr. O'Brien, and Mr. O'Brien's emotional distress

**EXCERPT OF DESIGNATION OF GORDON DEVENS 65:10-20**

> 10 Q. Okay. And when was the first time that you
> 11 attempted to reach out to him regarding those details?
> 12 A. The first quarter of 2016.
> 13 Q. Was that February 2016 as well?
> 14 A. I believe so.
> 15 Q. And that was, again, only in response to the
> 16 email correspondence from Mr. O'Brien demanding payment
> 17 on the invoices that had been submitted, correct?
> 18 MS. SHMYGOL: Objection as to form.
> 19 Go ahead.
> 20 THE WITNESS: Yes.
> (G. Devens Dep., 11/28/2017, 65:10-20)

**OBJECTIONS TO GORDON DEVENS 65:10-20**

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  Counsel mischaracterizes the witness's testimony (602).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 65:10-20**

Directly relevant and highly probative, relevant to the issue of Defendants bad faith and unjustified actions of terminating payments to Raymond O'Brien, particularly to the extent that Mr. Devens failed to even attempt to have conversations with the individuals who negotiated and put the agreement in place.  Also directly relevant to Mr. Devens bad faith and fraudulent conduct in relation to stopping payments to Mr. O'Brien without any notice, and in his bad faith and fraudulent intent communications (and lack thereof) with Mr. O'Brien.  Also relevant to Mr. O'Brien's emotional distress.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 65:24-66:24**

> 24 When did -- when did -- you were -- were you
> 25 the individual responsible for making the decision to
> 1 terminate the $6,000-a-month payments that were being
> 2 made to Mr. O'Brien?
> 3 A. Yes.
> 4 Q. When did you make that decision?
> 5 A. Preliminarily we made the decision in probably
> 6 December of 2015 and then made a final decision in March
> 7 or April of 2016.
> 8 Q. And when you say that -- when you refer --

78

9 described the December 2015 decision as "preliminary,"
10 what do you -- what do you take that to mean? Or intend
11 that to mean?
12 A. I -- I simply mean that it was based on the
13 information that I had at that time.
14 Q. And what information did you have at that
15 time?
16 A. A couple of letters to and from Mr. O'Brien
17 from the 1980s or '90s and then background provided by
18 Steve Krull.
19 Q. And prior to that December 2015 decision, you
20 had made no effort to obtain any background relating to
21 those payments other than your conversations with
22 Mr. Krull, correct?
23 MS. SHMYGOL: Objection as to form.
24 THE WITNESS: Well, I had -- ask the question
(G. Devens Dep., 11/27/2018, 65:24-66:24)

## OBJECTIONS TO GORDON DEVENS 65:24-66:24

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative

(403).  Counsel mischaracterizes the witness's testimony (602).  Additionally, this designation cuts off

the witness's response to counsel's question, thereby it is incomplete and mischaracterizes the witness's

testimony, in a prejudicial light. (106, 403, 602).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 65:24-66:24

This testimony is directly relevant and highly probative and goes to the key issue of Mr. Devens

actions (and motives) in causing payments to Mr. O'Brien to be terminated.

With regards to "completeness" objection, *see* Plaintiff's Second Amended Supplemental

Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to

address Defendants' objection).

## EXCERPT OF DESIGNATION OF GORDON DEVENS 70:17-23

17 Q. As part of that analysis, did you or your
18 legal team review invoices that had been submitted by
19 Mr. O'Brien for the $6,000-a-month payment?
20 A. Yes.
21 Q. And -- and did -- as a result of that, did
22 they review invoices provided from approximately 2006
23 through the end of 2015
(G. Devens Dep., 11/28/2017, 70:17-23)

**OBJECTIONS TO GORDON DEVENS 70:17-23**

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  Defendants further object because this designation does not include the witness's response to counsel's question, and counsel is not a witness (106).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 70:17-23**

Directly relevant and highly probative to Defendants knowledge of the agreement with Mr. O'Brien.

With regards to incompleteness objection see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF GORDON DEVENS 74:14-75**

14 A. My reporting structure was through the
15 XPO Logistics, you know, parent holding company.
16 Q. Okay. So you did not report to anyone at
17 Con-way?
18 A. No.
19 Q. Okay. Was there anyone who reported to you
20 at -- that was an employee of Con-way?
21 A. Yes. There were lawyers who were employed by
22 Con-way who reported directly to me.
23 Q. And who -- who were those lawyers?
24 A. Jennifer Warner was one. Uzma Ahmad was
25 another.
(G. Devens Dep., 11/28/2017, 74:14-75) (Underlined testimony designated by plaintiff)
14 A. My reporting structure was through the
15 XPO Logistics, you know, parent holding company.
16 Q. Okay. So you did not report to anyone at
17 Con-way?
18 A. No.
19 Q. Okay. Was there anyone who reported to you
20 at -- that was an employee of Con-way?
21 A. Yes. There were lawyers who were employed by
22 Con-way who reported directly to me.
23 Q. And who -- who were those lawyers?
24 A. Jennifer Warner was one. Uzma Ahmad was
25 another.
(G. Devens Dep., 11/28/2017, 74:14-75) (Not designated by plaintiff)

**OBJECTIONS TO GORDON DEVENS 74:14-75**

Objection; there is not line 74:75 in the transcript.  Assuming Plaintiff intends to designate 74:14-25, no objection.

1

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 74:14-75**

2

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

3

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

4

**EXCERPT OF DESIGNATION OF GORDON DEVENS 81:2**

5

2 (Whereupon, Exhibit 6 was marked for
(G. Devens Dep., 11/28/2017, 81:2)

6

**OBJECTIONS TO GORDON DEVENS 81:2**

7

Objection.  This designation refers to the court reporter's notes and not testimony, and is

8

therefore irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)

9

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 81:2**

10

Directly relevant to designation of exhibits.

11

**EXCERPT OF DESIGNATION OF GORDON DEVENS 81:15**

12

15 (Whereupon, Exhibit 7 was marked for
(G. Devens Dep., 11/28/2017, 81:15)

13

14

**OBJECTIONS TO GORDON DEVENS 81:15**

15

Objection.  This designation refers to the court reporter's notes and not testimony, and is

16

therefore irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)

17

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 81:15**

18

Directly relevant to designation of Exhibits and understanding of later questions and testimony.

19

**EXCERPT OF DESIGNATION OF GORDON DEVENS 82:18-21**

20

18 So is it your testimony that Mr. Krull
19 informed you that he believed that Con-way had no
20 obligation to continue paying Mr. O'Brien the $6,000 a
21 month?
(G. Devens Dep., 11/28/2017, 82:18-21)

21

22

23

**OBJECTIONS TO GORDON DEVENS 82:18-21**

24

Incomplete: designation does not include a complete question/answer (106). Designation should

25

also include witness's answer.  Moreover, this designation is taken out of context, because it does not

26

include witness's full answer, making it unduly prejudicial (106, 403). The designation also constitutes

27

mischaracterization of testimony and is improper as it only refers to counsel's question, not witness

28

testimony (602).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 82:18-21**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).    No objection to form was made to Plaintiff's counsel's question and question is important to understand the answer.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 83:22-24**

> 22 Q. And did he indicate that he ever had any
> 23 conversations with Mr. Kennedy or Mr. Scott about what
> 24 he believed was an ambiguity as to the duration?
> (G. Devens Dep., 11/28/2017, 83:22-24)

**OBJECTIONS TO GORDON DEVENS 83:22-24**

Irrelevant and immaterial (401-402).  Lack of personal knowledge/foundation/speculation (602).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 83:22-24**

Directly relevant and highly probative to the issue of Mr. Devens' knowledge of the agreement.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 84:1-2; 84:5-14**

> 1 THE WITNESS: My recollection is that he had
> 2 spoken to Mr. Kennedy. I don't know that he spoke to
> (G. Devens Dep., 11/28/2017, 84:1-2)
> 5 Q. And what did he say about his conversations
> 6 with Mr. Kennedy -- what did he indicate that
> 7 Mr. Kennedy had told him about the duration of the
> 8 agreement?
> 9 A. I don't recall that Steve addressed that with
> 10 me. The -- my takeaway from the conversation with Steve
> 11 was that, despite his advice, that there wasn't a
> 12 contractual commitment on the part of the company.
> 13 There was a willingness by the senior management to whom
> 14 we spoke to continue the payments. So he let it drop.
> (G. Devens Dep., 11/28/2017, 84:5-14)

**OBJECTIONS TO GORDON DEVENS 84:1-2; 84:5-14**

Incomplete: designation does not include a complete question/answer (106).  Irrelevant and immaterial (401-402).  Lack of personal knowledge/foundation/speculation (602).  Hearsay (801).  Mr. Devens cannot testify to the truth of statements made by one witness to another.

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 84:1-2; 84:5-14**

Directly relevant and highly probative, goes to the issue of Mr. Devens knowledge of the agreement between the Company and Mr. O'Brien and his bad faith in terminating payment.  In

addition, any statements made by Mr. Krull, counsel for CNW, are an opposing party statement, falling within an exception to the hearsay rule.  Mr. Devens has contended that he relied on statements from Mr. Krull in making a decision to stop payment.  Mr. Devens (and Defendants) cannot attempt to rely on Mr. Krull's statements and then  preclude Plaintiff from providing testimony regarding Mr. Krull and Mr. Devens conversations.

With regards to hearsay, any statements by Mr. Krull, who was counsel for CNW, are a opposing party statement and thus fall within an exception to the hearsay rule.

With regards to incompleteness objection, see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF GORDON DEVENS 86:11-17

11 Q. Okay. Did he share with you any information
12 about work that Mr. O'Brien did for Con-way after 1988?
13 A. He generally shared with me that Mr. O'Brien
14 was involved, including as a director, following his
15 retirement as CEO. And he was certainly respectful
16 toward Mr. O'Brien and understood he played a critical
17 role in managing and leading the company. But he didn't
18 get into a lot of detail with me about -- beyond that.
(G. Devens Dep., 11/28/2017, 86:11-17) (Underlined testimony designated by plaintiff)
(G. Devens Dep., 11/28/2017, 86:18) (Not designated by plaintiff)

## OBJECTIONS TO GORDON DEVENS 86:11-17

Hearsay (801). Lack of personal knowledge/foundation/speculation (602). Incomplete: designation does not include the witness's complete answer. If the testimony is admitted, for completeness, the designation should include testimony at 86:18 (106).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 86:11-17

Directly relevant and highly probative to the issue of Mr. Devens' knowledge.  See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

With regards to hearsay, any statements made by Mr. Krull, counsel for CNW, are an opposing party statement, falling within an exception to the hearsay rule. Furthermore to the extent that such

statements by Mr. Krull are introduced only to establish Mr. Devens knowledge, they would not constitute hearsay.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 93:19-94:4**

> 19 Q. In -- in making that decision, did you
> 20 consider the cost to Con-way of those payments?
> 21 A. I did.
> 22 Q. Did you believe that those -- the cost of
> 23 those payments was material to Con-way?
> 24 MS. SHMYGOL: Objection as to form.
> 25 THE WITNESS: You know, materiality is
> 1 relative concept. So it's not relative in the context
> 2 of a 3-plus-billion-dollar deal. But it was material to
> 3 my budget, which is where the $6,000 a month was
> 4 hitting.
> (G. Devens Dep., 11/28/17, 93:19-94:4)

**OBJECTIONS TO GORDON DEVENS 93:19-94:4**

Unduly prejudicial/confusing/waste of time/cumulative (403).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 93:19-94:4**

Directly relevant and highly probative to Mr. Devens intent, motives and bad faith. Also directly relevant and highly probative as to the issue of whether Mr. Devens was acting on behalf of XPO or CNW.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 94:6-95:8; 95:10-12; 95:14-20**

> 6 Q. What was your budget?
> 7 A. The legal budget.
> 8 Q. And -- so that -- that $6,000 a month was
> 9 hitting the legal budget? That's where it was being
> 10 paid from?
> 11 A. (Witness nods.)
> 12 Q. From whose legal budget? XPO's legal budget?
> 13 A. The -- the aggregate corporation. So yeah, it
> 14 was on XPO Logistics' legal budget.
> 15 Q. Okay. Do you know, prior to the merger, where
> 16 that payment was -- what budget that was being paid
> 17 from?
> 18 A. Yes.
> 19 Q. And what budget was that?
> 20 A. I believe it was the Con-way legal budget.
> 21 Q. Okay. At the time the decision was made in
> 22 December, what was -- what was the -- your legal budget?
> 23 A. I don't recall specifically.
> 24 Q. Do you recall what percentage of your budget
> 25 it was?
> 1 MS. SHMYGOL: Objection to the extent this is
> 2 outside of the noticed topics.

3 THE WITNESS: It would have been small -- low
4 single digit percentages of the aggregate budget but
5 of -- you know, buckets within that budget, it would
6 have been more meaningful. We were very focused on
7 managing expenses and, you know, understanding where --
8 where money was being paid and why.
(G. Devens Dep., 11/28/17, 94:6-95:8)
10 Q. So that amount was a small low percentage of
11 your monthly budget, but you believed, despite that,
12 that it was material to that legal budget?
(G. Devens Dep., 11/28/17, 95:10-12)
14 THE WITNESS: The point I was trying to make
15 is simply that we were very focused on all dollars. And
16 $6,000 a month or $72,000 a year was meaningful. That
17 was approximately the amount that we would pay for a
18 senior paralegal. And we didn't have a lot of senior
19 paralegals. So yeah, I looked at expenses of that
20 magnitude as meaningful. Is "material" the right word?
(G. Devens Dep., 11/28/17, 95:14-20)

**OBJECTIONS TO GORDON DEVENS 94:6-95:8; 95:10-12; 95:14-20**

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative

(403). The probative value of XPO's legal budget to the facts at issue in this case is substantially

outweighed by its prejudice to Defendants.  (403).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 94:6-95:8; 95:10-12; 95:14-20**

Directly relevant and highly probative to Mr. Devens intent, motives and bad faith. Also directly

relevant and highly probative as to the issue of whether Mr. Devens was acting on behalf of XPO or

CNW.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 99:7-100:5**

7 Q. And at the point you made that decision in
8 December 2015, you had not contacted Mr. O'Brien about
9 the agreement, correct?
10 MS. SHMYGOL: Objection. Misstates testimony.
11 THE WITNESS: Well, and, again, the
12 preliminary decision based on the information I had at
13 the time was made in December --
14 BY MS. WENGER:
15 Q. Right. And at that time --
16 A. -- or late -- late 2015.
17 Q. -- you had not contacted Mr. O'Brien, correct?
18 A. Right. Which is why it was a preliminary
19 decision.
20 Q. And at that point you had not contacted any of
21 the former Con-way employees -- officers or directors
22 that were involved with the original agreement
23 A. No, that's not correct. I did speak with

85

24 Steve Krull, who I trusted as having done a
25 comprehensive investigation in his role as GC. He's a
1 good lawyer.
2 Q. But he was not involved in the negotiation of
3 the original agreement or the $6,000-a-month payment,
4 correct?
5 A. Correct.
(G. Devens Dep., 11/28/17, 99:7-100:5)

**OBJECTIONS TO GORDON DEVENS 99:7-100:5**

Unduly prejudicial/confusing/waste of time/cumulative (403).  Counsel mischaracterizes the witness's testimony (602).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 99:7-100:5**

Directly relevant and highly probative to Mr. Devens intent, motives and bad faith. Also directly relevant and highly probative as to the issue of whether Mr. Devens was acting on behalf of XPO or CNW.

There is no mischaracterization of testimony by counsel and no objection was made on such basis and thus any such objection was waived.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 102:16-17; 102:20-21; 102:25-103:2**

16 Q. At that point what were Con-way's annual
17 revenues?
(G. Devens Dep., 11/28/17, 102:16-17)
20 THE WITNESS: To my recollection, it was
21 approximately $5 billion.
(G. Devens Dep., 11/28/17, 102:20-21)
25 Q. And at that point what was XPO's annual
1 revenues?
2 A. Approximately 15 billion.
(G. Devens Dep., 11/28/17, 102:25-103:2)

**OBJECTIONS TO GORDON DEVENS 102:16-17; 102:20-21; 102:25-103:2**

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  The current annual revenues of Con-way and XPO are beyond the scope of the noticed 30(b)(6) topics, irrelevant to the issues in the case, and highly prejudicial.

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 102:16-17; 102:20-21; 102:25-103:2**

Directly relevant and highly probative to punitive damages as well as to bad faith in terminating payments to O'Brien.  Within scope of deposition notice.  Furthermore no objection was made as to question being outside scope of the 30(b)(6) notice and thus any such objection was waived.

1

**EXCERPT OF DESIGNATION OF GORDON DEVENS 105:20-23**

2

       20 Q. But isn't it correct that you did not contact
       21 them until -- until they reached out to you inquiring

3

       22 what the status of payment, correct?
       23 A. Yes. Which would be very typical, right, if

4

       (G. Devens Dep., 11/28/17, 105:20-23) (Underlined testimony designated by Plaintiff)
       23 A. Yes. Which would be very typical, right, if

5

       24 someone is asking for money. Then there's -- that's not
       25 going to be high on our list to go track down, you know,

6

       1 why does that person need money.
       2 And so I asked, you know, Mr. O'Brien or his

7

       3 daughter-in-law, to give me the background as to why
       4 this money is due.

8

       (G. Devens Dep., 11/28/17, 105:20-23) (Underlined testimony designated by Plaintiff)
       (G. Devens Dep., 11/28/17, 105:24-106:4) (Not designated by Plaintiff)

9

**OBJECTIONS TO GORDON DEVENS 105:20-23**

10

       Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative

11

(403).  Defendants further object to this designation as incomplete: designation ends in the middle of a

12

question/answer.   If the testimony is admitted, for completeness, the designation should include

13

testimony at 105:24-106:4 (106).

14

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 105:20-23**

15

       Directly relevant and highly probative as to Defendants misleading, fraudulent and bad faith

16

actions in terminating payments to Mr. O'Brien.  With regards to "completeness" objection, See

17

Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at

18

Trial with revised designation (revised to address Defendants' objection).

19

**EXCERPT OF DESIGNATION OF GORDON DEVENS 106:8-22**

20

       8 Q. You did not notify Mr. O'Brien at that time

21

       9 that you would be stopping those payments, correct?
       10 A. The notification happened in March.

22

       11 Q. So -- so why did you not provide any
       12 notifications previous to March when -- when it was only

23

       13 in response to them reaching out to you?
       14 A. The notification from me was in March, but I

24

       15 think there was a dialogue with our paralegal.
       16 Q. But they contacted you first in March,

25

       17 correct?
       18 A. I recall that as being the case.

26

       19 Q. So you did not provide any notice back in
       20 December of 2015, correct?

27

       21 MS. SHMYGOL: Objection as to form.
       22 THE WITNESS: Correct.

28

       (G. Devens Dep., 11/28/17, 106:8-22)

1

**OBJECTIONS TO GORDON DEVENS 106:8-22**

2

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative

3

(403).  When Raymond O'Brien was informed of the decision to terminate payments is irrelevant to the

4

facts at issue in this case.

5

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 106:8-22**

6

Directly relevant and highly probative as to Defendants misleading, fraudulent and bad faith

7

actions in terminating payments to Mr. O'Brien, including the lack of notice and communications with

8

Mr. O'Brien.

9

**EXCERPT OF DESIGNATION OF GORDON DEVENS 109:9-23**

10
11
12
13
14
15
16
17

    9 Q. Did you ever provide Mr. O'Brien with copies
10 of the correspondence in the letter agreement that you
11 had in Con-way's files?
12 A. I -- I never saw the letter agreement in any
13 files. So what the documents that he sent to me, I
14 believe I had seen. So he didn't send me anything new.
15 Q. Right. But -- but -- but you had not --
16 you -- before he sent you those letters, you already had
17 copies of those?
18 A. I believe so.
19 Q. Letters, correct?
20 And prior to -- and -- and before he sent you
21 those letters, you never provided him with copies,
22 correct?
23 A. Correct.
(G. Devens Dep., 11/28/17, 109:9-23)

18
19

**OBJECTIONS TO GORDON DEVENS 109:9-23**

20

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative

21

(403).

22

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 109:9-23**

23

Directly relevant and highly probative as to Defendants misleading, fraudulent and bad faith

24

actions in terminating payments to Mr. O'Brien, including the lack of notice and communications with

25

Mr. O'Brien.

26

**EXCERPT OF DESIGNATION OF GORDON DEVENS 110:6-14**

27
28

    <u>6 Q. Does this reflect the name change that Con-way
7 underwent after the merger in October of 2015?
8 A. Yes.
9 Q. And -- and Con-way's name was changed to</u>

10 XPO CNW, Inc.?
11 A. Correct.
12 Q. Are you aware of any other agreement or other
13 action by which Con-way, Inc. assigned any of its
14 liabilities to any other entity?
15 A. No.
(G. Devens Dep., 11/28/17, 110:6-14) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 110:15) (Not designated by Plaintiff)

## OBJECTIONS TO GORDON DEVENS 110:6-14

Objection.  For completes, this designation should include testimony at 110:15 (106).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 110:6-14

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF GORDON DEVENS 111:22

22 (Whereupon, Exhibit 13 was marked for
(G. Devens Dep., 11/28/17, 111:22)

## OBJECTIONS TO GORDON DEVENS 111:22

Objection.  This designation refers to the court reporter's notes and not testimony, and is

therefore irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 111:22

Directly relevant to designation of Exhibits and for understanding of subsequent testimony on

this exhibit.

## EXCERPT OF DESIGNATION OF GORDON DEVENS 115:10-21

6 Q. Or paid less.
7 Okay. And do you recognize that the signature
8 on that page -- those two signatures on the bottom of
9 page XPO45?
10 A. It looks like Larry Scott's signature and
11 Don Moffitt's. But I'm --
12 Q. And --
13 A. -- not positive.
14 Q. -- and you understood that at the time you
15 originally reviewed?
16 A. That's what I believed.
17 Q. Okay. And the same thing in regards to XPO46?
18 You understood that, at the time you received those at
19 the end of 2015, the signatures at the bottom to be
20 Mr. O'Brien's and Don Moffitt's, correct?
21 A. Yes. I would note I believe I have seen
22 copies of these letters that Don Moffitt didn't sign.

89

23 So I'm not positive that the -- all the copies have his
24 signature. It's strange, right? It's four years after
25 the date of the letter.
(G. Devens Dep., 11/28/17, 115:10-21) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 115:6-9; 115:22-25) (Not designated by Plaintiff)

## OBJECTIONS TO GORDON DEVENS 115:10-21

Lack of personal knowledge as to who actually signed the documents referenced (602).

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).

Additionally, Defendants object because the designation is incomplete.  If the testimony is admitted, for

completeness, the designation should include testimony at 115:6-9 and 115:22-25 (106).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 115:10-21

Directly relevant and highly probative to Devens' knowledge, what he reviewed and was aware

of, and lack of good faith in terminating payments to Mr. O'Brien. With regards to completeness

objection, see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF GORDON DEVENS 116:8-13

8 Q. Okay. Prior to today, have you seen the
9 version signed by Mr. Moffitt?
10 A. I think I have, but I'm pretty confident I've
11 seen one that wasn't signed by him too.
12 Q. Okay. So you've seen both?
13 A. I believe so.
(G. Devens Dep., 11/28/17, 116:8-13)

## OBJECTIONS TO GORDON DEVENS 116:8-13

Lack of personal knowledge as to who actually signed the documents referenced (602).

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 116:8-13

Directly relevant and highly probative to Devens' knowledge, what he reviewed and was aware

of, and lack of good faith in terminating payments to Mr. O'Brien

## EXCERPT OF DESIGNATION OF GORDON DEVENS 122:14-17

12 Q. Do you remember about when you first saw
13 copies of the invoices?
14 A. November, December 2015 and then January,

90

15 February, March --
16 Q. Okay.
17 A. And subsequent of '16.
(G. Devens Dep., 11/28/17, 122:14-17) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 122:12-13) (Not designated by Plaintiff)

**OBJECTIONS TO GORDON DEVENS 122:14-17**

Incomplete: designation ends in the middle of a question/answer. For completeness, the designation should include testimony at 122:12-13 (106).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 122:14-17**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF GORDON DEVENS 131:24; 132:2-4**

24 Q. Okay. And -- and if you look at Exhibit 23,
25 we habe been looking at the first page. But then if you
1 flip, there's invoices that run through June of 2016,
2 correct? Is it correct that payment was never made on
3 any of these invoices?
4 A. To the best of my knowledge, yes.
(G. Devens Dep., 11/28/17, 131:24; 132:2-4) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 131:25-132:1) (Not designated by Plaintiff)

**OBJECTIONS TO GORDON DEVENS 131:24; 132:2-4**

Incomplete: designation omits sections of counsel's introduction of Exhibit 23 and question. For completeness, the designation should include 131:25-132:1 (106).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 131:24; 132:2-4**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF GORDON DEVENS 134:10**

10 (Whereupon, Exhibit 28 was marked for
(G. Devens Dep., 11/28/17, 134:10)

**OBJECTIONS TO GORDON DEVENS 134:10**

Objection.  Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  This exhibit is about another former CNW employee, not about Raymond O'Brien.

1

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 134:10**

2

Letter refers to agreement between Con-Way and O'Brien.  See also Plaintiff's responses to

3

Defendants' objections to Trial Exhibit 28.  Relevant to Defendants' knowledge of agreement with

4

O'Brien.

5

**EXCERPT OF DESIGNATION OF GORDON DEVENS 141:1-142:1**

6

20 Q. Did you have any conversations with XPO's CEO

7

21 regarding the email correspondence that is Exhibit 33?
22 MS. SHMYGOL: And objection to the extent

8

23 it's -- the conversation is privileged.
24 But to the extent it wasn't, go ahead and

9

25 answer.
1 THE WITNESS: Yeah. We -- we covered this

10

2 earlier. I had a conversation with the CEO that I
3 described earlier. So I can refer back to that. It

11

4 covered the subject matter of these emails but not the
5 fact that there were these emails.

12

6 BY MS. WENGER:
7 Q. Okay. Did you -- did you inform XPO's CEO

13

8 that you were getting email correspondence from
9 Mr. O'Brien asking about the status of his payment?

14

10 A. I believe that was my update to him.
11 Q. Okay. And what was his response?

15

12 A. My -- my communications with him was to
13 provide a background of the situation, the results of

16

14 our investigation and my proposed approach to -- to
15 dealing with it. And he -- he listened and then noted

17

16 that he thought that was a reasonable approach.
17 Q. What background did you provide him?

18

18 MS. SHMYGOL: Again, objection to the extent
19 it calls for giving legal advice to your client. But --

19

20 THE WITNESS: The general background about the
21 context that Mr. O'Brien was -- was a long-time employee

20

22 and ultimately CEO and chair of the company and had
23 retired long ago after a long career of great service.

21

24 And then I related my -- the results of my
25 investigation. And that was what I had discussed with

22

1 him.
(G. Devens Dep., 11/28/17, 141:1-142:1) (Underlined testimony designated by Plaintiff)(G.
(Devens Dep., 11/28/17, 140:20-25) (Not designated by Plaintiff)

23

**OBJECTIONS TO GORDON DEVENS 141:1-142:1**

24

Objection, cumulative (403). Incomplete: designation omits sections of counsel's introduction of

25

Exhibit 23 and question.  For completeness, the designation should include 140:20-25 (106).

26

27

28

1

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 141:1-142:1**

2

      Directly relevant and highly probative as to decision to terminate payments to O'Brien. With

3

regards to completeness objection, see Plaintiff's Second Amended Supplemental Designations of

4

Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address

5

Defendants' objection).

6

**EXCERPT OF DESIGNATION OF GORDON DEVENS 143:16**

7

      16 (Whereupon, Exhibit 34 was marked for
      (G. Devens Dep., 11/28/17, 143:16)

8

**OBJECTIONS TO GORDON DEVENS 143:16**

9

      Objection.  This designation refers to the court reporter's notes and not testimony, and is

10

therefore irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)

11

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 143:16**

12

      Directly relevant to designation of Exhibits and understanding of subsequent testimony and

13

questions.

14

**EXCERPT OF DESIGNATION OF GORDON DEVENS 144:2-9; 144:14-18**

15

16

      18 BY MS. WENGER:
      19 Q. The bottom of the first page is Ms. Tohvert
      20 writing and saying that she received the email and she
      21 has given to the chief legal officer for approval.

17

      22 Was she -- is it your understanding that she
      23 was referencing you?

18

      24 A. Yes.
      25 Q. Okay. And she had given the email to you for

19

      1 approval?

20

      2 A. Correct.
      3 Q. Had you -- did you instruct Ms. Tohvert or

21

      4 anyone else to communicate to Ms. O'Brien that Con-way
      5 had decided -- you had decided not to -- excuse me. Let

22

      6 me rephrase that.
      7 Did you give instruction to Ms. Tohvert or

23

      8 anyone else to inform Ms. O'Brien that you had decided
      9 to stop the $6,000-a-month payments to Mr. O'Brien?

24

      10 A. No.
      11 MS. SHMYGOL: Objection as to form.

25

      12 THE WITNESS: No.
      13 BY MS. WENGER:

26

      14 Q. Did you make any effort to contact Ms. O'Brien
      15 or Ray O'Brien to inform them that you had decided to

27

      16 stop the $6,000-a-month payments?
      17 A. I received an email from Renee O'Brien, and

28

      18 then I responded.

(G. Devens Dep., 11/28/17, 144:209; 144:14-18) (Underlined testimony designated by Plaintiff)
(G. (Devens Dep., 11/28/17, 143:18-144:1; 144:10-13) (Not designated by Plaintiff)

## OBJECTIONS TO GORDON DEVENS 144:2-9; 144:14-18

Objection, incomplete. For completeness, the designation should include 143:18-144:1, 144:10-13 (106).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 144:2-9; 144:14-18

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF GORDON DEVENS 146:20-25

    20 Q. Did you ever reach out to Renee O'Brien or
    21 Raymond O'Brien to inform them that you had made a
    22 preliminary -- what you described as a preliminary
    23 decision in December of 2015 to stop the $6,000-a-month
    24 payments?
    25 A. No
    (G. Devens Dep., 11/28/17, 146:20-25)

## OBJECTIONS TO GORDON DEVENS 146:20-25

Irrelevant (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 146:20-25

Directly relevant and highly probative as to Devens misleading, fraudulent and bad faith conduct in terminating payments to O'Brien and how that termination was carried out.  Also relevant to Mr. O'Brien's emotional distress suffered from how termination of payment was carried out.

## EXCERPT OF DESIGNATION OF GORDON DEVENS 147:8-11; 147:15-18; 147:23-148:12

    Q. Okay. Did you ever -- prior to responding to
    2 Renee O'Brien's email, did you ever reach out to
    3 Renee O'Brien or Raymond O'Brien and ask them for any
    4 documents they had relating to the $6,000-a-month
    5 payments?
    6 A. You saw the email where I asked for it. So
    7 that's when I asked for it.
    Q. Prior to responding to her -- Renee O'Brien's
    9 email, did you ever make any such inquiry to
    10 Mr. O'Brien -- Raymond O'Brien or Renee O'Brien?
    11 A. No.
    12 Q. Why not?
    13 A. I made it when I made it. I made the inquiry
    14 in -- in emails that have been produced.
    15 Q. But you did not make such inquiry before you

94

16 actually stopped payment, correct?
17 A. Correct.
18 Q. Why not?
19 A. I had no basis to believe that the payment was
20 due. So I -- I wasn't sure if they would continue
21 sending invoices. I had every reason to believe that we
22 wouldn't get an invoice the next month.
23 Q. But you understood that there had been
24 invoices sent for more than -- about ten years, correct?
25 A. Look, my perspective on it was this was a
1 string of gratuitous payments that was completely within
2 Con-way's authority to pay if they so chose. And they
3 did for a lot of years, that it was -- it was their
4 prerogative to pay $6,000 a month to Mr. O'Brien.
5 And he continued to submit invoices seeking
6 that payment. And I -- there was nothing wrong with
7 that from my perspective. But --
8 Q. So --
9 A. -- I had every expectation that, when we
10 stopped making the payment, again, under the assumption
11 that there was no binding contractual commitment, he
12 would stop submitting the invoices.
(G. Devens Dep., 11/28/17, 147:8-11; 147:15-18; 147:23-148:12) (Underlined testimony designated by Plaintiff)
(G. (Devens Dep., 11/28/17, 147:1-7; 147:12-14; 147:19-22)) (Not designated by Plaintiff)

**OBJECTIONS TO GORDON DEVENS 147:8-11; 147:15-18; 147:23-148:12**

Incomplete. Designation omits questions and answers that provide context for the currently designated testimony. For completeness, the designation should include 147:1-7, 147:12-14, 147:19-22 (106).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 147:8-11; 147:15-18; 147:23-148:12**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF GORDON DEVENS 148:22-149:1**

20 Q. Okay. And as part --
21 A. -- do that.
22 Q. -- of that investigation, did you reach out to
23 Mr. O'Brien himself to find out if he had any
24 information that would assist you in making that
25 analysis?
1 A. No. That came in February or March.
(G. Devens Dep., 11/28/17, 148:22-149:1) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 148:20-21) (Testimony not designated by Plaintiff)

**OBJECTIONS TO GORDON DEVENS 148:22-149:1**

Incomplete. Designation omits questions and answers that provide context for the currently designated testimony. For completeness, the designation should include 148:20-21 (106).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 148:22-149:1**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF GORDON DEVENS 150:1-4**

1 You never affirmatively reached out to
2 Mr. O'Brien prior to him and Renee O'Brien sending
3 correspondence to you, correct?
4 A. Correct.
(G. Devens Dep., 11/28/17, 150:1-4)

**OBJECTIONS TO GORDON DEVENS 150:1-4**

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 150:1-4**

Directly relevant and highly probative as to Devens misleading, fraudulent and bad faith conduct in terminating payments to O'Brien and how that termination was carried out.  Also relevant to Mr. O'Brien's emotional distress suffered from how termination of payment was carried out.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 150:12-17**

12 Q. Did you ask -- so you stopped payment in
13 December 2015, correct?
14 A. Yes.
15 Q. Prior to that time, did you ever reach out at
16 all to Mr. O'Brien asking him for any information?
17 A. No. I did not have a --
18 Q. Okay. That's the question.
19 A. -- I did not have a dialogue going on with
20 Mr. O'Brien.
(G. Devens Dep., 11/28/17, 150:12-17) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 150:18-20) (Not designated by Plaintiff)

**OBJECTIONS TO GORDON DEVENS 150:12-17**

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  Designation also omits portion of witness's response; if admitted, for completeness, the designation should include 150:18-20 (106).

96

1

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 150:12-17**

2

      Directly relevant and highly probative. See Plaintiff's Second Amended Supplemental

3

Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to

4

address Defendants' objection).

5

**EXCERPT OF DESIGNATION OF GORDON DEVENS 155:5-8**

6

      5 Q. Did you provide to Ms. O'Brien or Mr. O'Brien
      6 copies of the correspondence between Mr. Scott and

7

      7 Mr. O'Brien to let them know that you had those
      8 documents?

8

      9 A. No. They didn't ask for that.
      (G. Devens Dep., 11/28/17, 155:5-8) (Underlined testimony designated by Plaintiff)

9

      (G. Devens Dep., 11/28/17, 155:9) (Not designated by Plaintiff)

10

**OBJECTIONS TO GORDON DEVENS 155:5-8**

11

      Objection. Designation includes only counsel's question and counsel is not a witness, and lacks

12

personal knowledge and mischaracterizes the testimony (602).  If admitted, however, this designation

13

should include 155:9 for completeness (106).

14

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 155:5-8**

15

      Counsel's question is important for understanding answer by Devens.  See Plaintiff's Second

16

Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised

17

designation (revised to address Defendants' objection).

18

**EXCERPT OF DESIGNATION OF GORDON DEVENS 156:16**

19

      16 A. Yes.
      (G. Devens Dep., 11/28/17, 156:16)

20

**OBJECTIONS TO GORDON DEVENS 156:16**

21

      Objection.  This designation refers to the court reporter's notes and not testimony, and is

22

therefore irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)

23

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 156:16**

24

      Relevant to designation of record.

25

**EXCERPT OF DESIGNATION OF GORDON DEVENS 157:5**

26

      5 (Whereupon, Exhibit 38 was marked for

27

      (G. Devens Dep., 11/28/17, 157:5)

28

1

**OBJECTIONS TO GORDON DEVENS 157:5**

2

    Objection.  This designation refers to the court reporter's notes and not testimony, and is

3

therefore irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)

4

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 157:5**

5

    Relevant to designation of Exhibits.

6

**EXCERPT OF DESIGNATION OF GORDON DEVENS 157:12-17**

7

    12 Q. This is an email that you sent to Renee and
    13 Ray O'Brien on March 17th, 2016?

8

    14 A. Yes.
    15 Q. And at that time, you had copies of the 1987

9

    16 correspondence between Mr. Scott and Mr. O'Brien,
    17 correct?

10

    18 A. Yes.
    (G. Devens Dep., 11/28/17, 157:12-17) (Underlined testimony designated by Plaintiff)

11

    (G. Devens Dep., 11/28/17, 157:18) (Not designated by Plaintiff)

12

13

**OBJECTIONS TO GORDON DEVENS 157:12-17**

14

    Incomplete. Designation omits answer to designated question. For completeness, the designation

15

should include 157:18 (106).

16

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 157:12-17**

    See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

17

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

18

**EXCERPT OF DESIGNATION OF GORDON DEVENS 159:2-19**

19

    2 Q. Okay. Did you ever respond to this email --

20

    3 this Exhibit 39?
    4 A. I don't believe so.

21

    5 Q. Did you ever have any communications with
    6 Renee O'Brien or Raymond O'Brien informing them that you

22

    7 did not believe that the correspondence constituted an
    8 enforceable contract?

23

    9 A. No. I don't believe so.
    10 Q. Did you ever have any correspondence or

24

    11 communications with Renee O'Brien or Raymond O'Brien
    12 communicating to them your belief that there was no

25

    13 consideration supporting the agreement at issue?
    14 A. No. I don't believe so.

26

    15 Q. Did you ever have any correspondence or
    16 communications with Renee O'Brien or Raymond O'Brien

27

    17 informing them that you believed that these -- the
    18 duration referenced in this correspondence relating to

28

    19 the agreement was -- was too vague and ambiguous?

20 A. No.
(G. Devens Dep., 11/28/17, 159:2-19) (Testimony not designated by Plaintiff)
(G. Devens Dep., 11/28/17, 159:20) (Not designated by Plaintiff)

**OBJECTIONS TO GORDON DEVENS 159:2-19**

Objection. Irrelevant and prejudicial (401, 402, 403). Designation omits answer to designated question. For completeness, the designation (if admitted) should include 159:20 (106).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 159:2-19**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

Relevant to misleading and bad faith manner in which Devens terminated payments without notice or communication. Also relevant to Mr. O'Brien's emotional distress suffered from how termination of payment was carried out.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 160:2-19; 160:23-161:1**

2 Q. Did you receive this email on or around
3 April 8th, 2016?
4 A. I believe so.
5 Q. Did you ever respond to this email from
6 Renee O'Brien in any way?
7 A. I don't recall responding to it.
8 Q. Why not?
9 A. I'm not sure.
10 Q. And you recall why you did not respond to the
11 email marked as Exhibit 39?
12 A. If you look at Exhibit 39, there was an email
13 from Mr. O'Brien at 6:55 p.m. on March 17th, where he
14 was, you know, expressing frustration. And -- my -- my
15 judgment -- which, in hindsight maybe wasn't perfect --
16 but my judgment at the time was to try to minimize the
17 communication, because I didn't think I was going to
18 convince him or Renee O'Brien that our -- our view was
19 correct, that there wasn't an enforceable contract.
20 So I think they certainly understood that that
21 was my position based on the fact that -- what they sent
22 me didn't -- didn't satisfy my request for a contract.
23 Q. But you never actually stated to them that you
24 believed that there was no enforceable contract,
25 correct?
1 A. No. I didn't close the loop, and that's --
(G. Devens Dep., 11/28/17, 160:2-19; 160:23-161:1) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 160: 20-22) (Not designated by Plaintiff)

1  **OBJECTIONS TO GORDON DEVENS 160:2-19; 160:23-161:1**

2      Objection.  Irrelevant to the factual issues remaining in this case and unduly prejudicial (401,

3  402, 403). Designation also omits portion of answer to designated question.  If admitted, for

4  completeness the designation should include 160: 20-22 (106).

5  **RESPONSE TO OBJECTIONS TO GORDON DEVENS 160:2-19; 160:23-161:1**

6      See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

7  Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

8      Relevant to misleading and bad faith manner in which Devens terminated payments without

9  notice or communication.  Also relevant to Mr. O'Brien's emotional distress suffered from how

10 termination of payment was carried out.

11 **EXCERPT OF DESIGNATION OF GORDON DEVENS 161:19-23; 162:2-4**

12     19 Q. Okay. So after receiving this March 11th
       20 email from Raymond O'Brien in which -- which he
13     21 references an agreement with Keith Kennedy, did you make
       22 any attempt to contact Keith Kennedy to obtain more
14     23 details relating to the agreement?
       24 A. No. I took this reference to be consistent
15     25 with what Steve Krull had told me about Keith Kennedy's
       2 Q. Okay. And did you contact Mr. Moffitt to
16     3 obtain additional details from him regarding the
       4 contract?
17     5 A. No. I didn't have any way to contact
       6 Mr. Moffitt.
18     (G. Devens Dep., 11/28/17, 161:19-23; 162:2-4) (Underlined testimony designated by Plaintiff)
       (G. Devens Dep., 11/28/17, 161:24-25; 162:5-6) (Not designated by Plaintiff)
19
   **OBJECTIONS TO GORDON DEVENS 161:19-23; 162:2-4**
20
       Objection.  Irrelevant to the factual issues remaining in this case and unduly prejudicial (401,
21
22 402, 403). Designation also omits portion of answer to designated questions.  If admitted, for

23 completeness the designation should include 161:24-25 and 162:5-6 (106).

24 **RESPONSE TO OBJECTIONS TO GORDON DEVENS 161:19-23; 162:2-4**

25     . See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

26 Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

27     Relevant to misleading and bad faith manner in which Devens terminated payments.

28

100

1

## EXCERPT OF DESIGNATION OF GORDON DEVENS 164:18-22

2
3
4
5

18 Q. Did you receive this invoice around May 1st,
19 2016?
20 A. I believe so.
21 Q. Was that invoice paid?
22 A. I don't believe so.
(G. Devens Dep., 11/28/17, 164:18-22)

## OBJECTIONS TO GORDON DEVENS 164:18-22

6
7

Objection. The document discussed in this designation is not identified in the designated

8

testimony (602).

9

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 164:18-22

10

Document being referenced is clear from testimony identified.

11

## EXCERPT OF DESIGNATION OF GORDON DEVENS 165:6

12
13
14

3 Q. Did you receive this invoice?
4 A. I believe so.
5 Q. And was that invoice paid?
6 A. I don't believe so.
(G. Devens Dep., 11/28/17, 165:6) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 165:3-5) (Testimony not designated by Plaintiff)

15

## OBJECTIONS TO GORDON DEVENS 165:6

16
17

Incomplete. The designation contains an answer that is irrelevant and nonsensical without

18

context. If admitted, for completeness, the designation should include 165:3-5 (106).

19

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 165:6

20

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

21

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

22

## EXCERPT OF DESIGNATION OF GORDON DEVENS 165:24

23
24

22 Q. Do you have any involvement with preparing any
23 of the material filed by XPO with the SEC?
24 A. Yes.
(G. Devens Dep., 11/28/17, 165:24) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 165:22-23) (Testimony not designated by Plaintiff)

25

## OBJECTIONS TO GORDON DEVENS 165:24

26
27

Incomplete. The designation contains an answer that is irrelevant and nonsensical without

28

context. If admitted, for completeness, the designation should include 165:22-23 (106).

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS / CASE NO. 4:16-CV-03869-JSW

1

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 165:24**

2

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

3

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

4

**EXCERPT OF DESIGNATION OF GORDON DEVENS 166:1-8; 166:11**

5

      22 Q. Do you have any involvement with preparing any
      23 of the material filed by XPO with the SEC?

6

      24 A. Yes.
      25 Q. And did you have any involvement with filing

7

      <u>1 press releases that were included with the SEC filings?</u>
      <u>2 A. Yes.</u>

8

      <u>3 Q. Did you have involvement with the preparation</u>
      <u>4 of Exhibit 43?</u>

9

      <u>5 A. I did.</u>
      <u>6 Q. Okay. Is there anything in here that is not</u>

10

      <u>7 accurate?</u>
      <u>8 A. Not --</u>

11

      9 MS. SHMYGOL: Objection. Outside of the scope
      10 of the 30(b)(6) notices -- I apologize.

12

      <u>11 THE WITNESS: Not to the best of my knowledge.</u>
      (G. Devens Dep., 11/28/17,166:1-8; 166:11) (Underlined testimony designated by Plaintiff)

13

      (G. Devens Dep., 11/28/17 ,165:22-25; 166:9-10) (Not designated by Plaintiff)

14

**OBJECTIONS TO GORDON DEVENS 166:1-8; 166:11**

15

Objection.  The testimony is outside the scope of the noticed 30(b)(6) topics.  Further, the

16

designation omits portions of questions that provide context.  If admitted, for completeness, the

17

designation should include 165:22-25, 166:9-10 (106).

18

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 166:1-8; 166:11**

19

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

20

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

21

Testimony relates to his personal knowledge which is within the scope of deposition noticed.

22

*See* Exhibit. C.

23

**EXCERPT OF DESIGNATION OF GORDON DEVENS 166:14**

24

      14 (Whereupon, Exhibit 44 was marked for
      (G. Devens Dep., 11/28/17, 166:14)

25

**OBJECTIONS TO GORDON DEVENS 166:14**

26

Objection.  This designation refers to the court reporter's notes and not testimony, and is

27

therefore irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)

28

1

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 166:14**

2

Directly relevant to designation of Exhibits and understanding of subsequent testimony.

3

**EXCERPT OF DESIGNATION OF GORDON DEVENS 166:23-25**

4

23 Q. You testified earlier about an amended and
24 restated employment agreement. Is Exhibit 44 included

5

25 in what you were referencing?
1 A. So Exhibit 44 is two --

6

2 Q. Two documents, yeah.
3 A. -- 4AKs.

7

4 Q. Okay.
5 A. And it includes the first amended and

8

6 restatement of my employment agreement which happened in
7 March of 2014.

9

8 Q. And was that XPO5647 through 5661?
9 A. That's right.

10

10 Q. Okay. And then does XPO5662 through 5680
11 reflect the separation agreement that you testified

11

12 about earlier?
13 A. No. 5662 through 5670 is the -- the amendment

12

14 and restatement of my employment agreement which
15 happened in February of 2016.

13

16 Q. Okay.
17 A. And then 5671 through 5680 is my separation

14

18 agreement.
19 Q. Okay. Was the -- was the employment agreement

15

20 that begins XPO5647 the operative employment agreement
21 as of December of 2015?

16

22 A. Yes.
23 Q. Okay. And the employment agreement that

17

24 starts at XPO5662 was the employment agreement operative
25 as of March of 2016?

18

1 A. That's right.
2 Q. Okay. And -- and that agreement continued

19

3 until the separation agreement -- starting at 5671 --
4 was executed?

20

5 A. That's right.
(G. Devens Dep., 11/28/17, 166:23-25) (Underlined testimony designated by Plaintiff)

21

(G. Devens Dep., 11/28/17, 167:1-168:5)(Not designated by Plaintiff)

22

**OBJECTIONS TO GORDON DEVENS 166:23-25**

23

Objection.  The document discussed in this designation is not identified in the designated

24

testimony (602).  Further, the designation omits the answer to the question included in the designation.

25

If admitted, for completeness, the designation should include 167:1-168:5 (106).

26

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 166:23-25**

27

The document is identified by bates number.  Furthermore, per the Court's standing order the

28

parties have conformed (where possible) the trial exhibit numbers to deposition exhibit numbers.  Here,

Exhibit 44 referenced in the transcript is also trial exhibit 44.  Therefore, there is no danger of confusion.

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative

Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF GORDON DEVENS 168:13-17**

> 13 Q. Can you describe what Exhibit 45 is?
> 14 A. It's a delegation of authority policy that
> 15 provides limits on signing authority and -- and
> 16 authority to approve payments across the XPO
> 17 enterprises.
> (G. Devens Dep., 11/28/17, 168:13-17)

**OBJECTIONS TO GORDON DEVENS 168:13-17**

Objection.  The document discussed in this designation is not identified in the designated

testimony (602).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 168:13-17**

Per the Court's standing order the parties have conformed (where possible) the trial exhibit

numbers to deposition exhibit numbers.  Here, Exhibit 45 referenced in the transcript is also trial exhibit

45.  Therefore, there is no danger of confusion

**EXCERPT OF DESIGNATION OF GORDON DEVENS 169:5-6**

> 18 Q. Okay. Does anything in here relate to the
> 19 authority regarding termination of payments?
> 20 A. I believe so. So -- so the policy addresses
> 21 authority limits with respect to operating expenditures.
> 22 That's what you asked about, is the inverse of that.
> 23 The -- the authority to not pay operating expenditures.
> 24 Q. And when was -- when was this -- what period
> 25 is this in effect for, if you know?
> 1 A. Various versions of this were in effect since
> 2 early 2015 onward. I'm not sure when this specific
> 3 policy was adopted. I believe it was in 2016.
> 4 Q. Okay.
> 5 A. But a substantially similar prior version
> 6 would have been in place in 2015.
> 7 Q. Do you know what changes were made from 2015
> 8 to 2016?
> 9 A. Not specifically.
> 10 Q. Okay. And what portion of this do you believe
> 11 would apply to termination of payments?
> 12 A. So the -- 5684 covers the authority with
> 13 respect to operating expenditures. So the way that you
> 14 read this is: You figure out what the amount at issue
> 15 is in the far left column, and then you look at your --
> 16 your level as an employee across the top axis.

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS / CASE NO. 4:16-CV-03869-JSW

17 And so Level 2, for example, which is where I
18 fit in this policy, I would have had authority to incur
19 expenditures up to a $150,000 without anybody else's
20 approval.
21 Q. Okay.
22 A. And so correspondingly, I believe I would have
23 had authority to certainly -- to not incur operating
24 expenditures at that level or below.
(G. Devens Dep., 11/28/17, 169:5-6) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 168:18-25; 169:1-4; 169:7-24) (Not designated by Plaintiff)

## OBJECTIONS TO GORDON DEVENS 169:5-6

Incomplete.  The designation contains an answer that is irrelevant and nonsensical without

context. For completeness, the designation should include 168:18-25, 169:1-4, 169:7-24 (106).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 169:5-6

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF GORDON DEVENS 171:1-5

1 Q. Okay. What -- what would you under- -- in
2 conducting your analysis in making the decision to stop
3 the $6,000-a-month payment to Raymond O'Brien, what kind
4 of expenditure did you -- or payment did you consider
5 that $6,000 a month to be?
6 A. An operating expenditure.
7 Q. And why is that?
8 A. Because he was not an employee.
9 Q. So would you consider any payments to former
10 employees as an operating expenditure?
11 A. If you could be more specific with your
12 question.
13 Q. Would you -- would you -- would you consider
14 payments being made to former employees arising out of
15 their former employment with the company to be operating
16 expenditures?
17 A. There are a variety of different kinds of
18 payments you could make to form employees. Like pension
19 payments would be -- I don't believe those are
20 considered operating expenditures. Postretirement
21 health benefits would be a different category than
22 paying somebody $6,000 a month like in the context of
23 the payments to Mr. O'Brien.
24 Q. So how -- what would you -- given that your --
25 your contention is that some payments to former
1 employees fall under operating expenses and some fall
2 under employee benefits, what's the distinguishing
3 factor of which category -- what you would consider
4 which category it falls into?
5 A. Yeah. I'm not sure I'm in the best position

105

6 to define that. I just say, in my mind, a pension
7 payment or a post-retirement health benefit payment is a
8 different thing than giving somebody $6,000 a month just
9 as a -- a gratuitous thank you.
(G. Devens Dep., 11/28/17, 171:1-5) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 171:6-172:9) (Not designated by Plaintiff)

## OBJECTIONS TO GORDON DEVENS 171:1-5

Incomplete. The designation omits the answer to the designated question and subsequent

testimony that clarifies the witness's answer. If admitted, for completeness, the designation should

include 171:6-172:9 (106).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 171:1-5

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF GORDON DEVENS 175:15-17; 175:21-22; 175:24-176:1

15 Q. Were there two separate budgets for -- one for
16 Con-way legal department and one for XPO legal
17 department?
18 MS. SHMYGOL: Objection to the extent it's
19 outside of the noticed 30(b)(6) topics.
20 Go ahead.
21 THE WITNESS: There -- there were separate
22 budgets, but I looked them on a rolled-up basis. So
24 THE REPORTER: "I looked at them on --
25 THE WITNESS: -- a rolled-up basis. So I
1 looked at an aggregate budget --
(G. Devens Dep., 11/28/17, 175:15-17; 175:21-22; 175:24-176:1) (Underlined testimony
designated by Plaintiff)
(G. Devens Dep., 11/28/17, 175:18-20) (Not designated by Plaintiff)

## OBJECTIONS TO GORDON DEVENS 175:15-17; 175:21-22; 175:24-176:1

Objection. The testimony is outside the scope of the noticed 30(b)(6) topics. Further, the

designation is incomplete and, if admitted, should include 175:18-20 for completeness (106).

## RESPONSE TO OBJECTIONS TO GORDON DEVENS 175:15-17; 175:21-22; 175:24-176:1

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

The information testified to is within Mr. Devens' personal knowledge and within the scope of

the deposition noticed. *See* Exhibit C.

1

**EXCERPT OF DESIGNATION OF GORDON DEVENS 176:6-10; 176:13**

2

> 6 Q. Okay. And so you could -- could you hire --
> 7 when you were hiring an attorney or a paralegal, could
> 8 you choose whether to -- to have -- to put them under
> 9 the Con-way legal budget umbrella versus the XPO legal
> 10 budget umbrella?
> 11 MS. SHMYGOL: Same objection. Outside of the
> 12 30(b)(6) notice.
> 13 THE WITNESS: Yes.

3

4

5

6

(G. Devens Dep., 11/28/17, 176:6-10; 176:13) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 176:11-12) (Not designated by Plaintiff)

7

**OBJECTIONS TO GORDON DEVENS 176:6-10; 176:13**

8

9

Objection.  The testimony is outside the scope of the noticed 30(b)(6) topics. Further, the

designation is incomplete and, if admitted, should include 176:11-12 for completeness (106).

10

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 176:6-10; 176:13**

11

12

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

13

14

The information testified to is within Mr. Devens' personal knowledge and within the scope of

the deposition noticed.  *See* Exhibit C.

15

**EXCERPT OF DESIGNATION OF GORDON DEVENS 176:21-25**

16

17

> 21 Q. Okay. When you made the -- what you've
> 22 described as the preliminary decision to stop payments
> 23 to Mr. O'Brien in December of 2015, did you consider the
> 24 impact that stopping payment might have on him?
> 25 A. No.

18

19

(G. Devens Dep., 11/28/17, 176:21-25)

20

**OBJECTIONS TO GORDON DEVENS 176:21-25**

21

Objection.  Irrelevant, prejudicial, and cumulative (401, 402, 403). The testimony is also outside

22

the scope of the noticed 30(b)(6) topics.

23

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 176:21-25**

24

Directly relevant and highly probative to Devens decision to stop payment to O'Brien, and his

25

bad faith actions.  The information testified to is within Mr. Devens' personal knowledge and within the

26

scope of the deposition noticed.  *See* Exhibit C.

27

28

**EXCERPT OF DESIGNATION OF GORDON DEVENS 177:6-8**

6 Q. Okay. Did you consider at all the emotional
7 distress that decision might cost him?
8 A. No.
(G. Devens Dep., 11/28/17,177:6-8)

**OBJECTIONS TO GORDON DEVENS 177:6-8**

Objection.  The probative value of this testimony is substantially outweighed by the prejudice to

Defendants. (403).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 177:6-8**

Directly relevant and highly probative to Devens decision to stop payment to O'Brien, and his

bad faith actions.  Any prejudice is far outweighed by the probative value of the testimony.

**EXCERPT OF DESIGNATION OF GORDON DEVENS 177:23-178:3; 178:6**

23 Q. Okay. In -- in your analysis from
24 September 2015 through the spring of 2016 of -- of the
25 $6,000-a-month payments to Mr. O'Brien, did you ever
1 obtain any information from anyone or review any
2 documents that indicated that any of Con-way's directors
3 had ever objected to those payments being made?
4 MS. SHMYGOL: Objection. Vague and ambiguous.
5 Go ahead.
6 THE WITNESS: I was never aware of any --
7 MS. WENGER: Okay.
8 THE WITNESS: -- board of director objection.
(G. Devens Dep., 11/28/17,177:23-178:3; 178:6) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 178:4-5; 178:7-8) (Not designated by Plaintiff)

**OBJECTIONS TO GORDON DEVENS 177:23-178:3; 178:6**

Objection.  Cumulative and unduly prejudicial (403). Designation also omits portion of answer

to designated questions.  If admitted, for completeness the designation should include 178:4-5 and

178:7-8 (106).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 177:23-178:3; 178:6**

Directly relevant and highly probative to Devens decision to stop payment to O'Brien, and his

bad faith actions.  Any prejudice is far outweighed by the probative value of the testimony.

. With regards to the completeness objection, see Plaintiff's Second Amended Supplemental

Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to

address Defendants' objection).

**EXCERPT OF DESIGNATION OF GORDON DEVENS 185:13-15; 185:19**

> 13 Q. Could you identify for me any of the items
> 14 listed on this disclosure that were terminated after the
> 15 merger closed?
> 16 MS. SHMYGOL: Objection. Outside of the
> 17 30(b)(6) notices.
> 18 But to the extent that you know --
> 19 THE WITNESS: I believe Number 9 was
> 22 Q. And was that for current directors?
> 23 A. I'm not certain.
> (G. Devens Dep., 11/28/17, 185:13-15; 185:193) (Underlined testimony designated by Plaintiff)
> (G. Devens Dep., 11/28/17, 185:16-18, 185:22-23) (Not designated by Plaintiff)

**OBJECTIONS TO GORDON DEVENS 185:13-15; 185:19**

Objection.  Irrelevant, prejudicial, and cumulative (401, 402, 403). The testimony is also outside the scope of the noticed 30(b)(6) topics.  Additionally, the designation is incomplete as it omits answers to designated questions.  If admitted, for completeness the designation should include 185:16-18, 185:22-23 (106).

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 185:13-15; 185:19**

Directly relevant and highly probative as to Mr. Devens' decision making process and what other decisions he was involved with. With regards to completeness objection, see Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF GORDON DEVENS 185:24-25**

> 24 Q. Okay. And did you -- were you involved with
> 25 the decision to terminate Number 9?
> 1 A. No. On page 20, the company car program was
> 2 terminated. The flexible perk program was terminated.
> 3 The executive long-term disability, I believe, was
> 4 terminated. The --
> 5 Q. I'm sorry. Sorry. Slow down a little bit.
> 6 THE REPORTER: What plans?
> 7 BY MS. WENGER:
> 8 Q. So it's 20. What's -- probably identify by
> 9 number is the most helpful.
> 10 A. Yeah. If you look at page 19, it's 18.
> 11 There's four bullets.
> 12 Q. Okay.
> 13 A. So it's at the very top of page 20. All those
> 14 items, I believe, were terminated.
> (G. Devens Dep., 11/28/17, 185:24-25) (Underlined testimony designated by Plaintiff)
> (G. Devens Dep., 11/28/17, 186:1-14) (Not designated by Plaintiff)

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS / CASE NO. 4:16-CV-03869-JSW

1

**OBJECTIONS TO GORDON DEVENS 185:24-25**

2

Objection.  Irrelevant, prejudicial, and cumulative (401, 402, 403). The testimony is also outside

3

the scope of the noticed 30(b)(6) topics.  Additionally, the designation is incomplete as it omits answers

4

to designated questions.  If admitted, for completeness the designation should include 186:1-14 (106).

5

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 185:24-25**

6

Directly relevant and highly probative as to Mr. Devens' decision making process and what other

7

decisions he was involved with. With regards to completeness objection, see Plaintiff's Second

8

Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised

9

designation (revised to address Defendants' objection).

10

**EXCERPT OF DESIGNATION OF GORDON DEVENS 187:15-19**

11

4 Q. And did you have any role in the decision to
5 terminate and/or modify those plans?

12

6 A. No.
7 Number 44, I believe, was terminated.

13

8 Q. Was that for current employees only or current
9 and former employees?

14

10 A. I believe current employees.
11 Q. And did you have any role in the decision to

15

12 terminate that agreement?
13 A. No. I think it happened automatically as a

16

14 consequence of the transaction, the merger.
15 Number 45, obviously, was terminated.

17

16 Number 46 was terminated.
17 Q. And did you have a role in the decision to

18

18 terminate Number 46?
19 A. I did.

19

(G. Devens Dep., 11/28/17, 187:15-19) (Underlined testimony designated by Plaintiff)
(G. Devens Dep., 11/28/17, 187:4-14) (Not designated by Plaintiff)

20

**OBJECTIONS TO GORDON DEVENS 187:15-19**

21

Objection.  Irrelevant, prejudicial, and cumulative (401, 402, 403). Additionally, the designation

22

is incomplete as it omits answers to designated questions.  If admitted, for completeness the designation

23

should include 187:4-14 (106).

24

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 187:15-19**

25

Directly relevant and highly probative as to Mr. Devens' decision making process and what other

26

decisions he was involved with. With regards to completeness objection, see Plaintiff's Second

27

28

110

1  Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised

2  designation (revised to address Defendants' objection).

3  **EXCERPT OF DESIGNATION OF GORDON DEVENS 198:18-24**

4      7 BY MS. SHMYGOL:
       8 Q. What was your understanding at the time you
5      9 were doing due diligence and you received this -- the
       10 disclosure --
6      11 A. And so the --
       12 Q. -- letter?
7      13 A. -- nature of this document is to respond --
       14 THE REPORTER: I'm sorry. The what letter?
8      15 The what letter?
       16 MS. SHMYGOL: The disclosure letter.
9      17 THE WITNESS: The nature of this document is
       18 to respond to specific representations and warrants
10     19 provided in the merger agreement. So there was -- and
       20 you have it as one of the exhibits. The merger
11     21 agreement had a representation to the effect that
       22 Section 3.1H Roman F1 of the disclosure letter provides
12     23 all -- and I'm paraphrasing here -- material benefit
       24 plans of the company. And that's a defined term in the
13     25 agreement.
       1 And so the seller, Con-way, in this instance,
14     2 is required to list off anything that's potentially
       3 responsive that could potentially be viewed as a benefit
15     4 plan. And the sellers incentivized to be very overbroad
       5 with that disclosure because they wanted to preclude the
16     6 possibility of being caught up in a breach of
       7 representation at the later date, right? That could
17     8 give rise to our ability to terminate the merger
       9 agreement, for example, if they failed to disclose
18     10 something that is material.
       11 So Con-way, like most sellers, through a lot
19     12 of items on here -- some of which, from my perspective,
       13 aren't legal obligations at all. And, you know, we
20     14 talked about a couple of them, a couple of things that
       15 had been terminated and modified.
21     16 For example, the executive perquisites set
       17 forth at 18, those weren't obligations at all. They
22     18 were perks provided to employees. So they arguably
       19 could have been perceived as a -- an employee benefit.
23     20 So they showed up on the schedule. We understood what
       21 they were, and that was fine.
24     22 But it wasn't. Just because something showed
       23 up on the schedule didn't mean that it was a binding
25     24 obligation on the company going forward.
       (G. Devens Dep., 11/28/17, 198:18-24) (Underlined testimony designated by Plaintiff)
26     (G. Devens Dep., 11/28/17, 197:7-198:17) (Not designated by Plaintiff)

27

28

1

**OBJECTIONS TO GORDON DEVENS 198:18-24**

2

Incomplete. The designation is incomplete as it omits portions of testimony relevant as context

3

for the designated testimony.  If admitted, for completeness the designation should include 197:7-198:17

4

(106).

5

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 198:18-24**

6

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

7

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

8

**EXCERPT OF DESIGNATION OF GORDON DEVENS 203:8-22**

9

10

11

12

13

14

15

16

17

18

```
 5 Q. Okay. You talked about the team of lawyers
 6 that assisted you in the investigation included
 7 attorneys who were -- who had been with Con-way before.
 8 How many -- how many individuals on that team
 9 assisted you with the investigation before the merger
10 employed by Con-way?
11 A. Three that I can recall.
12 Q. Okay. And so those three individuals had --
13 what had been their duration of -- when would -- when
14 would they commence their employment with Con-way?
15 A. So Jen Warner commenced employment, I believe,
16 in 2011. Uzma Ahmad commenced employment with Con-way,
17 I believe, in 2011 or '12. And Dan Egelerk, I believe,
18 commenced employment in the mid-'90s.
19 Q. Did you have any knowledge that any of those
20 individuals had been personally involved in the
21 negotiation of the agreement with Mr. O'Brien?
22 A. No.
```
(G. Devens Dep., 11/28/2017, 203:8-22) (Underlined testimony designated by plaintiff)
(G. Devens Dep., 11/28/2017, 203:5-7) (Not designated by plaintiff)

19

**OBJECTIONS TO GORDON DEVENS 203:8-22**

20

21

Incomplete. The designation is incomplete as it omits portions of testimony relevant as context

22

for the designated testimony.  If admitted, for completeness the designation should include 203:5-7

(106).

23

24

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 203:8-22**

25

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

26

Affirmative Use at Trial with revised designation, a copy of which is attached hereto as **Exhibit A**.

27

**EXCERPT OF DESIGNATION OF GORDON DEVENS 206:10**

28

```
10 (Whereupon, Exhibit 54 was marked for
```
(G. Devens Dep., 11/28/2017, 206:10)

112

1

**OBJECTIONS TO GORDON DEVENS 206:10**

2

Objection.  This designation refers to the court reporter's notes and not testimony, and is

3

therefore irrelevant and improper.  (See Fed. R. Civ. Proc. 32; 401, 402.)

4

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 206:10**

5

Directly relevant to designation of Exhibits.

6

**EXCERPT OF DESIGNATION OF GORDON DEVENS 206:13-19**

7

13 Q. Is that an email that you sent to Ms. O'Brien?

8

14 A. Yes.
15 Q. It refers to calling her?

9

16 A. Yes, it does.
17 Q. Did you ever follow up with her with a phone

10

18 call?
19 A. I don't recall specifically, although I may

11

20 have.
(G. Devens Dep., 11/28/2017, 206:13-19) (Underlined testimony designated by plaintiff)
(G. Devens Dep., 11/28/2017, 206:20) (Not designated by plaintiff)

12

**OBJECTIONS TO GORDON DEVENS 206:13-19**

13

Incomplete. The designation omits a portion of the answer that is relevant to the witness's

14

response.  As such, for completeness, the designation should include 206:20 (106).

15

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 206:13-19**

16

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

17

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

18

**EXCERPT OF DESIGNATION OF GORDON DEVENS 207:4-8**

19

4 Do you recall ever having any conversations

20

5 over the phone with Renee O'Brien or Raymond O'Brien
6 other than the potential phone call that you just

21

7 referenced?
8 A. No. I'm certain I never talked to

22

9 Mr. O'Brien.
(G. Devens Dep., 11/28/2017, 207:4-8) (Underlined testimony designated by plaintiff)

23

(G. Devens Dep., 11/28/2017, 207:9) (Not designated by plaintiff)

24

**OBJECTIONS TO GORDON DEVENS 207:4-8**

25

Incomplete. The designation omits a portion of the answer that is relevant to the witness's

26

response.  As such, for completeness, the designation should include 207:9 (106).

27

28

**RESPONSE TO OBJECTIONS TO GORDON DEVENS 207:4-8**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

***DEPOSITION DESIGNATIONS FOR STEPHEN KRULL***

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 6:1-7:10**

```
1 SAN FRANCISCO, CALIFORNIA
2 MARCH 9, 2018
3 ---oOo---
4 BE IT REMEMBERED that set on Friday, the 9th
5 day of March, 2018, commencing at the hour of 9:38 a.m.,
6 at the office of Seyfarth Shaw LLP, 560 Mission Street,
7 Suite 3100, San Francisco, California, before me,
8 Cherree P. Peterson, RPR, CRR, CSR No. 11108, a
9 Certified Shorthand Reporter, personally appeared
10 STEPHEN KRULL,
11 having been called as a witness by the plaintiff, who
12 having been duly sworn by me to tell the truth, the
13 whole truth, and nothing but the truth, was thereupon
14 examined and testified as hereinafter set forth.
15 ---oOo---
16 THE VIDEOGRAPHER: Good morning. Here begins
17 media number one in the deposition of Stephen Krull in
18 the matter of Christopher O'Brien versus XPO CNW, Inc.,
19 et al. This case is in the United States District
20 Court, Northern District of California. Case number is
21 16-cv-03869-JSW.
22 Today's date is March 9th, 2018. The time is
23 9:39 a.m. This deposition is taking place at 560
24 Mission Street, Suite 3100, San Francisco, California.
25 The videographer is Andrew Graves here on behalf of
1 Certified Reporting located at 725 Ward Street, Suite A,
2 Martinez, California 94553.
3 Would counsel please identify yourselves and
4 state whom you represent.
5 MS. WENGER: Good morning. Katherine Wenger
6 for Plaintiff Christopher O'Brien.
7 MS. SHMYGOL: Tatyana Shmygol for Defendants
8 XPO CNW, Inc., an XPO Logistics, Inc., and I also
9 represent Steve Krull for the purposes of this
10 deposition.
(S. Krull Dep., 3/9/2018, 6:17-20)
```

**OBJECTIONS TO STEPHEN KRULL 6:1-7:10**

Irrelevant and immaterial; addresses preliminary matters not relevant to the facts at issue in this

case (401-402); prejudice/confusion/waste of time/cumulative (403).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 6:1-7:10**

Involves background and swearing in of the witness.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 15:6-10**

6 Q. Okay. So you never -- you never had, you know,
7 any in-person handoff of documents or, you know, a
8 direct e-mail or direct facts providing some individual
9 at XPO with documents?
10 A. I did not.
(S. Krull Dep., 3/9/2018, 15:6-10)

**OBJECTIONS TO STEPHEN KRULL 15:6-10**

Irrelevant and immaterial; prejudicial (401, 402, 403).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 15:6-10**

Directly relevant and highly probative as to XPO's knowledge of agreement at issue.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 17:16-21-22**

16 So at a minimum you would have -- in
17 conversations with Mr. Devens you would have referenced
18 the existence of these letters that are Krull 005
19 through 010?
20 A. That's correct.
21 Q. And that reference would have been with -- on
22 your end with the intention of understanding that you
23 believe they were in the data room, that he could go
24 review them. Would that be accurate?
25 MS. SHMYGOL: Objection. Misstates testimony.
1 Go ahead.
2 THE WITNESS: I don't think that's why I would
3 have referenced them. I reference them to explain why
4 we had added those disclosures to the disclosure
5 statement about --
6 Q. BY MS. WENGER: Okay.
7 A. -- the arrangement with Mr. Moffitt and Mr. --
8 I don't think I said now go -- we didn't have that in
9 depth of a conversation.
(S. Krull Dep., 3/9/18, 17:16-21) (Underlined testimony designated by Plaintiff)
(S. Krull Dep., 3/9/18, 17:23-18:9) (Not designated by Plaintiff)

**OBJECTIONS TO STEPHEN KRULL 17:16-21-22**

Incomplete.  The designation omits the question mid-way.  If admitted, for completeness, the
designation should include 17:23-18:9 (106).

1

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 17:16-21-22**

2

     See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

3

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

4

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 27:19-21**

5

       19 Q. Did you have any conversations with Doug
       20 Stotlar at any time about the payments being made to Mr.

6

       21 O'Brien?
       22 A. I did.

7

       (S. Krull Dep., 3/9/18, 27:19-21) (Underlined testimony designated by Plaintiff)
       (S. Krull Dep., 3/9/18, 27:22) (Not designated by Plaintiff)

8

**OBJECTIONS TO STEPHEN KRULL 27:19-21**

9

10

     Incomplete.  The designation omits the answer to the question.  If admitted, for completeness,

the designation should include 27:22 (106).

11

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 27:19-21**

12

13

     See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

14

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 31:18-20**

15

16

       18 Q. Okay. Did he -- did he say anything about --
       19 in those conversations about how the duration of how

17

       20 long those benefits and payments were to be made?
       (S. Krull Dep., 3/9/18, 31:18-20)

18

**OBJECTIONS TO STEPHEN KRULL 31:18-20**

19

     Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403).

20

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 31:18-20**

21

     Directly relevant and highly probative as goes to Defendants' knowledge of the agreement at

22

issue and bad faith in terminating payments to Mr. O'Brien.

23

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 31:22-24**

24

       22 THE WITNESS: I don't know that he did. But I

25

       23 know my understanding at the time is that they were
       24 indefinite in nature.
       (S. Krull Dep., 3/9/18, 31:22-24)

26

**OBJECTIONS TO STEPHEN KRULL 31:22-24**

27

     Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403).

28

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS / CASE NO. 4:16-CV-03869-JSW

1

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 31:22-24**

2

Directly relevant and highly probative as goes to Defendants' knowledge of the agreement at

3

issue and bad faith in terminating payments to Mr. O'Brien.

4

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 32:5-14**

5

     5 Q. Okay. Did you have any conversations with
     6 Keith Kennedy about the same topic?

6

     7 A. I did.
     8 Q. Okay. And what was that conversation? What

7

     9 did he tell you?
     10 A. Very similar to Doug, but he had a little bit

8

     11 more background. I think Keith -- I think he may have
     12 been more involved with this at some point. And I think

9

     13 he felt that it's something that the company had told
     14 them that they were going to do. I think Keith thought

10

15 it should continue, did not think that regardless of
16 whether there was -- he just essentially -- I don't --

11

17 we didn't have a detailed conversation about whether
18 there was a contract. I don't think he thought it

12

19 mattered. I think Keith's belief was we should continue
10:07 20 to do it because these were former chairmens and that

13

21 was -- that was the company's tradition, and we had told
22 them we would do it, in his view.

14

(S. Krull Dep., 3/9/18, 32:5-14) (Underlined testimony designated by Plaintiff)
(S. Krull Dep., 3/9/18, 32:15-22) (Not designated by Plaintiff)

15

**OBJECTIONS TO STEPHEN KRULL 32:5-14**

16

Incomplete. The designation is incomplete as it omits portions of testimony relevant as context

17

for the designated testimony.  If admitted, for completeness the designation should include 32:15-22

18

(106).

19

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 32:5-14**

20

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

21

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

22

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 34:16-20; 34-22**

23

16 Q. Okay. So you -- are you -- it was your

24

17 understanding that there was a continuing obligation; it
18 just was your -- it was your opinion that there was no

25

19 -- it was not legally enforceable? Is that the correct
20 distinction?

26

(S. Krull Dep., 3/9/18, 34:16-20)
22 THE WITNESS: Yeah.

27

(S. Krull Dep., 3/9/18, 34:22)

28

**OBJECTIONS TO STEPHEN KRULL 34:16-20; 34-22**

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402). Unduly prejudicial/confusing/waste of time/cumulative (403). Mischaracterization of testimony (602).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 34:16-20; 34-22**

Directly relevant and highly probative as goes to Defendants' knowledge of the agreement at issue, the identification of the obligation to Mr. O'Brien in the disclosure statement that was shared with XPO prior to the acquisition, and bad faith in terminating payments to Mr. O'Brien.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 38:1-5**

24 Q. -- just give me your educational background and
25 kind of subsequent experience.
1 A. Okay. I'll try to be quick.
2 Q. In a nutshell.
3 A. Yeah, in a nutshell, grew up in a small town
4 outside of Peoria, Illinois. Went to public high school
5 there. Went to undergrad at Eastern Illinois
6 University, had a Bachelor of Science in business. I
7 went to law school at IIT Chicago-Kent in Chicago.
8 Went to work at a law firm Sidley & Austin in
9 Chicago for several years after that. And about 1992,
10:12 10 just to put a date in there to give you a reference, I
11 left Sidley & Austin and took an in-house position at a
12 company called A.B. Dick Company, a company that really
13 doesn't exist anymore. It was in the printing industry.
14 And I was there for five years.
10:12 15 And in 1996, -7, time frame, I left and went to
16 Owens Corning in Toledo, Ohio, as a division counsel for
17 about a $1-billion division of the business and then had
18 various roles from that period until 2002 when I became
19 the company's general counsel.
20 We were working through a Chapter 11
21 bankruptcy. There was a lot of asbestos liability at
22 the time. So that was the next four years of my life.
23 And we emerged in 2006 as a new publicly traded company.
24 And I remained general counsel until 2011 when I was
 25 presented with the opportunity to move to Con-way.
<u>1 And I moved to Con-way in about -- I want to</u>
<u>2 say April of 2011 and then remained with the company</u>
<u>3 with the same title of general counsel and chief</u>
<u>4 compliance officer and secretary, board secretary, until</u>
<u>5 the transaction closed at the end of October in 2015.</u>
(S. Krull Dep., 3/9/18, 38:1-5) (Underlined testimony designated by Plaintiff)
(S. Krull Dep., 3/9/18, 36:24-37:25) (Not designated by Plaintiff)

1

**OBJECTIONS TO STEPHEN KRULL 38:1-5**

2

Incomplete. The designation is incomplete as it omits portions of testimony relevant as context

3

for the designated testimony.  If admitted, for completeness the designation should include 36:24-37:25

4

(106).

5

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 38:1-5**

6

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

7

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

8

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 40:9-10**

9

10

> 9 Q. Okay. So you were first hired by Con-way
> 10 general counsel in April 2011. When was the first time
> 11 that you ever heard of Raymond O'Brien?
> 12 A. Probably would have been -- it probably was
> 13 before I joined the company. Or I just kind of went and
> 14 researched the history of the company and played a very
> 10:16 15 prominent role in the growth and success of the company.
> 16 And I don't think you could study Con-way and not see
> 17 Mr. O'Brien's name.

11

12

13

14

> (S. Krull Dep., 3/9/18, 40:9-10) (Underlined testimony designated by Plaintiff)
> (S. Krull Dep., 3/9/18, 40:11-17) (Not designated by Plaintiff)

15

16

**OBJECTIONS TO STEPHEN KRULL 40:9-10**

17

Incomplete to the extent it omits portions of the question and the entirety of the answer.  If the

18

designation is admitted, for completeness, it should include 40:11-17 (106).

19

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 40:9-10**

20

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

21

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

22

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 42:5-6**

23

> 5 Q. Did you have an understanding that he -- he had
> 6 been designated chairman emeritus?
> 7 MS. SHMYGOL: Objection. Foundation.
> 8 Objection as to form.
> 9 THE WITNESS: That point I didn't.

24

25

26

> (S. Krull Dep., 3/9/18, 42:5-6) (Underlined testimony designated by Plaintiff)
> (S. Krull Dep., 3/9/18, 42:7-9) (Not designated by Plaintiff)

27

28

1

**OBJECTIONS TO STEPHEN KRULL 42:5-6**

2

Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403).

3

Incomplete.  If admitted, should include answer at 42:7-9 for completeness (106).

4

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 42:5-6**

5

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

6

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).   Relevant

7

to Krull's knowledge of O'Brien's history with the Company.

8

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 42:11-13**

9
10

11 A. The first time I would have seen a reference to
12 chairman emeritus would have been in connection with my
13 reviewing the matter.
(S. Krull Dep., 3/9/18, 42:11-13)

11

**OBJECTIONS TO STEPHEN KRULL 42:11-13**

12

Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403).

13

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 42:11-13**

14

Relevant to Krull's knowledge of O'Brien's history with the Company.

15

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 43:8-11; 43:15-25**

16
17
18
19
20
21
22
23
24
25

8 Q. And what -- when you were researching the
9 background of the arrangements, what did -- what
10 information did you have? Further information that you
11 haven't already talked about that --
12 A. Sure.
13 Q. -- did you find out about Mr. O'Brien.
14 MS. SHMYGOL: Objection as to form. Go ahead.
15 THE WITNESS: I learned a little bit more about
16 the time periods where he served the company as CEO.
17 And, you know, that he had been CEO until around 1998
18 (verbatim), remained as chairman then until '95, I
19 believe. And there was a period where Larry Scott came
20 in at '88 for a short period of time, and then Mr.
21 Moffitt came after that, but that he ultimately retired
22 as chairman around is it '95, I think. 1995. So CEO
23 and then kind of took a step back on the day-to-day
24 operations but continued to lead the board for a period
25 of time.

26
27

(S. Krull Dep., 3/9/18, 43:8-11; 43:15-25) (Underlined testimony designated by Plaintiff)
(S. Krull Dep., 3/9/18, 43:12-14) (Not designated by Plaintiff)

28

**OBJECTIONS TO STEPHEN KRULL 43:8-11; 43:15-25**

Incomplete.  Omits portion of answer.  For completeness, should include 43-12-14 (106).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 43:8-11; 43:15-25**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 50:22-25; 51:2-11; 51:7-11; 51:14-17; 51:22-23**

22 Q. So once you -- when you -- back in 2011 when I
23 first joined, you had this conversation with certain
24 individuals about these invoices. And once -- once
25 there was kind of resolution on that and it was
1 determined that you would continue paying them going
2 forward, did you -- what was the process each month?
3 Did they just get paid? Did you sign off on something?
4 MS. SHMYGOL: Objection as to form. Go ahead.
10:26 5 THE WITNESS: Let me address it specifically --
6 Q. BY MS. WENGER: Yeah.
7 A. -- with respect to Mr. O'Brien first. That
8 process was very simple. I received -- my office
9 received an invoice in the amount of $6,000. I would
10 sign it or initial it or whatever I did to show my
11 approval, and then it would be processed and paid.
12 Q. Okay.
13 A. It was a little bit different for Mr. Moffitt.
14 Q. Okay. So given that your employment ended
15 October 30th, 2015, and the last one of the invoices
16 that you would have signed off on would have been the
17 October 1st, 2015, invoice approximately?
18 MS. SHMYGOL: Objection as to form.
19 THE WITNESS: I can only assume that I approved
20 one in October.
21 Q. BY MS. WENGER: Okay. But you --
22 A. I would have. If it had come in before the
23 closing, I would have signed it and approved it.
(S. Krull Dep., 3/9/18, 50:22-25; 51:2-11; 51:7-11; 51:14-17; 51:22-23) (Underlined testimony designated by Plaintiff)
(S. Krull Dep., 3/9/18,  51:1; 51:12-13; 51:18-21) (Not designated by Plaintiff)

**OBJECTIONS TO STEPHEN KRULL 50:22-25; 51:2-11; 51:7-11; 51:14-17; 51:22-23**

Incomplete. The designation is incomplete as it omits portions of testimony relevant as context

for the designated testimony.  If admitted, for completeness the designation should include 51:1, 12-13,

18-21 (106).

1

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 50:22-25; 51:2-11; 51:7-11; 51:14-17; 51:22-23**

2

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

3

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

4

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 59:13-16**

5

6        13 Q. And how -- if you can kind of just give us a
         14 general sense of why you would kind of lump them

7        15 together, I think, as you to talked previously about --
         16 A. Okay.

8        (S. Krull Dep., 3/9/19, 59:13-16)

9

**OBJECTIONS TO STEPHEN KRULL 59:13-16**

10

Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403).

11

Question pertains to a different former CNW who is not at issue in this case.

12

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 59:13-16**

13

Relevant and provides context for documents that refer to similar agreement with Donald Moffitt

14

and that talk about agreement with both together.  Also relevant for reason obligations to both

15

individuals became listed on the disclosure agreement.

16

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 60:6-61:1**

17        6 But with respect to Mr. Moffitt and Mr.
          7 O'Brien, there was really no place else they would have

18        8 come. There was nobody in our benefits group -- there
          9 was no document that somebody would have presented for

19        10 the data room. And that's one of the reasons it wasn't
          11 on the disclosure statement because there was people who

20        12 said, all right, in my area of accountability I'm going
          13 to list everything.

21        14 Q. BY MS. WENGER: Right.
          15 A. And that was really in nobody's area of

22        16 accountability. It was one thing that kind of fell
          17 between the cracks. And I felt is -- if I didn't

23        18 identify it and make sure that it was on the radar
          19 screen, it could have very easily fallen between the

24        20 cracks and nobody would have known about it. And I
          21 wanted to make sure that didn't happen. And so I think

25        22 it was unusual in that respect that they were kind of
          23 outliers that didn't fall squarely into somebody else's

26        24 area of accountability, wasn't some clear plan or
          25 contract that could be put forth and had to be handled

27        1 separately.
          (S. Krull Dep., 3/9/18, 60:6-61:1)

28

**OBJECTIONS TO STEPHEN KRULL 60:6-61:1**

Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403). Testimony, in response to counsel's question, pertains to a different former CNW who is not at issue in this case.

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 60:6-61:1**

Directly relevant and highly probative regarding how and why obligation to O'Brien became listed on the disclosure agreement.  Not prejudicial, misleading or confusing.  Furthermore Any prejudice/confusion/waste of time outweighed by probative value..

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 62:17-63:2**

> 17 Q. Okay. And you talked about how it was
> 18 important to you to make sure it got included on the
> 19 disclosure statement. Why was that important?
> 20 A. Well, at least two members of our board and our
> 21 CEO had said they wanted it to continue. And I was the
> 22 company's general counsel. I was the lawyer. And if
> 23 they wanted it to continue, I wanted to make sure that
> 24 at a minimum it didn't stop because it fell between the
> 25 cracks. And that, you know, it was -- it was known.
> 1 And I would -- I would have felt like I wasn't doing my
> 2 job if I didn't, you know, make sure it was disclosed.
> (S. Krull Dep., 3/9/18, 62:17-63:2)

**OBJECTIONS TO STEPHEN KRULL 62:17-63:2**

Irrelevant and immaterial (401-402); prejudicial/confusion/waste of time/cumulative (403).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 62:17-63:2**

Directly relevant and highly probative regarding how and why obligation to O'Brien became listed on the disclosure agreement.  Not prejudicial, misleading or confusing.  Furthermore any prejudice/confusion/waste of time outweighed by probative value.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 80:2-5; 80:8-16; 80:20-23**

> 24 Q. BY MS. WENGER: Okay. We've talked before
> 25 about a disclosure letter --
> 1 A. Yes.
> 2 Q. -- that was provided by Con-way in connection
> 3 with the acquisition by XPO. And so you were the -- am
> 4 I correct that you were the primary individual at
> 5 Con-way responsible for drafting that disclosure letter?
> 6 A. No.
> 7 Q. No?
> 8 A. I was the primary person who's responsible for

123

9 the negotiations of the merger agreement --
10 Q. Okay.
11 A. -- and nondisclosure agreement.
12 Q. Okay.
13 A. So ultimately I was accountable --
14 Q. Okay.
15 A. -- to make sure that the document was accurate
16 and was complete.
17 Q. Okay.
18 A. But in terms of drafting it, which I think is
19 specifically what you asked, no.
20 Q. Yeah. Okay. So would it be accurate to say
21 you were the primary person responsible for overseeing
22 that it was accurate and complete?
23 A. Yes.

(S. Krull Dep., 3/9/18,80:2-5; 80:8-16; 80:20-23) (Underlined testimony designated by Plaintiff)
(S. Krull Dep., 3/9/18, 79:24-80:1; 80:6-8; 80:17-19) (Not designated by Plaintiff)

**OBJECTIONS TO STEPHEN KRULL 80:2-5; 80:8-16; 80:20-23**

Incomplete.  Omits portions of questions and entirety of answers, and takes testimony out of

context.  Also, counsel's question does not constitute testimony.  For completeness, designation should

include 79:24-80:1, 80:6-8, 80:17-19 (106).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 80:2-5; 80:8-16; 80:20-23**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 82:5-15; 82:17-19; 82:24-83:24**

5 Q. So are these -- when we talk about the
6 disclosure letter that was provided to XPO, are these
7 two exhibits, albeit somewhat -- the particularly
8 Exhibit 9, you know, it's redacted, but otherwise are
9 these -- is this a disclosure letter that you have been
10 referring to?
11 A. It is.
12 Q. Okay. And are -- both of those represent the
13 final disclosure letter that was provided to XPO at
14 least to the extent it's identifying section -- the
15 employee benefits?
16 MS. SHMYGOL: Objection. Foundation.
17 Q. BY MS. WENGER: As the -- as section 3.1
18 employee benefits.
19 A. Yeah. I have to assume that it is. It looks
20 like it. I mean, I have haven't -- you know, I would
21 have to read it word by word compared to what was
22 ultimately signed because it's pulled out of the --
23 Q. Yes.
24 A. -- the version where it's labeled execution
25 version. But I have no reason to believe it's not the

124

1 final version.
2 Q. Let me -- yeah. Let me -- but the one labeled
3 Exhibit 9 in its redacted form is the final version
4 that's labeled execution version?
5 A. Yeah, it did not get labeled execution version
6 until the moment before we signed it.
7 Q. Okay. Got it.
8 A. Yes.
9 Q. And so that final execution version included
10 the reference to the $6,000-a-month payments to Mr.
11 O'Brien; correct?
12 A. In 3.1(h)?
13 Q. Yes.
14 A. That's you're -- referring to?
15 Q. Correct.
16 A. That is correct.
17 Q. And to your knowledge, when this -- when the --
18 when the execution version was signed or submitted to
19 XPO, to your knowledge, was it -- was it full, accurate,
20 and complete?
21 A. Yes.
22 Q. Okay. And this is provided to XPO prior to the
23 execution of the actual merger agreement?
24 A. Yes.
(S. Krull Dep., 3/9/18, 82:5-15; 82:17-19; 82:24-83:24) (Underlined testimony designated by
Plaintiff)
(S. Krull Dep., 3/9/18, 82:16; 82: 20-23) (Not designated by Plaintiff)

## OBJECTIONS TO STEPHEN KRULL 82:5-15; 82:17-19; 82:24-83:24

Lacks foundation.  Testimony references exhibits without identification, foundation (FRE 901
and 602). Incomplete.  Omits portions of questions, objections and answers.  If admitted, designation
should include 82:16, 20-23 for completeness (106).

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 82:5-15; 82:17-19; 82:24-83:24

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for
Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

Directly relevant and highly probative of knowledge of CNW of agreement with O'Brien and
information provided to XPO via disclosure statement.

## EXCERPT OF DESIGNATION OF STEPHEN KRULL 85:2-10

2 Q. BY MS. WENGER: Okay. And in the language it
3 refers to -- it begins by saying Raymond F. O'Brien
4 retirement benefits, office, secretarial assistance, and
5 transportation. Was that -- was that language included
6 to communicate that -- the fact that that $6,000 a month
7 was a replacement of that -- or in lieu of the office,
8 secretarial assistance, and transportation that was

9 originally provided to Mr. O'Brien starting back in
10 1987?
(S. Krull Dep. 3/9/18, 85:2-10)

**OBJECTIONS TO STEPHEN KRULL 85:2-10**

Irrelevant and immaterial; address facts no longer at issue in this case (401-402). Unduly

prejudicial/confusing/waste of time/cumulative (403). Lack of personal

knowledge/foundation/speculation (602). Witness specifically says he does not recall who wrote the

document.

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 85:2-10**

Directly relevant and highly probative of knowledge of CNW of agreement with O'Brien and

information provided to XPO via disclosure statement.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 86:1-7**

1 A. But I don't -- I don't recall who put pen to
2 paper and actually drafted it that way.
3 Q. Okay.
4 A. And I don't -- I think we were just simply
5 trying to identify those two arrangements.
6 Q. Okay.
7 A. So they would be on the radar screen for XPO.
(S. Krull Dep. 3/9/18, 86:1-7)

**OBJECTIONS TO STEPHEN KRULL 86:1-7**

Irrelevant and immaterial; address facts no longer at issue in this case (401-402). Unduly

prejudicial/confusing/waste of time/cumulative (403). Lack of personal

knowledge/foundation/speculation (602). Witness specifically says he does not recall who wrote the

document.

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 86:1-7**

Directly relevant and highly probative as to reasons for including agreement with O'Brien in

disclosure statement shared with XPO.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 90:6-15**

6 Okay. So I'm going to give you a copy of
7 what's been marked as Devens' Exhibit 10.
8 A. Okay.
9 Q. Which is the merger agreement.
10 A. Okay.
11 Q. Did you assist in the drafting and preparation

126

12 of this merger agreement?
13 A. I did.
14 Q. Okay. And to your knowledge, when it was
15 signed was everything complete and accurate?
(S. Krull Dep. 3/9/18,  90:6-15)

**OBJECTIONS TO STEPHEN KRULL 90:6-15**

Incomplete. The designation is incomplete as it omits portions of testimony relevant as context

for the designated testimony.  If admitted, for completeness the designation should include 90:20-24

(106).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 90:6-15**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 80:17-24**

17 Q. Okay.
18 A. But in terms of drafting it, which I think is
19 specifically what you asked, no.
11:15 20 Q. Yeah. Okay. So would it be accurate to say
21 you were the primary person responsible for overseeing
22 that it was accurate and complete?
23 A. Yes.
24 Q. The disclosure letter. Okay. So I'm going to
25 give you what's been previously marked as Devens'
1 Exhibit 8 and 9.
2 A. Okay. So the merger agreement and the
3 disclosure letter or schedule.
4 Q. Yes.
11:15 5 A. Well, part of the disclosure schedule.
6 MS. SHMYGOL: I think they're both disclosure
7 letters.
8 MS. WENGER: Yeah, like, they're both. And
9 so --
10 THE WITNESS: Oh, they are. Okay. Yes.
11 Correct.
12 MS. SHMYGOL: One is more complete.
13 Q. BY MS. WENGER: One of --
14 A. Yes.
(S. Krull Dep., 3/9/18, 80:17-24) (Underlined testimony designated by Plaintiff)
(S. Krull Dep., 3/9/18,  80:25-81:14) (Not designated by Plaintiff)

**OBJECTIONS TO STEPHEN KRULL 80:17-24**

The designation may have been made in error.  Portions of this testimony designated and

objected to (see above, 80:23-23).  Incomplete, omits portion of response and question.  For

completeness, should include 80:25-81:14 (106).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 80:17-24**

Designation was an inadvertent error.  See Plaintiff's Second Amended Supplemental

Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to

address Defendants' objection).

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 91:1-3**

25 Q. Okay. As you sit here today, have you any
<u>1 reason to believe that there's anything in this</u>
<u>2 agreement that is not complete or accurate?</u>
<u>3 A. No.</u>
(S. Krull Dep., 3/9/18, 91:1-3) (Underlined testimony designated by Plaintiff)
(S. Krull Dep., 3/9/18, 90:25) (Not designated by Plaintiff)

**OBJECTIONS TO STEPHEN KRULL 91:1-3**

Incomplete. The designation is incomplete as it omits portions of counsel's question relevant as

context for the designated testimony.  If admitted, for completeness the designation should include 90:25

(106).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 91:1-3**

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for

Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 92:2-24**

2 Q. BY MS. WENGER: So was it your understanding
3 that after the acquisition that all of Con-way's
4 obligations would remain with Con-way after that
5 acquisition?
6 A. Yes.
7 Q. Okay. And were you -- and it was your
8 understanding that Con-way would be renamed upon the
9 acquisition? Was it -- would -- the entity would
10 remain; it would just get its name changed?
11 A. Get its name changed.
12 Q. Get its name changed.
13 So I'm going to give you what's going to be
14 marked as Exhibit 7.
15 A. Okay.
16 (Plaintiff's Exhibit 7 marked for
17 identification.)
18 Q. BY MS. WENGER: Do 7 -- Exhibit 7 reflect your
19 -- consistent with your understanding of the name change
20 that was to occur after the acquisition?
21 MS. SHMYGOL: Objection. Foundation.
22 THE WITNESS: It does, yes.
23 MS. WENGER: I'm going to give you what's going

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

24 to be marked as Exhibit 8.
(S. Krull Dep., 3/9/18, 92:2-24)

**OBJECTIONS TO STEPHEN KRULL 92:2-24**

Objection.  Irrelevant, wastes time and is unnecessarily cumulative (401, 402, 403). The parties

have already stipulated to the name change.

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 92:2-24**

Directly relevant and highly probative as to CNW's obligation for contract with O'Brien.

Plaintiff's response to Defendants' objection to trial Exhibit 94.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 93:1-10**

1 (Plaintiff's Exhibit 8 marked for
2 identification.)
3 Q. BY MS. WENGER: And if you turn to the last
4 page, I want to confirm that's your signature.
5 A. That is my signature.
6 Q. And to the best of your knowledge, is
7 everything in these minutes accurate and correct?
8 A. Yes. I remember this meeting well.
9 Q. Okay. I'm going to give you what's going to be
10 marked as Exhibit 8 -- I'm sorry. Are we at 8 or 9?
(S. Krull Dep., 3/9/18, 93:1-10)

**OBJECTIONS TO STEPHEN KRULL 93:1-10**

Objection.  Irrelevant and immaterial (401-402).  The board minutes are irrelevant to the

remaining facts at issue in the case. Lacks foundation (602, 901).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 93:1-10**

Relevant.  Plaintiff's response to Defendants' objection to trial Exhibit 83.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 94:2-10**

2 Q. BY MS. WENGER: Okay. Exhibit 9, is that your
3 signature at the end of that document?
4 A. Yes, it is.
5 Q. Okay. And is everything -- to your knowledge,
6 is everything in those minutes true and accurate?
7 A. Obviously I haven't sat and read it again.
8 Q. Read it? Yeah.
9 A. But yes. A great -- we went to great lengths
10 to accurately capture the substance of those meetings.
(S. Krull Dep., 3/9/18, 94:2-10)

**OBJECTIONS TO STEPHEN KRULL 94:2-10**

Objection.  Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403); lack of personal knowledge/foundation/speculation (602).  Witness specifically states he hasn't "sat and read it again" and so cannot testify to the accuracy of the document.

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 94:2-10**

Relevant.  Plaintiff's response to Defendants' objection to trial Exhibit 85.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 94:13**

13 (Plaintiff's Exhibit 10 marked for
(S. Krull Dep., 3/9/18, 94:13)

**OBJECTIONS TO STEPHEN KRULL 94:13**

Objection.  This designation refers to the court reporter's notes and not testimony, and is therefore irrelevant and improper (See Fed. R. Civ. Proc. 32; 401, 402).

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 94:13**

Directly relevant to designation of Exhibits.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 102:4-20**

7 A. Fair question. So the merger agreement that --
8 what we had to capture for sure were things that were
9 material to the company. And materiality with respect
10 to a public company has very specific meaning. It's not
11 always bright line. But it's things that have financial
12 significance or in some other way would be significant
13 to the organization.
14 And if you -- the disclosure statement is a
15 function of the merger agreement. So the merger
16 agreement has certain provisions that will reference a
17 benefit plan. And it may reference it in the form of a
18 representation of warranty, which is a specific type of
19 a provision in this type of an agreement, and it would
11:52 20 say we've listed all material benefit programs, for
21 example. And it's a representation to the buyer that we
22 have done our due diligence and we are representing to
23 you that this is it. And then we sign the document so
24 we have a commitment.
25 And so everything that was material we had an
1 obligation to disclose. And anything that's a little
2 less clear that we wanted to disclose, we could disclose
3 in the interest of completeness.
4 And I will tell you with respect to the items
5 on page 21 that related to Ray O'Brien and Donald
6 Moffitt, the reason I wanted to make sure those were
7 included is because I thought there was a high

8 likelihood they would be missed. With respect to
9 vendors who have relationships within the company, those
10 were not likely to be missed. There would be somebody
11 -- you know, all of those employees who were handling
12 marketing contracts, who were handling contracts with
13 other vendors would have continued with the company and
14 those would have included in the ordinary course.
15 The people who knew anything about this were
16 not likely to remain with the company. I was going to
17 be gone. Doug Stotlar was going to be gone. Our board
18 members were going to be gone. And so my primary reason
19 putting it in there was no make sure it was on the radar
20 screen and not missed.
(S. Krull dep., 3/9/2018, 102:4-20) (Not designated by plaintiff)
(S. Krull Dep., 3/9/2018, 101:7-102:3) (Underlined testimony designated by plaintiff)

## OBJECTIONS TO STEPHEN KRULL 102:4-20

Incomplete.  Omits question and testimony providing context for designated language.  For completeness, designation should include 101:7-102:3

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 102:4-20

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF STEPHEN KRULL 105:16-19

16 Q. Did you ever see any documents indicating that
17 Con-way had the right in its sole discretion to
18 terminate the $6,000-a-month payments being made to Mr.
19 O'Brien?
(S. Krull Dep., 3/9/2018, 105:16-19)

## OBJECTIONS TO STEPHEN KRULL 105:16-19

Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403); lack of personal knowledge/foundation/speculation (602).

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 105:16-19

Directly relevant and highly probative as to Defendants' knowledge of agreement with O'Brien and its terms.

## EXCERPT OF DESIGNATION OF STEPHEN KRULL 105:21-106:1

21 THE WITNESS: No.
22 Q. BY MS. WENGER: Did you ever have any
23 communications with anyone in which anyone told you that
24 they believed that the company had the right to
25 unilaterally in its sole discretion terminate the

1 $6,000-a-month payment to Mr. O'Brien?
(S. Krull Dep., 3/9/2018, 105:21-106:1)

## OBJECTIONS TO STEPHEN KRULL 105:21-106:1

Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403); lack of personal knowledge/foundation/speculation (602).

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 105:21-106:1

Directly relevant and highly probative as to Defendants' knowledge of agreement with O'Brien and its terms.

## EXCERPT OF DESIGNATION OF STEPHEN KRULL 106:5-8

5 THE WITNESS: Okay. I don't recall having
6 anybody say that to me.
7 Q. BY MS. WENGER: Okay. Did you ever --
8 A. No.
(S.Krull Dep., 3/9/2018, 106:5-8)

## OBJECTIONS TO STEPHEN KRULL 106:5-8

Irrelevant and immaterial (401-402); prejudice/confusion/waste of time/cumulative (403); lack of personal knowledge/foundation/speculation (602).

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 106:5-8

Directly relevant and highly probative as to Defendants' knowledge of agreement with O'Brien and its terms.

## EXCERPT OF DESIGNATION OF STEPHEN KRULL 109:1

1 (Plaintiff's Exhibit 11 marked for
(S. Krull Dep., 3/9/2018, 109:1)

## OBJECTIONS TO STEPHEN KRULL 109:1

Objection.  This designation refers to the court reporter's notes and not testimony, and is therefore irrelevant and improper (See Fed. R. Civ. Proc. 32; 401, 402).

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 109:1

Directly relevant to designation of exhibits.

## EXCERPT OF DESIGNATION OF STEPHEN KRULL 109:20-22

20 Q. BY MS. WENGER: So is this an e-mail that you
21 wrote to Ms. Oxendine in September of 2015?

22 A. Yes.
(S. Krull Dep., 3/9/2018, 109:20-22)

## OBJECTIONS TO STEPHEN KRULL 109:20-22

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  This exhibit relates to a former CNW employee, not Raymond O'Brien.

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 109:20-22

Directly relevant and highly probative to Mr. Krull's understanding of Company's obligations listed in disclosure statement.

## EXCERPT OF DESIGNATION OF STEPHEN KRULL 110:4-9

4 Q. BY MS. WENGER: So when -- when you -- in
5 the -- in the top portion of the e-mail you refer to "We
6 did make that agreement part of the Merger Agreement, so
7 they are bound by it." Are you -- are you referring to
8 Con-way's agreement with Mr. Moffitt regarding his
9 office, secretary, and car service?
10 MS. SHMYGOL: Objection as to form. Go ahead.
11 THE WITNESS: Yeah, so I'm responding to Pam's
12 note. And, I mean, that's -- she had obviously referred
13 to it as Mr. Moffitt's agreement with Con-way. And she
14 was the secretary of Mr. Moffitt. So I knew exactly
12:03 15 what she was referring to. She was referring to her
16 position with the company supporting Mr. Moffitt as his
17 administrative assistant. So yes.

(S. Krull Dep., 3/9/2018, 110:4-9) (Underlined testimony designated by plainttiff)
(S. Krull Dep., 3/9/2018, 110:10-17) (Not designated by plaintiff)

## OBJECTIONS TO STEPHEN KRULL 110:4-9

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  This exhibit relates to a former CNW employee, not Raymond O'Brien. Also, this designation only include counsel's question, and counsel is not a witness. If admitted, this designation should include 110:10-17 for completeness (106).

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 110:4-9

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

Relevant and probative as to Defendants' knowledge of agreement with O'Brien and its terms.

Mr. Krull testified that he considered the arrangements with O'Brien and Moffitt to be similar in nature,

and both were specifically called out in the disclosure statement for the same reason.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 110:18-23; 111:1**

> 18 Q. BY MS. WENGER: And so when you -- when you
> 19 said "We did make that agreement part of the Merger
> 20 Agreement," you're referring to the fact that that was
> 21 -- the secretary, car service, and office were
> 22 identified in the disclosure statement that we've been
> 23 looking at that's Exhibit 9?
> (S.Krull Dep., 3/9/2018, 110:18-23)
>
> 1 A. That's exactly what I was referring to, yes.
> (S. Krull Dep., 3/9/2018, 111:1)

**OBJECTIONS TO STEPHEN KRULL 110:18-23; 111:1**

Irrelevant and immaterial (401-402).  Unduly prejudicial/confusing/waste of time/cumulative

(403).  This exhibit relates to a former CNW employee, not Raymond O'Brien.

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL 110:18-23; 111:1**

Relevant and probative as to Defendants' knowledge of agreement with O'Brien and its terms.

Mr. Krull testified that he considered the arrangements with O'Brien and Moffitt to be similar in nature,

and both were specifically called out in the disclosure statement for the same reason.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL 131:22-132:1**

> 4 A. I mean, I -- you know, I do look back in
> 5 minutes from time to time. Or I did to find out
> 6 historical conduct -- context for arrangements that the
> 7 company has entered into. And it's just very unusual.
> 8 I mean, Mr. O'Brien, an extremely sophisticated
> 9 business person. There are ways to memorialize
> 10 agreements. He had -- he -- I'm confident he knew how
> 11 to do it. I'm confident he had the authority to cause
> 12 the board to formalize that arrangement. And that's not
> 13 what happened. And from my perspective, it was based on
> 14 relationships, not a contract or a binding obligation.
> 15 And those relationships were meaningful. But going --
> 16 going forward that way presented some risks. And --
> 17 Q. But you -- so you did see the -- you did see
> 18 correspondence going to both the board and the
> 19 compensation committee at the time with the letters back
> 20 and forth between Mr. O'Brien and Mr. Scott; correct?
> 21 A. That's correct.
> 22 Q. Okay. So to your knowledge, it was presented
> 23 to the board -- at a minimum the compensation committee;

24 correct?
25 A. I have every reason to believe that the board
1 was aware of it, yes.
(S Krull Dep., 3/9/2018, 131:22-132:1) (Not designated by plaintiff)
(S. Krull Dep., 3/9/2018, 131:4-131:21) (Underlined testimony designated by plaintiff)

## OBJECTIONS TO STEPHEN KRULL 131:22-132:1

Irrelevant and immaterial; addresses facts no longer at issue in this case (401-402).  Unduly prejudicial/confusing/waste of time/cumulative (403).  Additionally, Defendants object as this designation takes the witness's testimony out of context; specifically, it excludes Mr. Krull's response to counsel's question at 131:4 to 131:21, and is therefore incomplete (106).

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 131:22-132:1

Directly relevant and highly probative as to Defendants' knowledge of the agreement. See also Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

## EXCERPT OF DESIGNATION OF STEPHEN KRULL 134:11-13; 134:15-17

11 Q. So there was some ambiguity as to -- in your
12 mind as to whether or not this amount was supposed to be
13 related to actual expenses or not?
(S. Krull Dep., 3/9/2018, 134:11-13) (Underlined testimony designated by plaintiff)
15 THE WITNESS: I never thought that related to
16 specific expenses at that point. I thought it was just
17 the $6,000 -- you know, the only way the situation was
18 similar was Mr. Moffitt's where we knew there was a
19 lease, there was a lease payment, there's a secretary,
20 there was a salary, which is very specific. So I think
21 I just assumed that there had been some understanding
22 that for $6,000 he would get whatever services he
23 needed, and that's what he was doing.
(S. Krull Dep., 3/9/2018, 134:11-13;134:15-17) (Underlined testimony designated by plaintiff)
(S. Krull Dep., 3/9/2018, 134:18-23) (Not designated by plaintiff)

## OBJECTIONS TO STEPHEN KRULL 134:11-13; 134:15-17

Incomplete.  If admitted, this designation should include the remaining portion of the witness's answer at 134:18-23.

## RESPONSE TO OBJECTIONS TO STEPHEN KRULL 134:11-13; 134:15-17

See Plaintiff's Second Amended Supplemental Designations of Deposition Testimony for Affirmative Use at Trial with revised designation (revised to address Defendants' objection).

**EXCERPT OF DESIGNATION OF STEPHEN KRULL EXHIBIT 8**

*See* Exhibit H.

**OBJECTIONS TO STEPHEN KRULL EXHIBIT 8**

Objection. Defendants object to this exhibit on relevance grounds (FRE 401, 402).  The minutes are irrelevant to the remaining facts at issue in the case.

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL EXHIBIT 8**

See Plaintiff's Response to Defendants' Objection to Trial Exhibit 83.

**EXCERPT OF DESIGNATION OF STEPHEN KRULL EXHIBIT 11**

*See* Exhibit I.

**OBJECTIONS TO STEPHEN KRULL EXHIBIT 11**

Objection. Defendants object to this exhibit on relevance grounds, because it is prejudicial and because it causes confusion of the issues (FRE 401, 402, 403). This email chain pertains to a different CNW employee and is irrelevant to the facts at issue in this case.

**RESPONSE TO OBJECTIONS TO STEPHEN KRULL EXHIBIT 11**

See Plaintiff's Response to Defendants' Objection to Trial Exhibit 88.

***DEPOSITION DESIGNATIONS FOR SHARRON FERRO***

**EXCERPT OF DESIGNATION OF SHARRON FERRO 8:15-20:21**

15 Q. Have you spoken to anyone about the
16 lawsuit?
17 A. Yes.
18 Q. Who?
19 A. Chris O'Brien.
20 Q. Anyone else?
21 A. And Ray O'Brien.
22 Q. Do you recall on how many occasions you spoke
23 to Chris O'Brien about the lawsuit?
24 A. I'm estimating about three, four times.
25 Q. And do you know when those conversations
1 occurred?
2 A. They were all when Ray O'Brien was alive.
3 Q. And what was discussed?
4 A. Let's see. It was -- I've got to think how
5 to say this. Ray O'Brien was upset that he was not
6 getting paid or the agreement was not being upheld.
7 Q. Do you recall regarding -- do you recall

136

8 whether anything else was discussed?
9 A. Maybe minor things concerning that same
10 topic.
11 Q. Prior to today did you ever speak with
12 Ms. Wenger?
13 A. Yes.
14 Q. And when did that conversation -- and on how
15 many occasions?
16 A. I don't remember, but I met you for dinner
17 and I've spoken on the phone a few times about
18 arranging for this deposition.
19 Q. Okay. Was the dinner with Ms. Wenger when
20 Ray O'Brien was alive?
21 A. Yes.
22 Q. And what did you discuss at the dinner?
23 MS. WENGER: Objection to the extent it's not
24 relevant to this case. Maybe narrow the question.
25 ///
1 BY MS. KNUDSON:
2 Q. What did you discuss at dinner related to the
3 lawsuit?
4 A. I don't remember anything really. It's the
5 lawsuit.
6 Q. And you've not spoken to Chris O'Brien since
7 Ray O'Brien passed away. Correct? About the lawsuit.
8 A. Not about the lawsuit.
9 Q. Can you please tell me where you were born
10 and the date?
11 A. I was born in East St. Louis, Illinois, on
12 May 31st, 1948.
13 Q. Are you married?
14 A. I'm widowed.
15 Q. Do you have any criminal convictions?
16 A. No.
17 Q. We talked about your deposition testimony a
18 few years ago. Have you ever been involved in any
19 other lawsuits as a witness?
20 A. No.
21 Q. Did you graduate from high school?
22 A. I did.
23 Q. Did you go to college after high school?
24 A. I did.
25 Q. And what was your degree?
1 A. I don't have a degree in college.
2 Q. What was your major?
3 A. Business.
4 Q. Can you please provide me with a general
5 description of your employment history?

137

6 A. Secretarial, real estate broker, fundraiser,

7 and director of women's golf.

8 Q. We previously established that you knew

9 Raymond O'Brien. Correct?

10 A. Yes.

11 Q. When did you meet Mr. O'Brien?

12 A. September -- late of 2014.

13 Q. Where?

14 A. At Del Mar Country Club. Oh, I'm so sorry.

15 Desert Horizons Country Club.

16 Q. How would you describe your relationship with

17 him?

18 A. We were very good friends and companions.

19 Q. And what do you mean by companions?

20 A. We traveled together, we went out together.

21 Q. Did the two of you live in the same

22 neighborhood?

23 A. Yes.

24 Q. How often did you see him during the last two

25 years of his life?

1 A. Almost daily.

2 Q. And you mentioned travel and spending time

3 together. What other types of activities did you

4 participate in with Mr. O'Brien?

5 A. We did golf a little bit, we went out to

6 dinner, we co-hosted a party, we swam.

7 Q. Who was the better golfer?

8 A. I was.

9 Q. It's on the record now. Did other people

10 participate in your activities with you?

11 A. Quite a few times, yes.

12 Q. Did you often speak with Mr. O'Brien by

13 telephone?

14 A. Yes.

15 Q. How often?

16 A. Daily.

17 Q. Did you correspond with him at all in

18 writing?

19 A. We texted.

20 Q. Can you please describe Mr. O'Brien's health

21 in 2015?

22 A. '15.

23 MS. WENGER: And I'm going to object to -- I

24 mean I don't know how specific we want to get, but to

25 the extent that there was a difference in 2013 versus

1 another, you can speak to that, but --

2 MS. KNUDSON: I would kind of like a general

3 description of his health. Actually, that was my

138

4 question.

5 MS. WENGER: Okay.

6 THE WITNESS: His general health when I first
7 met him in late 2014 was -- for his age was quite --
8 quite good. He was mentally sharp. I believe he had
9 congestive heart failure. But he was always extremely
10 sharp. When his body started failing, his mind never
11 did.

12 BY MS. KNUDSON:

13 Q. Was he still driving when you met him?

14 A. Yes.

15 Q. And still playing golf, you said?

16 A. A little bit.

17 Q. You mentioned travel. Where was Mr. O'Brien
18 traveling in 2015?

19 A. To his condo in Maui.

20 Q. And do you recall how often -- how many times
21 he traveled in 2015 approximately?

22 A. One time to the condo.

23 Q. Do you recall whether he traveled to the Bay
24 Area?

25 A. Yes, he did.

1 Q. And how often?

2 A. I think twice.

3 Q. What was the purpose of those visits?

4 A. Family get-together.

5 Q. Do you know if he made any business trips to
6 the Bay Area?

7 A. I think most of his traveling at that time
8 was family.

9 Q. Do you recall any other travel that
10 Mr. O'Brien took in 2015?

11 A. He went to Mexico with his son Christopher.

12 Q. Did Mr. O'Brien suffer from any major health
13 incidents between December 2015 until the time of his
14 death in February 2017 that you're aware of?

15 MS. WENGER: Objection. Vague and ambiguous
16 as to the word incident, but go ahead.

17 THE WITNESS: He fell and broke his hip.

18 BY MS. KNUDSON:

19 Q. Anything else that you're aware of?

20 A. Well, he would bump himself sometimes pretty
21 hard and slice his skin open.

22 Q. Do you recall whether Mr. O'Brien was
23 suffering renal problems during that period?

24 A. I think toward the end of his -- or his life
25 after he fell and broke his hip, his body started
1 failing, and that -- what I would imagine, that was

2 part of it.

3 Q. And you mentioned he was also suffering from

4 congestive heart failure?

5 A. Yes.

6 Q. At some point Mr. O'Brien began receiving

7 in-home assistance. Correct?

8 A. Yes.

9 Q. Do you recall when that was?

10 A. I don't have the dates. He was in -- when he

11 fell and broke his hip, he was in rehab for, I'm

12 guessing, two months, and he went home with 24-hour

13 care. And then hospice came later on.

14 Q. When did he fall and break his hip?

15 A. I think it was September or the first of

16 October of --

17 Q. Of 2016?

18 A. These things --

19 MS. WENGER: Again, we don't want you to

20 guess.

21 THE WITNESS: I can't remember the year.

22 MS. WENGER: If you're guessing, we don't

23 want you.

24 BY MS. KNUDSON:

25 Q. I'll represent to you he passed away in

1 February of 2017.

2 A. Then it was '16.

3 Q. At some point Mr. O'Brien became wheelchair

4 bound. Do you recall when that was?

5 A. About that same time.

6 Q. And is that also when he stopped driving?

7 A. Yes.

8 Q. You mentioned that Mr. O'Brien also had a few

9 bumps between 2015 and 2017. Had he actually fallen

10 during those periods, do you know?

11 A. There was one fall where he tripped on his

12 pajamas and we had to take him to the hospital just as

13 a checkup, and he -- he had not broken anything at that

14 time.

15 Q. When Mr. O'Brien was in the rehabilitation

16 facility, did you visit him there?

17 A. Yes.

18 Q. How often?

19 A. Every day.

20 Q. Can you please describe his emotional state

21 while he was staying there?

22 A. He was very frustrated.

23 Q. What did he tell you about his frustration?

24 A. He didn't like being there and he wanted to

140

25 get on with his life, and he was a very active man for
1 his age.
2 Q. Did he discuss with you whether he was
3 sleeping while there?
4 A. Yes, he had bouts that he couldn't sleep,
5 but --
6 Q. Did he tell you why he couldn't sleep?
7 A. The bed was uncomfortable and he hurt.
8 Q. Did he express whether he was experiencing
9 any anxiety when he was at the rehabilitation
10 facility?
11 A. I don't know anything about that.
12 Q. Okay. Did Mr. O'Brien discuss his emotions
13 with you?
14 A. Sometimes.
15 Q. Are you aware of any emotional issues that he
16 suffered from December 2015 until the time of his
17 death?
18 MS. WENGER: Objection. Vague and ambiguous.
19 Go ahead.
20 THE WITNESS: Would you repeat that?
21 BY MS. KNUDSON:
22 Q. Are you aware of any emotional issues that he
23 suffered from in December 2015 until the time of his
24 death?
25 MS. WENGER: And again restate the objection.
1 Vague and ambiguous. And to the extent and this goes
2 to the question -- to the extent it's calling for an
3 opinion that's more of an expert opinion, but go ahead.
4 THE WITNESS: Not being a doctor, he was
5 frustrated that he had to go through physical therapy.
6 He wanted to get out. He was an active guy and he
7 really hated the aging process. And he was -- he was
8 quite frustrated with that.
9 BY MS. KNUDSON:
10 Q. And that was when he was in the
11 rehabilitation facility?
12 A. All through that.
13 Q. All through that kind of time period?
14 A. Yes.
15 Q. Did he discuss any symptoms of frustration
16 that he was experiencing?
17 MS. WENGER: Objection. Vague and ambiguous.
18 THE WITNESS: He was frustrated on two
19 counts; and one was as I said before his medical state;
20 the other, he did mention that he was frustrated with
21 not getting paid and thought that was way below --
22 well, it wasn't the contract and he was frustrated that

141

23 they wouldn't withhold -- the company would not honor
24 the contract. He was such an honorable guy and that
25 upset him pretty much.
1 BY MS. KNUDSON:
2 Q. Did he discuss his frustration with you
3 often?
4 A. I guess so. We spent every day together.
5 Q. Right. How often would you say that topic of
6 conversation was discussed?
7 A. Toward the end, probably every day. But it
8 was more of a general thing after he told me what was
9 going on.
10 Q. Do you know if he was suffering from anxiety
11 at all from December 2015 until February 2017?
12 MS. WENGER: Again, objection to the
13 extent -- it's vague and ambiguous, and to the extent
14 it's getting into issues of expert opinion, but go
15 ahead.
16 THE WITNESS: I don't know as a non-medical
17 person what qualifies for anxiety or not. I know he
18 was really disappointed and concerned about the state
19 of that contract.
20 BY MS. KNUDSON:
21 Q. Did he ever express to you that it was
22 specifically causing him anxiety?
23 A. Yes, I guess he did. Yeah.
24 Q. What did he say?
25 A. Well, it just seemed like it was so
1 unnecessary to him to have to go through that. I mean
2 they made a -- he told me they made a contract and it
3 wasn't being honored.
4 Q. And did he tell you specifically what
5 symptoms of anxiety he was suffering?
6 A. No.
7 Q. Do you know generally if Mr. O'Brien was
8 suffering from insomnia at all between December 2015
9 and February 2017?
10 A. Yes, he was at times.
11 Q. Did he tell you that?
12 A. Yes.
13 Q. Do you know approximately during what time
14 periods he suffered from insomnia?
15 A. You mean hourly or daily, that type of thing?
16 Q. How often.
17 A. A number of times a week.
18 Q. And did Mr. O'Brien tell you what he thought
19 was causing his insomnia?
20 A. Well, he was -- he was concerned about this

21 lawsuit. I know that. And his health.

(S. Ferro Dep., 3/14/2016, 8:15-20:21)

**OBJECTIONS TO SHARRON FERRO 8:15-20:21**

Objection. Irrelevant, cumulative, prejudicial and wastes time. (FRE 401-403). Hearsay. (801, 802). Plaintiff's deposition designation cites to nearly 12 pages of deposition testimony and is insufficient to constitute a designation that informs the Court and Defendants of the actual testimony that Plaintiff intends to use at trial.  This is true particularly given the fact that Ms. Ferro's deposition is only 51 pages total, so the designation constitutes over 20% of the entire deposition.  Designating such a large portion of deposition foreclosed Defendants' ability to provide specific objections.  Defendants therefore request that the Court order Plaintiff to designate specific portions of testimony within these 12 pages so that Defendants have an opportunity to provide substantive objections and counter designations, where necessary.

**RESPONSE TO OBJECTIONS TO SHARRON FERRO 8:15-20:21**

Plaintiff has designated relevant portions of Ms. Ferro's testimony that provide a complete picture of Mr. O'Brien's emotional distress. 12 pages is not excessive and will not unduly consume the Court's time.  It is noteworthy that Defendants, in their attempt to prevent Plaintiff's expert witness from testifying, criticize that expert for not speaking with Ms. Ferro, but Defendants now seek to exclude her testimony.

**EXCERPT OF DESIGNATION OF SHARRON FERRO 38:7-39:23**

7 Q. Okay. Have you ever heard of Consolidated
8 Freightways?
9 A. Yes.
10 Q. Are you aware that Mr. O'Brien worked for
11 Consolidated Freightways?
12 A. Yes.
13 Q. Do you know what position he held with the
14 company?
15 A. I believe it was CEO.
16 Q. Do you know approximately when he retired?
17 A. No. That was way before me.
18 Q. What did he tell you about his employment
19 with Consolidated Freightways?
20 A. Not that much. He explained to me at one
21 point how he came up the ranks.
22 Q. Did he ever discuss with you any of his

143

23 accomplishments --
24 A. Yes.
25 Q. -- with the company?
1 A. Yes.
2 Q. What did he tell you?
3 A. He started out as a bookkeeper and told me
4 about moving to Texas one time, then going back to
5 Consolidated Freightways, and told me about he is in
6 the Automotive Hall of Fame and he was quite proud of
7 that. There's books -- he showed me some books that
8 were written about him and the company. And it's such
9 a huge company, it's very convoluted, so I didn't pay a
10 lot of attention to some of it, but he was really well
11 thought of.
12 Q. On how many occasions approximately did
13 Mr. O'Brien discuss his employment with Consolidated
14 Freightways?
15 A. We would sit around and have a cocktail after
16 dinner and he would -- I don't know. Probably dozens
17 of times.
18 Q. And was that sort of stories of things that
19 had happened during his employment?
20 A. Yes.
21 Q. And reminiscing about different things that
22 happened?
23 A. Right. I didn't take notes.

(S. Ferro Dep., 3/14/2018, 38:7-39:23)

## OBJECTIONS TO SHARRON FERRO 38:7-39:23

Objection only as to 39:18-23.  Irrelevant and prejudicial. (FRE 401-403).  Hearsay. (801, 802). The testimony designated is irrelevant to the claims at issue in this case, and is moreover prejudicial as it references Raymond O'Brien "reminiscing" about his time at XPO CNW.

## RESPONSE TO OBJECTIONS TO SHARRON FERRO 38:7-39:23

Directly relevant and highly probative to the issue of Mr. O'Brien's emotional distress. This testimony is not prejudicial.  In particular, testimony is not prejudicial merely because it is harmful to Defendants case.   It is noteworthy that Defendants, in their attempt to prevent Plaintiff's expert witness from testifying, criticize that expert for not speaking with Ms. Ferro, but Defendants now seek to exclude her testimony.

## EXCERPT OF DESIGNATION OF SHARRON FERRO 40:9-44:19

9 Q. Did he ever tell you that he thought he had a

10 contract with Consolidated Freightways after he left
11 the company?
12 MS. WENGER: Objection. Vague and ambiguous
13 as to -- if you can specify what contract you're
14 talking about.
15 BY MS. KNUDSON:
16 Q. Any contract.
17 A. Is that the company that we're in now, that
18 this is about?
19 MS. WENGER: Yeah.
20 BY MS. KNUDSON:
21 Q. So my defendants merged with Consolidated
22 Freightways.
23 A. Then yes, absolutely.
24 Q. And what did he tell you?
25 A. He told me that he had -- would get a certain
1 dollar amount every month, he would get a driver, and
2 he would have secretarial services provided.
3 Q. Did he discuss how long he was supposed to be
4 provided with these services and payment?
5 A. Until his death.
6 Q. And did he tell you whether he had any
7 obligation to perform anything to receive those
8 services and payment?
9 A. He didn't. After retirement, he didn't have
10 to do a thing.
11 Q. Did he show you any documents relating to
12 this alleged promise?
13 A. I might have seen some documents like that.
14 Q. Do you recall what they were?
15 A. I believe when he was getting this
16 information together he did show me something, but I
17 don't remember what it was.
18 Q. Do you have copies of those documents?
19 A. No, huh-uh.
20 Q. Did he tell you what he used the monthly
21 payments that he received for?
22 A. No.
23 Q. Do you know if they were paid directly to
24 Mr. O'Brien?
25 A. I would imagine -- I think they must have
1 just gone into his account.
2 Q. You are aware that Mr. O'Brien filed a
3 lawsuit against my clients, alleging that he was
4 promised a monthly payment for life. Correct?
5 A. Correct.
6 Q. When did you become aware of the lawsuit?
7 A. In the very beginning.

145

8 Q. Can you tell me what Mr. O'Brien told you
9 about filing the lawsuit?
10 A. Just that he was so upset by it all that he
11 was definitely going to take it to the next step.
12 Q. Was it his idea to file the lawsuit or was it
13 someone else's?
14 A. I'm sure he talked to people, but it was
15 definitely him.
16 Q. Did he ever tell you that he felt like he had
17 been fired by my clients?
18 A. No, he never said that.
19 Q. Did he ever tell you that he felt that he had
20 been terminated by my clients?
21 A. No.
22 Q. Did he ever mention that he felt insulted by
23 my client's actions?
24 A. Yes.
25 Q. What specifically did he say?
1 A. Well, there was some talk about no honor, and
2 he couldn't understand why they would do it at all.
3 And he told me about somebody else that they treated
4 like that, and the secretary came in one day and was
5 let go that day, and I don't remember the name.
6 Q. Do you recall on how many occasions
7 Mr. O'Brien expressed that he felt insulted?
8 A. Dozens.
9 Q. Did Mr. O'Brien ever mention that he felt
10 humiliated by my client's actions?
11 A. I don't know if that's the right adjective.
12 Q. Did he ever express that he felt dismayed by
13 my clients' --
14 A. Yes.
15 Q. -- actions? And what did he say?
16 A. I can only repeat what I already said.
17 Q. Okay. Did he express any other feelings
18 regarding my clients' actions?
19 A. Well, he was angry about it. It was so
20 uncalled for and he had certainly felt he earned
21 everything he was getting.
22 Q. Going back to the insomnia and anxiety we
23 previously discussed, did Mr. O'Brien ever tell you
24 that participating in the lawsuit was causing anxiety
25 for him?
1 A. He never specifically said that.
2 Q. Did he ever state that participating in the
3 lawsuit was causing insomnia?
4 A. He never specifically told me that.
5 Q. Do you believe that those were causes, the

6 participation in the lawsuit were causes of his
7 insomnia and anxiety?
8 A. I could only surmise that it wouldn't have
9 helped.
10 Q. Did Mr. O'Brien ever state to you that no
11 longer receiving a monthly payment from my clients was
12 causing insomnia?
13 A. No, he never said that specifically.
14 Q. Did he ever state that no longer receiving
15 monthly payments from my clients was causing anxiety?
16 A. He never said that specifically.
17 Q. Did you review the complaint, the lawsuit
18 Mr. O'Brien filed before it was filed?
19 A. I know he showed it to me.

(S. Ferro Dep., 3/14/2018, 40:9-44:19)

## OBJECTIONS TO SHARRON FERRO 40:9-44:19

Objection only as to 41:23-42:1. Lack of personal knowledge/foundation/speculation. (602).

Irrelevant/immaterial (401-402); addresses issues that are not relevant in this case (401-402).

Prejudicial/confusing/waste of time/cumulative (403). Ms. Ferro's speculations about where money paid

by XPO CNW to Raymond O'Brien went are irrelevant and prejudicial. Object only as to 43:22-44:9.

Lack of personal knowledge/foundation/speculation. (602).  Improper testimony by a law witness. (701).

Prejudicial/confusing/waste of time/cumulative (403). Ms. Ferro's opinions regarding Raymond

O'Brien's mental health are speculative, improper, and highly prejudicial to Defendants.

## RESPONSE TO OBJECTIONS TO SHARRON FERRO 40:9-44:19

Directly relevant and highly probative to emotional distress claim. Based on time spent, matters

Ms. Ferro witnessed, and observations of Mr. O'Brien. Testimony goes to state of mind of Mr. O'Brien.

It is noteworthy that Defendants, in their attempt to prevent Plaintiff's expert witness from testifying,

criticize that expert for not speaking with Ms. Ferro, but Defendants now seek to exclude her testimony.

This testimony is neither speculative, improper or prejudicial.  In particular, testimony is not prejudicial

merely because it is harmful to Defendants case.

## EXCERPT OF DESIGNATION OF SHARRON FERRO 47:13-24

13 Q. We talked about the -- about Mr. O'Brien's
14 frustration not getting paid by my clients and that
15 that may have caused him some anxiety and insomnia.
16 What specifically about that situation caused his
17 insomnia?

18 MS. WENGER: Objection. Vague and ambiguous
19 to the extent it's calling for an expert opinion. Go
20 ahead.
21 THE WITNESS: I couldn't answer to specifics.
22 But it would have to have not helped him at all. I'm
23 sure it agitated him to the point where sometimes he
24 couldn't sleep and was anxious about it.

(S. Ferro Dep., 3/14/2018, 47:13-24)

## OBJECTIONS TO SHARRON FERRO 47:13-24

Objection. Lack of personal knowledge/foundation/speculation. (602).  Improper testimony by a law witness. (701).  Prejudicial/confusing/waste of time/cumulative (403). Ms. Ferro's opinions regarding Raymond O'Brien's mental health are speculative, improper, and highly prejudicial to Defendants.

## RESPONSE TO OBJECTIONS TO SHARRON FERRO 47:13-24

Directly relevant and highly probative to emotional distress claim. Based on time spent, matters Ms. Ferro witnessed, and observations of Mr. O'Brien. Testimony goes to state of mind of Mr. O'Brien. This testimony is not prejudicial.  In particular, testimony is not prejudicial merely because it is harmful to Defendants case.  It is noteworthy that Defendants, in their attempt to prevent Plaintiff's expert witness from testifying, criticize that expert for not speaking with Ms. Ferro, but Defendants now seek to exclude her testimony.  This testimony is neither speculative, improper or prejudicial.  In particular, testimony is not prejudicial merely because it is harmful to Defendants case.

DATED:  December 30, 2019                  BROWN, GEE & WENGER LLP

                                           _/s/ Katherine F. Wenger_
                                           KATHERINE F. WENGER
                                           Attorneys for Christopher R. O'Brien as
                                           Trustee of the Raymond F. O'Brien
                                           Revocable Trust

DEFENDANT'S OBJECTIONS TO PLAINTIFF'S DEPOSITION DESIGNATIONS / CASE NO. 4:16-CV-03869-JSW

1

DATED: December 30, 2019                    Respectfully submitted,

2
                                            SEYFARTH SHAW LLP
3
                                            By: */s/ Chantelle C. Egan*
4                                               Chantelle C. Egan
                                            Attorneys for Defendants
5                                           XPO Logistics, Inc. and XPO CNW, Inc.

6

7

8                        **<u>SIGNATURE ATTESTATION</u>**

9         I hereby attest that all signatories listed above, on whose behalf this stipulation is submitted,

10   concur in the filing's content and have authorized the filing.

11      DATED:  December 30, 2019                 BROWN, GEE & WENGER LLP

12
                                             _/s/  Katherine Wenger_
13                                           KATHERINE F. WENGER
                                             Attorneys for Plaintiff Christopher R.
14                                           O'Brien as Trustee of the Raymond F.
                                             O'Brien Revocable Trust
15   60916763v.1
16   60917458v.1

17   60940289v.1

18

19

20

21

22

23

24

25

26

27

28